UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARLENE V. ALLEN, Executrix of the Estate of James R. Allen, Ph.D.,<br><br>                              Plaintiff,<br><br>v.<br><br>MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, NATIONAL RAILROAD PASSENGER SERVICE (a/k/a "AMTRAK") and CSX TRANSPORTATION, INC.,<br><br>                              Defendants. | CIVIL ACTION<br>NO: 04-12080-PBS |

**PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER AND PLAINTIFF'S L.R. 7.1 CERTIFICATION**

Plaintiff Marlene V. Allen, Executrix of the Estate of James R. Allen, Ph.D., hereby files

this motion for a protective order seeking to prevent the disclosure by defendant CSX

Transportation, Inc. ("CSX") of the decedent's medical records to the public and, specifically, to

the media.  Plaintiff notes that the other defendants have already agreed in writing to maintain the

confidentiality of these records and so this motion pertains solely to CSX's unwillingness to

agree to the same safeguards.[1]  As grounds for this motion, plaintiff states that:

1.      On October 15, 2004, plaintiff made her disclosures in accordance with L.R. 35.1

and, at the same time, submitted to defendant CSX a one-page letter setting forth an

uncomplicated proposal for the production and handling of the records.  The letter proposed that:

"The medical records will be treated as private and confidential.  They are not to
be shared with, or shown to, anyone other than those persons whom you, as trial
counsel for CSX, determine have a need to know Dr. Allen's detailed medical

---

[1]      Plaintiff submits that the issue presented is straightforward.  She is not seeking either to invoke a privilege or to withhold production of records but, rather, simply asks that the defendant respect the confidential nature of such records.  Consequently, plaintiff neither submits a separately briefed memorandum of law nor requests oral argument on the issue but is prepared to submit the issue for ruling on the papers.

history for the sole purpose of this litigation.  Specifically, by way of illustration, but not limitation, the records and the information contained therein, should not be made available to the media.  We take this opportunity to note that Mrs. Allen and we, as her counsel, were very distressed that someone apparently turned over a copy of the plaintiffs' initial claim letter to the Boston Globe in January 2003.  Any leaking of confidential medical information would be considered by the Allen family to be even more intrusive, invasive and inappropriate than what happened with the claim letter.  In order to help safeguard the confidentiality of such records, we also ask that you provide us with the identities of all persons who have access to the medical records.

If the foregoing provisions meet with your approval, please simply sign below and return a copy to us."

(*See* Letter dated October 15, 2004 attached as **Exhibit A**.)

2.      By letter dated October 20, 2004, defendant CSX responded that it would not voluntarily agree to maintain the confidentiality of the medical records, but did not state a reason as to why. (*See* Letter dated October 20, 2004 attached as **Exhibit B**.)

3.      On October 26, 2004, plaintiff's counsel inquired as to the reasons for defendant CSX's unwillingness, but was informed simply that CSX refused and that, in addition, it objected to the wording of the last two or three sentences.  However, explaining that CSX was unwilling to agree to confidentiality regardless of wording, counsel for CSX declined to discuss alternative language.

4.      Plaintiff's concern about the confidentiality of her disclosures arises from the fact that, on January 24, 2003, just days after submitting a detailed initial claim letter to the three defendants, that letter was leaked to the media with detailed stories quoting the letter directly appearing in the *Boston Herald* as well as the Allen's hometown newspaper, the *Wellesley Townsman*. (*See Boston Herald*, January 24, 2003 and *Wellesley Townsman*, January 30, 2003 articles attached hereto as **Exhibit C**.)

