UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARLENE V. ALLEN, Executrix of the Estate of James R. Allen, Ph.D., <br><br> Plaintiff, <br><br> v. <br><br> MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, NATIONAL RAILROAD PASSENGER SERVICE (a/k/a "AMTRAK"), and CSX TRANSPORTATION, INC., <br><br> Defendants. | Civil Action <br> No.: 04-12080-PBS |

**DEFENDANT CSX TRANSPORTATION, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

The defendant CSX Transportation, Inc. ("CSX") hereby opposes the *Plaintiff's Motion for a Protective Order* in that the plaintiff has failed to show good cause for the granting of her motion, the proposed agreement contains assertions and statements that could potentially aid and assist the plaintiff in the future litigation, and that the plaintiff and her counsel have made themselves available for interviews and have been substantially quoted in the press on various factual and legal aspects of this case.

As grounds for this opposition, CSX states the following:

**I.     FACTUAL/PROCEDURAL BACKGROUND**

**A.     PLAINTIFF'S ALLEGATIONS**

The plaintiff has brought this action seeking damages relating to the death of James R. Allen who allegedly suffered a heart attack[1] while a passenger onboard MBTA Commuter Rail

---

[1] CSX and its counsel have yet to be provided medical documentation confirming this information, but represent to the court that various newspaper articles have indicated that Mr. Allen suffered a heart attack.

train P514 on July 30, 2002. CSX's co-defendant Massachusetts Bay Transportation Authority ("MBTA") owned the train on which Mr. Allen was a passenger and co-defendant National Railroad Passenger Corporation ("AMTRAK") operated the service and provided a crew for the train. CSX dispatched train P514 over its tracks under an agreement with the MBTA.

As a result of Mr. Allen's death, the plaintiff, in her capacity as the executrix of Mr. Allen's estate, initially made a written demand on the defendants. Each of the defendants responded to the plaintiff with a denial of liability and statements that each did not have any medical information in order to properly evaluate the medical aspects of her demand. The plaintiff thereafter, for obvious strategic reasons, agreed to provide both AMTRAK and the MBTA with copies of Mr. Allen's medical records under a confidentiality agreement. The plaintiff never made the offer to provide Mr. Allen's medical records to CSX subject to a confidentiality agreement and never included CSX in any of the settlement discussions. Once the settlement discussions collapsed, the plaintiff brought the within lawsuit alleging claims for wrongful death and violations of M.G.L. c. 93A against the defendants. It was at that time that the plaintiff and her counsel went to the press, *see infra* at D. CONTACT WITH THE PRESS, and discussed her claims against the defendants in specific detail.

    B.    **THE EXISTING CONFIDENTIALITY AGREEMENTS**

The plaintiff entered into confidentiality agreements with the MBTA and AMTRAK concerning the sharing of certain information prior to this lawsuit being filed, so that they could make an attempt to settle the plaintiff's claims. The plaintiff and CSX's co-defendants each have invoked the existence of the confidentiality agreement, as between them, as grounds for each of their failures to provide CSX with complete automatic disclosures as required by the rules. It was only after CSX made a written demand on each party for the medical records, pursuant to

automatic disclosure requirements, that the plaintiff then demanded that CSX agree to her proposed confidentiality agreement. The plaintiff has refused to make available copies of the medical records unless CSX agreed to the confidentiality agreement despite her automatic discovery obligations. When CSX and its counsel refused to agree with the proposed confidentiality agreement, the plaintiff then filed her motion seeking a protective order.

        C.        **CSX'S REFUSAL TO DISCUSS ALTERNATIVE LANGUAGE**

Counsel for CSX explained to plaintiff's counsel in the party's L.R. 7.1 conference that CSX would not agree to the confidentiality agreement, because:

(1) the agreement would be virtually impossible to enforce due to the fact that there are three co-defendants in that it would be impossible to prove which party was responsible if there was a breach of the agreement, as well as the fact that there already had been leaks to the media and media attention sought by the other parties of which CSX has no involvement;

(2) should any of the confidential material be needed to support a pretrial pleading, then that would require CSX to submit that material to the court under seal thus increasing the time that counsel would need to spend on the pleadings and increase the cost of the litigation to CSX;

(3) CSX has no reason to seek or obtain any publicity at all in the defense of the case, and actually has every incentive to abstain from all publicity; and

(4) counsel for CSX had been a party to a similar agreement in another case in the past and restrictions on the use of the material proved to be impracticable and unworkable when using the information within the litigation.

