# Exhibit "A"

**boston.com**            THIS STORY HAS BEEN FORMATTED FOR EASY PRINTING



Marlene Allen is suing the MBTA and calling for defibrillators on trains. Her husband, James, died of a heart attack on a train in 2002. (Globe Staff Photo / Essdras Suarez)

# Husband's death on T spurs demand for change

The Boston Globe

**By Shelley Murphy, Globe Staff | July 21, 2004**

WELLESLEY -- It's unbearable for Marlene Allen to think about how her husband died two years ago after suffering a heart attack on an MBTA commuter train, his life slowly slipping away as the conductor wasted precious time stopping at three stations for passengers, but not for emergency help.

A doctor on board and other passengers frantically tried to revive 61-year-old James Allen and begged the crew to stop for help on July 30, 2002. By the time the train stopped 20 minutes later at Back Bay station in Boston, where paramedics used a defibrillator to try to jolt Allen's heart and restore its rhythm, it was too late.

"They handled the emergency in a way that assured his death," said Marlene Allen, who has tried and failed to persuade the MBTA to put portable defibrillators on its commuter trains. So today, lawyers representing Allen will sue the MBTA for wrongful death, in part, they said, because the T has refused her request for defibrillators on all 54 commuter trains, even though she offered to cover the estimated $108,000 cost from any settlement she would get from the T.

"They haven't done anything that would prohibit it from happening again," Allen said during an interview at her Wellesley home. "They refuse to put defibrillators on trains, even if they don't have to buy them. It doesn't seem as if they have accepted responsibility or valued Jim's life at all."

Allen's lawyers, Leo V. Boyle and Bradley M. Henry of the Boston law firm of Meehan, Boyle, Black & Fitzgerald, said the T has frustrated their attempts to settle the case since they filed a demand letter in January 2003 seeking $25 million in damages.

The attorneys said the MBTA offered to settle the case in May for less than a quarter of what Allen was asking for and then withdrew its offer when she accepted it. They said the T said it wouldn't agree to any settlement that required them to put defibrillators on its commuter trains.

"The notion that the T is going to rifle through our briefcases and shopping bags in the name of public safety is an absurdity when they won't even stop a train for a man who's dying and desperately needs help," Boyle said. During negotiations, he added, the MBTA had a "can't do attitude" and showed "enormous inertia and resistance to change of any kind that isn't required by law."

Joe Pesaturo, a spokesman for the T, said the comments from Allen's lawyers were "a complete misrepresentation of the settlement discussions," but he declined to elaborate.

Pesaturo confirmed that the T doesn't have defibrillators on any of its trains and currently has no plans to put them there. He said the T has eight defibrillators at stations, including one each at Park Street, Government Center, Back Bay, and Downtown Crossing, and two at North Station and South Station.

In April, the MBTA announced plans to install more defibrillators in commuter rail and subway stations after an MBTA employee used one to revive a 78-year-old New Hampshire man who had collapsed on a platform at Park Street station.

Pesaturo said the T will be getting 50 more defibrillators in September. He wouldn't say why the MBTA has opted not to put defibrillators on its commuter trains, but said, "We're deploying the defibrillators where maximum benefit is achieved."

But Allen said it's critical to put defibrillators on trains to give commuters who suffer heart attacks their best chance of survival. "I never aspired to be the poster senior for defibrillators, but they save lives and anybody in a captive situation is in jeopardy," she said.

James Allen was an internationally recognized coastal scientist who worked for the US Geological Survey in Boston and was instrumental in establishing the Boston Harbor Islands National Park. He was an adjunct research professor at Rutgers University and previously taught at Northeastern University and the University of Arkansas.

He and his wife had two children, a son, Fletcher, and a daughter, Julie, and celebrated their 30th wedding anniversary the month he died.

He boarded the train at the Wellesley Hills commuter rail station and lost consciousness before reaching the next stop. Passengers told investigators they pleaded with conductors to stop the train and were horrified when it halted three times to pick up passengers, who stepped around Allen as he lay unconscious on the floor.

One passenger said that she demanded to know why the train was stopping to pick up passengers and that the conductor, who was collecting tickets, told her: "What about the people on the platform? Take it up with the T."

Two medical specialists hired by Allen's lawyers concluded that if Allen had been treated with a defibrillator within 10 to 12 minutes of his collapse he probably would have survived without any brain or neurological injuries.

A third specialist -- Julian Aroesty, chief of clinical cardiology at Beth Israel Deaconess Medical Center -- wrote that "the regrettable response of those in charge of directing the management of this emergency was the primary reason for Dr. Allen's preventable death."

Marlene Allen said she is haunted by the way her husband died. "I see the time going and the brain going," she said. "I see this incredible mind slowly starved. It didn't have to be."

She believes that he would be alive today to walk his daughter down the aisle at her wedding in the fall if a defibrillator had been on that train or if emergency help had been sought sooner.

Defibrillators that are readily accessible to the public have become increasingly common in airports, including Logan International Airport, as well as malls, offices, and public buildings. Last fall, a major study sponsored by the National Heart, Lung, and Blood Institute showed that having defibrillators in airports and other public places and training ordinary people to use them could double the chances of surviving cardiac arrest.

Allen's death drew national headlines and brought heavy criticism to the MBTA, which owns the trains and rails, and Amtrak, which operated the trains and provided the crew. The conductor was suspended with pay after the incident, but eventually returned to his job.

Later, Amtrak confirmed that it had purchased 13 defibrillators three weeks before Allen died, but hadn't begun using them. Since last July, the commuter rail trains have been run by the Massachusetts Bay Commuter Railroad

Co., which replaced Amtrak.

A consultant hired by the MBTA after Allen's death recommended putting defibrillators in key commuter rail and subway stations, MBTA patrol vehicles, and some boats.

Allen said that if she wins her case and if the MBTA still refuses to put defibrillators on commuter trains she and her children will use some of the money to establish a foundation that would buy them for public entities that can't afford them.

She recalled sitting on her screened porch six weeks after her husband died and hearing noise in the distance from a football game at Wellesley High School. Applause, then gasping sounds, followed by silence and an ambulance's siren.

She thought a player had been hurt, but later learned that a referee had collapsed on the field and was revived by a trainer from Newton North High School who had brought a defibrillator to the game. "It was as if the world was saying, 'Here's how you do it right,' " Allen said.

© Copyright 2004 The New York Times Company