5.      While not the subject of a privilege, Massachusetts courts have long recognized that medical records are considered to be confidential. *See Bratt v. International Business Machines Corp.*, 392 Mass. 508, 522-523, 467 N.E.2d 126, 136-137 (1984) *citing, Hannaway v. Cole*, 2 Mass.App.Ct. 847, 848, 311 N.E.2d 924 (1974).  Moreover, the confidentiality of such records survives that person's death. *See District Attorney for the Norfolk District v. Magraw*, 417 Mass. 169, 628 N.E. 2d 24, 26 (1994)(confidentiality of therapy records and communications with counsel survive death) *citing Matter of a John Doe Grand Jury Investigation*, 408 Mass. 480, 483, 562 N.E.2d 69 (1990) and *Brooks v. Holden*, 175 Mass. 137, 141, 55 N.E. 802 (1900). *See also*, Op. Mass. Atty. Gen. Nov. 15, 1964, p. 168 (upon death of Soldiers' Home patient who had not given written authorization for inspection of his confidential medical records, inspection of such records could only be obtained with court assistance.)

6.      Especially here, where the plaintiff does not seek to invoke a privilege or to prevent the disclosure of the documents (the issue at stake in the cited cases) but, rather, simply asks that such confidential records not be leaked to the press as occurred with to her initial claim letter, a simple protective order regarding Dr. Allen's confidential records can hardly be considered onerous or inappropriate.

WHEREFORE, plaintiff respectfully requests that the court order that the medical records of the decedent be maintained by defendant CSX as private and confidential and not be disclosed publically or to the media.

## LOCAL RULE 7.1 CERTIFICATION

I,  Bradley M. Henry, counsel for the plaintiff, hereby certify that on October 26, 2004, I conferred by telephone with Richard A. Davidson, Jr., counsel for defendant CSX

Transportation, Inc. regarding CSX's unwillingness to agree to maintain the confidentiality of the decedent's medical records.  Mr. Davidson explained that CSX was simply unwilling to agree to confidentiality and, on that basis, was also unwilling to propose or discuss alternative language that might be acceptable to CSX.  Consequently, despite the willingness of plaintiff's counsel to consider alternative language for an acceptable confidentiality agreement, the parties have been unable to resolve or narrow any of the issues presented herein.

> Respectfully submitted,
> Plaintiff, Marlene V. Allen, Executrix of the
> Estate of James R. Allen, Ph.D.
> By Her Attorneys,
>
>
> /s/ Bradley M. Henry
> _____
> Leo V. Boyle, BBO No. 052700
> Bradley M. Henry, BBO No. 559501
> MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.
> Two Center Plaza, Suite 600
> Boston, MA  02108-1922
> (617) 523-8300

### CERTIFICATE OF SERVICE

I, Bradley M. Henry, hereby certify that on this 27th day of October 2004, I served Plaintiff's Motion for a Protective Order and L.R. 7.1 Certification, by electronic filing and by mailing an exact copy thereof, via first class mail postage prepaid to all counsel of record:  Michael J. McCormack, Esq. and David T. Mitrou, Esq., McCormack & Epstein, 1 International Place - 7th Floor, Boston, MA 02110; William J. Dailey, Jr., Esq. and Harry A. Pierce, Esq., Sloan and Walsh, Three Center Plaza, Boston, MA 0210; Michael B. Flynn, Esq. and Richard A. Davidson, Jr., Esq., Flynn & Associates, P.C., 400 Crown Colony Drive, Ste. 200, Quincy, MA 02169.

> /s/ Bradley M. Henry
> _____
> Bradley M. Henry

# MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.

### COUNSELLORS AT LAW

### TWO CENTER PLAZA

### SUITE 600

### BOSTON, MASSACHUSETTS 02108-1922

### WWW.MBBF.COM

LEO V. BOYLE
PETER J. BLACK
WARREN F. FITZGERALD
JOHN CARROLL
MICHAEL B. BOGDANOW
KAREN R. RISTUBEN
SHERRY YEE MULLOY
BRADLEY M. HENRY
PETER J. AINSWORTH

Direct E-Mail: BHenry@MBBF.com
Direct FAX No.: (617) 523-0455

TELEPHONE
(617) 523-8300

FACSIMILE
(617) 523-0525

INFO@MBBF.COM

October 15, 2004

Michael B. Flynn, Esq. and
Richard A. Davidson, Jr., Esq.
Flynn & Associates, P.C.
400 Crown Colony Drive, Ste. 200
Quincy, MA 02169