D. **CONTACT WITH THE PRESS**

The plaintiff and her counsel have provided to the print and television media interviews concerning this lawsuit. The most recent of the newspaper articles appeared in the *Boston Globe* on July 21, 2004, entitled *Husband's Death on T Spurs Demand for Change*, a copy of which is attached hereto as Exhibit "A." It is also CSX's counsel's understanding and belief that, on or about the time that the *Boston Globe* article appeared, the plaintiff appeared on camera for an interview in the Boston television market. In the July 21, 2004, *Boston Globe* article the plaintiff and her counsel were separately and extensively quoted as to their versions of the events, the potential liability of some of the defendants, and the substance of the settlement negotiations and discussions. Examples of their statements are as follows:

As to the plaintiff, Ms. Allen:

"They handled the emergency in a way that assured his death..."

"They refused to put defibrillators on the trains…"

"It doesn't seem as if they have accepted responsibility or valued Jim's life at all."

"I see the time going and the brain going…I see this incredible mind slowly starved. It did not have to be."

As to plaintiff's counsel:

"The notion that the T is going to rifle through our briefcases and shopping bags in the name of public safety is an absurdity when they won't even stop a train for a man who's dying and desperately needs help…"

The MBTA has a "can't do attitude" and showed "enormous inertia and resistance to change of any kind that isn't required by law."

The article also attributed, though did not quote, the plaintiff's attorneys stating the following:

The T has frustrated their [the attorneys'] attempts to settle the case since they have filed a demand letter in January 2003 seeking $25 million in damages.

>The attorneys said that the MBTA offered to settle the case in May for less than a quarter of what Allen asked for and then withdrew its offer when she accepted it.

## II.     ARGUMENT

CSX recognizes that the court enjoys broad discretion to decide when a protective order is appropriate to secure the just, speedy, and inexpensive determination of civil disputes.  *See*: Fed. R. Civ. P. 1; <u>Valentin v. Richardson</u>, 110 F.R.D. 622, 624-625 (D.Mass. 1986); <u>Seattle Times v. Rhinehart</u>, 467 U.S. 20, 36 (1984).  This is not a case in which such an order is appropriate.  It is the plaintiff who has made Mr. Allen's medical care and treatment, as well as his prior medical condition, issues in this lawsuit and the information contained in his medical records is relevant to the preparation of CSX's defense against plaintiff's allegations.  *See*: <u>Doe v. City of Chula Vista</u>, 196 F.R.D. 562, 568 (S.D. Cal. 1999).

Further, the plaintiff is required, pursuant to Fed. R. Civ. P. 26(a) and L.R. 35.1, to produce Mr. Allen's medical records *automatically* unless the plaintiff is asserting that certain of the records are protected by privilege.  *See*:  L.R. 35.1(B).  The plaintiff has not asserted any privilege in her refusal to produce the medical records in her motion for the protective order.

Finally, imposing a confidentiality order on the records will not make this litigation more speedy or inexpensive.  Instead, it will have the opposite impact.  In fact, the very specifics of the confidentiality order have actually delayed the production of these records (which should already have been produced to CSX with the other parties' automatic disclosures) and caused additional expense due to the filing of the plaintiff's motion.

### A.     CSX'S REFUSAL TO AGREE TO THE CONFIDENTIALITY AGREEMENT

CSX and its counsel have refused to agree to the proposed confidentiality agreement due

5

to counsel's past experience with the imposition of such confidentiality orders, the potential liability that could be imposed on CSX or its counsel, and the fact that the plaintiff seeks to be advised of the identity of every employee of CSX as well as its counsel's firm who will have contact and/or use of the material.  This is not a case involving a trade secret or embarrassing medical procedures, but one involving a man's cardiac condition, a condition which led directly to the death that is the subject of this law suit.