RE:   *Allen v. Massachusetts Bay Transportation Authority, et al.*

Dear Mr. Flynn and Mr. Davidson:

Subject to certain safeguards which were previously agreed-upon in writing by counsel for the MBTA and Amtrak, plaintiff is prepared to produce copies of Dr. Allen's medical records as set forth in L.R. 35.1(A)(2)(a) on or before October 26, 2004, the date by which counsel are required to confer pursuant to Fed. R. Civ. P. Rule 26(f) and L.R. 16.1(B). Those safeguards have been as follows:

The medical records will be treated as private and confidential. They are not to be shared with, or shown to, anyone other than those persons whom you, as trial counsel for CSX, determine have a need to know Dr. Allen's detailed medical history for the sole purpose of this litigation. Specifically, by way of illustration, but not limitation, the records and the information contained therein, should not be made available to the media. We take this opportunity to note that Mrs. Allen and we, as her counsel, were very distressed that someone apparently turned over a copy of the plaintiffs' initial claim letter to the Boston Globe in January 2003. Any leaking of confidential medical information would be considered by the Allen family to be even more intrusive, invasive and inappropriate than what happened with the claim letter. In order to help safeguard the confidentiality of such records, we also ask that you provide us with the identities of all persons who have access to the medical records.

If the foregoing provisions meet with your approval, please simply sign below and return a copy to us. Thank you for your attention to this matter.

Very truly yours,

Bradley M. Henry

_____
Michael B. Flynn, Richard A. Davidson, Jr.
Counsel for CSX Transportation, Inc.

**EXHIBIT A**

# FLYNN & ASSOCIATES, P.C.
### ATTORNEYS AT LAW

MICHAEL B. FLYNN*
RICHARD A. DAVIDSON, JR.
LORI A. WIRKUS†
JOHN E. YOUNG, IV
BETHANY M. MACHACEK

*also admitted in NY
†also admitted in CT

OF COUNSEL:
DURKIN, MCDONNELL,
CLIFTON & O'DONNELL

400 CROWN COLONY DRIVE
SUITE 200
QUINCY, MASSACHUSETTS  02169
TELEPHONE (617) 773-5500
FACSIMILE (617) 773-5510
E-MAIL: flynnlaw@flynnassoc.com

BOSTON OFFICE:
160 STATE STREET
EIGHTH FLOOR
BOSTON, MA  02109
TEL: (617) 722-8253
FAX: (617) 722-8254

DETROIT OFFICE:
PENOBSCOT BUILDING
645 GRISWOLD STREET, SUITE 3253
DETROIT, MI  48226
TEL: (313) 963-3033
FAX: (313) 963-3011

October 20, 2004

Leo V. Boyle, Esq.
Bradley Henry, Esq.
Meehan, Boyle, Black & Fitzgerald, P.C.
Two Center Plaza, Suite 600
Boston, MA  02109-1922

RE:   MARLENE V. ALLEN, Executrix v. MASSACHUSETTS BAY TRANSPORATION
       AUTHORITY, et al
       U.S. District Court – Boston, C.A. No.:  04-12080-PBS

Dear Gentlemen:

       This letter is being sent to advise you that CSX Transportation, Inc. ("CSX") will not be
voluntarily executing the confidentiality agreement which was sent by Attorney Henry under
cover dated October 15, 2004.  Additionally, the "disclosure" which was sent by Attorney Henry
fails to comport with the requirements of L.R. 35.1.  Kindly either provide to us available dates,
on or before November 1, 2004, on which to come to your office to review and copy the medical
records, provide to us copies of the medical records that are in your possession, or provide to us
duly executed releases addressed to Mr. Allen's care providers so that we may seek and obtain
his medical records ourselves.

       Thank you for your attention to this matter.

                                              Sincerely,

                                              Richard A. Davidson, Jr.

pc:   Gary Baker
       Michael B. Flynn, Esq.
       Michael J. McCormack, Esq.
       David T. Mitrou, Esq.
       William J. Dailey, Jr., Esq.
       Harry A. Pierce, Esq.