### i.      CSX's counsel's past experience

CSX's counsel's past experience with such a confidentiality agreement occurred in a case involving a woman who claimed that she was raped on a train.  The confidentiality agreement pertained to her identity as well as her care and treatment records.  In that case, counsel determined that it would be wise to agree to such an order given potentially embarrassing facts and records that could be revealed.  As that case proceeded, there were a number of motions filed against counsel concerning the releasing of information through motions to compel and opposition to various plaintiff motions.  Counsel was eventually ordered by the court to allow plaintiff's counsel to review any pleading which might contain any such information before it was filed with the court and to review all subpoenas before they were sent to be served.  It became an extremely taxing procedure to follow and adhere to as motions and counter-motions were filed with the court.  It also gave the plaintiff additional time to prepare additional pleadings and/or oppositions to our client's motions, given the "review" period.

In addition to the foregoing, the plaintiff and her counsel eventually went to the press and granted interviews with the local newspapers and television station providing information which was subject to the confidentiality agreement.  This occurred despite the fact that plaintiff's counsel had falsely accused defendants' counsel of leaking information to the press.  Due to the

protective order that was in place, our client was unable to respond to the plaintiff's one-sided media coverage, pertaining to information the plaintiff had originally sought to protect, leaving our client at a distinct disadvantage.

### ii. The proposed agreement contains assertions and statements that could potentially aid and assist the plaintiff in future litigation

The plaintiff has included in the proposed confidentiality agreement assertions and statements which are extremely prejudicial to CSX and which could subject CSX to additional and/or future claims by the plaintiff. Specifically, the proposed agreement appears to imply, that, should CSX have signed the agreement, CSX would have acknowledged that: (1) someone, other than the plaintiff or her counsel, leaked the pre-litigation demand letter to the press; and (2) that any leaking of confidential medical information would be intrusive, invasive, and inappropriate. CSX and its counsel have no knowledge as to by or to whom, or when, the pre-litigation demand letter was leaked and are not prepared to acknowledge same as fact. Nor are CSX or its counsel prepared to acknowledge that leaking of confidential medical information would be intrusive, invasive, and inappropriate without first knowing what information was leaked.

Additionally, the plaintiff has set forth in her complaint an allegation that CSX violated M.G.L. c. 93A concerning CSX's extremely limited involvement (receiving information from Engineer Held and then providing that information to AMTRAK's dispatcher) in the events that occurred on July 30, 2002. It is not a stretch to contemplate that if there is a leak of the information that the plaintiff would then amend her complaint to add an additional count for the leaking of that information as a further unfair and deceptive act in the course of the litigation under M.G.L. c. 93A.

      **iii.**     **Plaintiff demands the identities of CSX , its employees and its counsel's firm's employees access to said records**

Plaintiff seeks in the confidentiality agreement to be provided with a list of all of CSX employees and its counsel's employees who would be using the medical records that were to be provided. If CSX and its counsel agreed to this term, then the plaintiff would be provided with the name of each and every expert or consultant with whom it may confer concerning its defense of this matter. Such information is not required nor is it contemplated to be produced pursuant to Fed. R. Civ. P. 26, and would intrude upon the attorney-client privilege and work product doctrine and would compromise CSX's ability to defend this case. Also, many people who work within CSX may have a reason to review the medical information provided by the plaintiff thus, such a requirement is completely unworkable.

    **B.**     **THE PLAINTIFF HAS FAILED TO ALLEGE THAT SHE WILL BE SUBJECT TO ANNOYANCE, EMBARRASSMENT, OPPRESSION OR UNDUE BURDEN OR EXPENSE**

The plaintiff has failed to allege that if the court does not grant her motion that she will be subjected to annoyance, embarrassment, oppression or undue burden or expense. Such a showing is absolutely required for the court to grant her motion pursuant to Fed. R. Civ. P. 26(c). The court may, upon a showing of "good cause," make an order when justice requires in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See*: Fed. R. Civ. P. 26(c). The plaintiff complains stridently throughout her motion that CSX refused to agree to the confidentiality agreement, yet she utterly fails to provide any argument that she will be adversely affected if her motion is denied. Without arguing that she will be so affected she cannot establish "good cause" for the allowance of her motion and her motion must be denied. The court must deny the plaintiff's motion given that she has failed to

fulfill the definite criteria for the allowance of her motion. Anderson v. Cryovac, 805 F.2d 1, 7-8 (1st Cir. 1986).