**EXHIBIT B**

# FLYNN & ASSOCIATES, P.C.
### ATTORNEYS AT LAW

MICHAEL B. FLYNN*
RICHARD A. DAVIDSON, JR.
LORI A. WIRKUS*
JOHN E. YOUNG, IV
BETHANY M. MACHACEK

\*also admitted in NY
\*also admitted in CT

OF COUNSEL:
DURKIN, MCDONNELL,
CLIFTON & O'DONNELL

400 CROWN COLONY DRIVE
SUITE 200
QUINCY, MASSACHUSETTS 02169
TELEPHONE (617)773-5500
FACSIMILE (617)773-5510
E-MAIL: flynnlaw@flynnassoc.com

BOSTON OFFICE:
160 STATE STREET
EIGHTH FLOOR
BOSTON, MA 02109
TEL: (617)722-8253
FAX: (617)722-8254

DETROIT OFFICE:
PENOBSCOT BUILDING
645 GRISWOLD STREET, SUITE 3253
DETROIT, MI 48226
TEL: (313)963-3033
FAX: (313)963-3011

October 20, 2004

William J. Dailey, Jr., Esq.
Harry A. Pierce, Esq.
Sloan & Walsh
Three Center Plaza
Boston, MA 02108

Michael J. McCormack, Esq.
David T. Mitrou, Esq.
McCormack & Epstein
One International Place, 7th Floor
Boston, MA 02110

RE:   MARLENE V. ALLEN, Executrix v. MASSACHUSETTS BAY TRANSPORATION
      AUTHORITY, et al
      U.S. District Court – Boston, C.A. No.:  04 CV 12080 PBS

Dear Gentlemen:

Please be advised that CSX Transportation, Inc. ("CSX") will not be voluntarily executing the confidentiality agreement demanded by the plaintiff and her counsel. CSX expects complete and full disclosure of any and all records in your or your clients' possession, custody and/or control which are responsive to any and all automatic or directed discovery obligations or requests.

If you have any questions, please call. Thank you for your attention to this matter.

Sincerely,

Richard A. Davidson, Jr.

pc:   Bradley M. Henry, Esq.
      Michael B. Flynn, Esq.

RECEIVED
OCT 2 2
MEEHAN BOYLE, BLACK
& FITZGERALD, PC

T death prompts $25M lawsuit                    wysiwyg://5/http://www2.bostonhera...ws/local_regional/mbta01242003.htm

ALLEN

| Boston Herald | Daily News Tribune | MetroWest Daily News | Milford Daily News | Daily News Transcript | Town Online |

SEA

Archives
News &
Opinion

Business
Today
Sports
Entertainment
Lifestyle
Print Edition

Classifieds

Features

Horoscope

## LOCAL NEWS

HIASYS

RELATED

RELATE

RECOMM
BESTSE

### T death prompts $25M lawsuit

**by Doug Hanchett**
Friday, January 24, 2003

Relatives of a Wellesley man who died of a heart attack aboard an MBTA commuter rail train last summer are seeking $25 million from the T and Amtrak, citing glaring mistakes made in how the medical emergency was handled by train personnel.

In a 30-day demand letter sent to the transit agencies this week, attorney Leo Boyle said the family of 61-year-old James Allen is entitled to the whopping sum because of the negligence train workers showed in dealing with the emergency.

``Had the defendants acted in accordance with well known safety guidelines . . . there is little question that James Allen would be alive today,'' Boyle wrote.

Allen died in July after going into cardiac arrest as his train was pulling out of Wellesley Farms station. The Amtrak-run train made three more of its regular stops, letting passengers on and off, before meeting EMTs at Back Bay Station.

Allen's death forced Amtrak to revamps its protocols for medical emergencies and prompted the T to do a review of its procedures.

``Lawyers for the MBTA and the estate of James Allen are discussing all aspects of the case in an attempt to achieve a resolution,'' said T spokesman Joe Pesaturo.