Additionally, CSX notes that the motion is utterly void of any allegation, as there is no basis for such, that CSX or its counsel were responsible for the leaking of the pre-litigation demand letter to the press in January 2003. Further, and particularly now that the litigation has commenced, the plaintiff has no reasonable or rational basis on which to alleged that CSX or its counsel will release any document, record or material provided to it through discovery.

### C.     THE PLAINTIFF CANNOT ESTABLISH "GOOD CAUSE" IN ORDER FOR HER MOTION TO BE ALLOWED

The plaintiff has failed to allege or establish the "good cause" necessary for the court to allow her motion.[2] It is the plaintiff who has the burden of proof to show the necessity of the issuance of the protective order which requires 'a particular and specific demonstration of fact." General Dynamics Corp. v. Selb Manufacturing Co., 481 F.2d 1204, 1212 (8th Cir. 1973). The court's finding of "good cause" "must be based on a particular factual demonstration of potential harm, not on conclusory statements." Koster v. Chase Manhattan Bank, 93 F.R.D. 471, 479-80 (S.D.N.Y. 1982). The plaintiff has failed to provide the court with any particular and/or specific facts which demonstrate a potential harm that would warrant a finding of "good cause" in order for her motion to be allowed, therefore her motion must be denied. Nor can she hope to make such a showing, in any event. Mr. Allen died as the result of suffering a heart attack. Yet, the plaintiff claims, in her law suit, that CSX's negligence somehow contributed to this unfortunate occurrence. It is absolutely imperative to CSX's defense that records pertaining to Mr. Allen's

---

[2] This is assuming that the court somehow reads the statement contained in the plaintiff's proposed confidentiality agreement that Mrs. Allen and her counsel found that the leaking of their pre-litigation demand letter to the press distressful as a possible allegation that she would be somehow subjected to annoyance, embarrassment, oppression, or undue burden or expense should the medical records be released.

pre-existing medical condition, his autopsy and the cause of his death, be produced and analyzed, in accordance with the standard rules of procedure. Mrs. Allen has made her decedent's medical condition an issue in this litigation and cannot now seek to impose her own rules on how information pertaining to these issues will be produced.

      D.    **THE PLAINTIFF AND HER COUNSEL HAVE MADE THEMSELVES AVAILABLE FOR INTERVIEWS AND HAVE BEEN SUBSTANTIALLY QUOTED IN THE PRESS AS TO THE VARIOUS ASPECTS OF THIS CASE**

The plaintiff and her counsel have proactively made themselves available to the media (both print and television) for interviews concerning very specific facts and issues concerning the case. It would be inequitable to allow the plaintiff to now come to this court and be granted a protective order concerning that which they previously publicly discussed with the media. Also, the plaintiff's and her counsels' statements to the media can only characterized as subjecting the defendants to embarrassment and oppression by attempting to turn public opinion against the defendants. The court must negatively exercise its discretionary power by denying the plaintiff's motion so as not to reward or provide an advantage to the plaintiff and her counsel. *See* Seattle Times, 467 U.S. at 36.

**III.    CONCLUSION**

The plaintiff failed to allege that she will be subject to annoyance, embarrassment, oppression or undue burden or expense and, therefore cannot establish "good cause" for the allowance of her motion. The proposed agreement contains assertions and statements that could potentially aid and assist the plaintiff in the future litigation. The plaintiff and her counsel have made themselves available for interviews and have been substantially quoted in the press as to

the various aspects of this case and must not be rewarded or allowed an advantage.

WHEREFORE, the plaintiff's motion must be denied.

                                CSX TRANSPORTATION, INC.,
                                by its attorneys,

                                /s/ Richard A. Davidson, Jr.
                                Michael B. Flynn         BBO# 559023
                                Richard A. Davidson, Jr.   BBO# 552988
                                FLYNN & ASSOCIATES, P.C.
                                400 Crown Colony Drive, Suite 200
                                Quincy, MA 02169
                                (617) 773-5500

Dated: November 5, 2004