1 of 2

1/24/03 1:58 PM

**EXHIBIT C**

Lawyers for family of local man who died on MBTA sends 'demand letter'            Page 1 of 3

AWEN

Boston Herald    Daily News Tribune    MetroWest Daily News    Milford Daily News    Daily News Transcript    Town Online

## The Wellesley Townsman
on TOWNONLINE.com

*Fleet*    **Fleet HomeLink Online Banking**

Fleet HomeLink℠ • The Warmer Way To Bank This Winter

**Town Online Home**
**News & Opinion**
Local News
Opinion
**Local Business**
  • Business Today
Obituaries
Police / Fire Log
Sports
Arts & Lifestyle
Town Resources

**MCAS RANKINGS:**
Enter Town Name:


townonline
TOWN SEARCH

Abington

Classifieds
carfind.com
homefind.com
jobfind.com
merchandise
services
personals
buy tickets
Place an Ad

**Features**
Parents & Kids
Shop TownOnline
Tunes a Brewing
weather
horoscope
crossword
lottery results

**Services / Help**
Advertise with Us
  • Online
  • Print
Contact Us
Home Delivery

**LOCAL NEWS**

## Lawyers for family of local man who died on MBTA sends 'demand letter'

**By Lesley Mahoney / Townsman Staff**
Thursday, January 30, 2003

Last summer, a Wellesley man died of a heart attack after the MBTA commuter rail train on which he was riding made three regular rush-hour stops before meeting EMTs at Back Bay station. Now his family wants to prevent this scenario from ever happening again.

In a 30-day demand letter, lawyers representing the family are seeking relief for the "wrongful death of Dr. [James R.] Allen," an internationally recognized geomorphologist with the U.S. Geological Survey who died at age 61 on July 30, 2002.

Amtrak , the MBTA, and CSX Transportation "are responsible for Dr. Allen's death as a result of, among other things, grossly inadequate emergency procedures and training that are vital to the assistance of a passenger suffering a sudden cardiac event, one of the most common onboard medical emergencies," the letter states.

The letter is addressed to the top executives of Amtrak, which provides crew to operate the trains, the MBTA, and CSX Transportation Inc., which controls the rails.

"Dr. Allen, who suffered a heart attack on an MBTA train operated by an Amtrak crew over rails controlled by CSX, died during the course of a pointless twenty minute journey through a series of stations and locations easily accessible to emergency medical assistance," the letter states.

The demand letter maintains that had "the defendants acted in accordance with well-known safety guidelines.... there is little question that James Allen would be alive today."

Had Allen been treated with automatic external defibrillation "in a timely manner, specifically at the Auburndale or West Newton MBTA stations, but at the latest, at the Newtonville Station, Dr. Allen more likely than not would have survived his heart attack, according to medical experts, the letter states.

The lawyers representing the Allen family declined to comment on the demand letter.

"At this time, we consider it still to be a private matter between the Allen family and these other parties," said Brad Henry, a partner with Meehan, Boyle, Black & Fitzgerald. "We're trying to seek a resolution to the case with the counsel for the other parties."

The Allen family declined comment through their lawyers.

"Lawyers for the MBTA and the estate of James Allen are discussing all aspects

**LOCAL F**

**-- RELATED**

Cultural differe
present challenges
restaurants

Babson speak
horror, fascination

Town working
Overbrook affordal

A Kirkland Roa
of Hollywood glory

**-- PHOTO**



Dr. Jam

**-- RELATE**

Find a Job in \
Yard Sales are
MCAS Rankin
Boston Homes
Guide
BostonHerald.
Regional News

**-- HERALD INTE**

Email this Artic

of the case in an attempt to achieve a resolution," said T spokesman Joe
Pesaturo.

Amtrak spokesman Dan Stessel declined comment on the letter as well.

The demand letter, dated Jan. 14, gives the parties addressed 30 days to make
a "reasonable settlement offer" or at least begin "a meaningful dialogue" on a
settlement. If this does not occur, the letter indicates a lawsuit will be filed.

Per the letter, the demand for relief "on account of the defendants' gross
negligence, recklessness and violations of [Mass. General Law] c. 93A [the Massachusetts Consum
Act]," is $25 million.

The 13-page letter outlines in detail the events leading up to Allen's death on July 30.

Allen boarded a commuter train for Boston at the Wellesley Farm station and about one minute afte
a.m. departure, he began to exhibit signs of a heart attack. A passenger with a medical degree who
aid found him unresponsive with no pulse, but could hear "snore-like sounds" similar to those he ma
passengers first noticed he was having trouble. The doctor and another passenger began CPR, acc
letter.

The letter states that two assistant conductors were present when "it was clearly stated that Dr. Alle
and was not breathing."

The demand letter goes on to chronicle stops at Auburndale Station, West Newton Station and New
of which included passenger pick-up. The letter also details passenger requests that the crew call 9
why the train continued to pick up passengers.

It was not until the train reached the West Newton Station that the engineer reached CSX dispatch
"advise, incorrectly, that: 'Our conductor's got a passenger who has apparently passed out, he's bre
passed out. We need medical attention at Back Bay station,'" the letter states.

"The train crew made no attempt to make direct, local contact with Amtrak or the MBTA or EMS or t
reportedly maintains a strict policy that all such calls be made exclusively through its own dispatch c
the letter maintains.

Shortly after the train departed the West Newton station, a man one week away from EMT certificat
car where Allen was being assisted, the letter stated. "He urgently instructed the crew to call ahead
paramedics waiting at Newtonville, the next stop, but when the conductor responded that they could
would somehow be faster to have paramedics waiting at Back Bay, the young man told him to make
routed express," according to the demand letter.

However, according to the letter, the train made another routine stop for passengers at the Newton
Additionally, the letter points out that emergency medical help was available along the commuter ra
Wellesley Hospital, Newton Fire Station No. 2, Newton Police Headquarters, Chestnut Street Police
Newton Fire Station No. 4.

Following the Newtonville stop, the train continued straight on to Back Bay station, arriving at 9:15 a
EMS took over, the letter stated. "Even after twenty minutes of CPR [during the train ride], Dr. Allen
sufficiently strong that emergency defibrillation by the EMS crew produced a pulse and rhythm for 3
before Dr. Allen's heart returned to ventricular fibrillation," the letter states.

However, despite having been provided advanced emergency care at Back Bay and en route to Bo
Allen was pronounced dead at 10:14 a.m. at the hospital, according to the letter.

The demand letter goes on to cite the liability of each party, noting the MBTA, as owner of the comm
both the authority and the obligation to see that adequate emergency procedures and decision-mak
place to guide properly trained personnel operating its trains."

Lawyers for family of local man who died on MBTA sends 'demand letter'                    Page 3 of 3

The letter notes that Amtrak crew on board Allen's train "made decisions that are utterly inexplicable conflict with the CPR training that Amtrak claims was current as to each crew member."

"The near complete failure on the part of the conductor to evaluate the seriousness of the situation, collection of tickets, the crew's bizarre conclusion that firefighters or other emergency personnel col manage the 34, six-foot wide steps to the platforms at Auburndale, West Newton or Newtonville sta decisions to continue to make routines stops for commuters despite actual knowledge that a passen receiving CPR and at the risk of death, all indicate an outrageous degree of gross negligence and r disregard," the demand letter states.

Additionally, the letter states that automatic defibrillators called for by an Amtrak program, "Operatic were not obtained by Amtrak's Boston operation until three weeks before Allen's death, "and even a 2002 had still not been fully deployed."

The letter faults CSX for its operating rules of its rails in the Boston area that "reportedly mandate th communications be directed through its dispatch center nearly four-hundred miles away, and CSX r direct communications between Amtrak train crews and their own, local dispatch center, the MBTA emergency services."

Back to top        

© Copyright by the  Herald Interactive Advertising Systems, Inc.

No portion of the Daily News Tribune or its content may be reproduced without the owner's written permission. Privacy Commitme