UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARLENE V. ALLEN, Executrix of the Estate of James R. Allen, Ph.D.,<br>      Plaintiff,<br>v.<br><br>MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, NATIONAL RAILROAD PASSENGER SERVICE (a/k/a "AMTRAK") and CSX TRANSPORTATION, INC.,<br>      Defendants. | CIVIL ACTION<br>NO: 04-12080-PBS |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER
MOTION TO COMPEL DISCOVERY FROM DEFENDANT
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY**

Plaintiff Marlene V. Allen, Executrix of the Estate of James R. Allen, Ph.D. has filed a motion pursuant to Fed. R. Civ. P. 37 and L.R. 37.1(A) to compel defendant Massachusetts Bay Transportation Authority ("MBTA") to answer interrogatories, to designate one or more witnesses to testify pursuant to a timely-served Rule 30(b)(6) deposition notice and to provide amended and supplemental responses to plaintiff's document requests. As grounds for her motion, plaintiff states that the MBTA has: (a) failed to answer interrogatories and has indicated its intention to refuse to substantively do so; (b) has indicated its intention to refuse to designate a witness to appear pursuant to a timely-served Rule 30(b)(6) deposition notice; and (c) has failed to properly respond to requests for amended and supplemental responses to document requests. As further grounds, plaintiff states as follows:

**BACKGROUND**

1. This case arises out of the July 30, 2002 death of plaintiff's decedent, Dr. James Allen, who suffered a cardiac arrest onboard an MBTA commuter train operated by a crew that

refused to stop the train for medical assistance but, instead, continued to board and disembark passengers at three station stops over more than twenty (20) minutes while Dr. Allen received CPR on the floor of the train.

2.  After nearly two years of negotiations and repeated delays on the part of the MBTA, the plaintiff filed this suit on July 21, 2004, serving her Complaint together with document requests pursuant to Rule 34 on September 13, 2004. (*See* Plaintiff's First Request for Production of Documents to Defendant [MBTA] attached as **Exhibit A**.)

3.  On September 28, 2004, the defendants removed the case to this court where, since plaintiff had served discovery prior to removal, the MBTA's required automatic disclosures under Fed. R. Civ. P. 26(a) became due on October 18, 2004. However, the MBTA made only a minimal Rule 26 disclosure that included only documents that had already been disclosed by other parties and included almost none of the documents previously requested in the plaintiff's Rule 34 document requests. (*See* Defendant MBTA's Initial Disclosures, p. 2, attached as **Exhibit B**.)

4.  Notwithstanding the MBTA's refusal to respond to plaintiff's document requests, plaintiff proceeded to notice and take depositions of various individuals involved in the incident and its aftermath. In December 2004 and January 2005, plaintiff took the depositions of the three Amtrak train crew members, one individual Amtrak administrator, a Rule 30(b)(6) deposition of CSX through two designated dispatch employees, and two individual MBTA administrators. The depositions of the individual MBTA witnesses in particular disclosed significant gaps as to their knowledge of the incident, its investigation and procedures and policies related thereto.

5.  It was not until after the plaintiff had actually drafted and delivered a Motion to Compel on January 11, 2005 (*See* Plaintiff's First [Draft] Motion to Compel attached as **Exhibit C**), that the MBTA finally provided responses to some of the plaintiff's document requests. (*See* MBTA Objections and Responses to plaintiff's document requests attached as **Exhibit D**.) As indicated in plaintiff's draft motion to compel, the MBTA had never requested (from either the plaintiff or the court) an extension of time to respond to the document requests, no extension was ever granted and the fact that the MBTA had failed to respond to document requests had been raised repeatedly during depositions. (*See* **Exhibit C**, Draft Motion to Compel, at p. 3, ¶ 6.)

6.  After completing a thorough review of the MBTA's written responses to plaintiff's document requests, on April 6, 2005, plaintiff's counsel served a detailed, seven-page letter to the MBTA's counsel requesting amended responses and further production of missing documents and also requesting a discovery conference pursuant to L.R. 7.1 and 37.1. (*See* Letter of Counsel dated April 6, 2005 attached as **Exhibit E**.) On April 11, 2005, counsel for the defendant MBTA called to request an additional seven (7) days (i.e., until April 20, 2005) to respond to plaintiff's letter on grounds of illness and plaintiff's counsel immediately granted the additional time. (*See* Plaintiff's L.R. 7.1 and 37.1 Certifications *infra*.) However, since that time, counsel for the MBTA has failed to respond to plaintiff's request for discovery conferences under L.R. 7.1 and 37.1 other than to state that the MBTA intended to make some type of response at some point in the future. (*See* E-Mail exchange dated April 22, 2005 attached as **Exhibit F**.)

7.  With the May 2, 2005 factual discovery deadline approaching, on March 24, 2005, plaintiff timely served interrogatories and a Rule 30(b)(6) deposition notice upon the MBTA. (*See* Plaintiff's First Interrogatories [to the MBTA] attached as **Exhibit G** and plaintiff's Notice

of Rule 30(b)(6) Deposition and Schedules A and B attached as **Exhibit H**.)  As of April 26, 2005, defendant MBTA has not served answers or objections to such interrogatories and its counsel has expressly stated that the MBTA does not intend to substantively answer such interrogatories.  However, the MBTA's counsel did state in an e-mail that both plaintiff's interrogatories and the corporate deposition notice to the MBTA were, in his view, "cumulative, unnecessary, burdensome and unlikely to add to the material facts concerning liability issues." (*See* **Exhibit F**, E-Mail exchange and L.R.37.1 Certifications set forth in Plaintiff's Motion to Compel.)  During a discovery conference in anticipation of this motion, the MBTA's counsel reaffirmed that the MBTA would not produce a Rule 30(b)(6) witness on April 29, 2005 and would not be providing substantive answers to interrogatories.

## ARGUMENT

Insofar as factual discovery in this case closes on May 2, 2005 and defendant MBTA has failed to serve answers or objections to plaintiff's interrogatories, has stated its intention to refuse to substantively answer such interrogatories, has stated its intention to refuse to designate a witness to testify in response to a timely-served Rule 30(b)(6) deposition notice and has failed to timely respond to plaintiff's April 6, 2005 letter requesting a discovery conference under L.R. 7.1 and 37.1 regarding the MBTA's failure to properly respond to document requests, plaintiff is obliged to file this motion to compel the MBTA to comply with its discovery obligations.

I.  **THE MBTA HAS FAILED TO ANSWER INTERROGATORIES AND HAS STATED ITS INTENTION TO REFUSE TO SUBSTANTIVELY ANSWER SUCH INTERROGATORIES UPON A NOTION THAT THEY ARE, IN THEIR ENTIRETY, "CUMULATIVE, UNNECESSARY [AND] BURDENSOME, [ETC.]"**

Rule 33(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "any party may serve upon any other party written interrogatories ...."  Sub-part (b) of Rule 33 requires

that "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable."  The rule goes on to provide that "[t]he party upon whom interrogatories have been served shall serve a copy of the answers, and objections if any, within thirty (30) days after the service of the interrogatories." Rule 33(b)(3). Moreover, the rule provides that "[a]ll grounds for an objection to an interrogatory shall be stated with specificity ... [and that any] ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown." Rule 33(b)(4). Finally, L.R. 33.1(A)(3) provides that "[e]ach objection and the grounds therefor shall be stated separately" and sub-part (C) specifically provides that:

> "[w]hen an objection is made ..., it shall state with specificity all grounds upon which the objecting party relies.  Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed waived."

Local Rule 33.1(C)(1)

Plaintiff's interrogatories were timely-served upon defendant MBTA on March 24, 2005. (*See* **Exhibit G**, Interrogatories to [MBTA].)  As of April 26, 2005, no answers or objections in accordance with Rule 33(b) had been served by the defendant MBTA and no extension of time to respond has been made to, or was granted by, either the plaintiff or the court.  More importantly, however, the MBTA has expressly stated that it does not intend to serve substantive answers to such interrogatories.  By e-mail and in a discovery conference convened by plaintiff's counsel in anticipation of this motion, the MBTA's counsel reaffirmed that his client would not answer the interrogatories and was, instead, considering the filing of a motion for a protective order upon a claim that such interrogatories were, in their entirely, "cumulative, unnecessary, burdensome and

unlikely to add to the material facts concerning liability issues." (*See* **Exhibit F**, E-Mail exchange of April 22, 2005 and L.R. 7.1 and 37.1 Certifications in Plaintiff's Motion.)

Nevertheless, the defendant has not filed such a motion for a protective order and, since the interrogatories at issue are the only interrogatories the plaintiff has ever served upon the defendant, it is difficult to understand how, in their entirety, they could be viewed as "cumulative" or "unnecessary" or "unlikely to add to the material facts" of the case. If these were the defendant's views as to particular interrogatories, then the appropriate response would have been to serve timely, properly stated and specific objections to each of the particular interrogatories the defendant considered to be improper; however, the defendant opted simply not to respond and, instead, threaten to file, at some unspecified point in the future, a motion for a protective order. Such conduct is not in accordance with the defendant's obligations to make discovery and, consequently, the defendant should be ordered to serve answer to the interrogatories within fourteen (14) days pursuant to Fed. R. Civ. P. 37 and L.R. 37. Moreover, since the defendant has not serve proper, timely written objections in accordance with Fed. R. Civ. P 33 or L.R. 33.1, plaintiff requests that the court order that any objections that could have otherwise been asserted are deemed waived.

## II. THE MBTA HAS INDICATED ITS INTENTION TO REFUSE TO DESIGNATE A WITNESS TO TESTIFY PURSUANT TO A PROPERLY ISSUED RULE 30(B)(6) DEPOSITION NOTICE.

On March 24, 2005, plaintiff served a Notice of Taking Rule 30(b)(6) Deposition upon the defendant MBTA together with a Schedule A of topics of inquiry and a Schedule B of documents to be brought to the deposition. In the enclosure letter, plaintiff's counsel invited the defendants to propose alternative dates given the possibilities of multiple designated witnesses.

(See Enclosure Letter dated March 24, 2005 attached as **Exhibit I**.)  Similar deposition notices and schedules were served upon defendant Amtrak and Amtrak's counsel promptly arranged for the testimony of witnesses that it intended to designate under the rule.  Plaintiff's counsel received no response or written objection to the deposition notice or schedules from the MBTA.

However, on April 22, 2005, less than a week before the MBTA's scheduled deposition, counsel for the MBTA indicated by e-mail that he viewed both the interrogatories and the corporate deposition notice as "cumulative, unnecessary, burdensome and unlikely to add to the material facts concerning liability issues" and that he was considering the filing of a protective order.  Rather than convene a deposition that the defendant has stated its refusal to attend, and thereby incur costs recoverable under Fed. R. Civ. P. 30(g), plaintiff's counsel first confirmed that the MBTA did not intend to appear at the scheduled deposition and now files this motion to compel the defendant to designate witnesses to appear and testify on the MBTA's behalf.

The defendant MBTA has an affirmative obligation to act in response to a deposition notice served pursuant to Rule 30(b)(6). *Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water resources Authority*, 93 F.R.D. 62, 66-67 (1st Cir. 1981).  In *Mitsui*, it appeared that the defendant served a specific, timely objection that a corporate deposition properly noticed by the plaintiff would be "repetitious, burdensome, harassing, oppressive [or] cumulative of prior discovery." *Id.* at 64-65 and *citing Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975) (that Rule 30(b)(6) deposition might prove "repetitious with what plaintiff had learned from other sources, was not sufficient to support a protective order against taking the deposition ....")

Noting, among other things, that it was not infrequent that a "corporate officer being deposed would disclaim knowledge of facts sought by the deposing party," the court ruled that

Rule 30(b)(6) imposed a duty upon the corporate defendant to "name and produce one or more persons who consent to testify on its behalf as to matters known or reasonably available to the organization ... [and that] ... [t]he burden is on the corporation to decide who will appear for it." *Id.* at 66 (internal citations omitted). The court ordered that the defendant:

> "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the plaintiff] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the plaintiff] as to the relevant subject matters."

*Id.* at 66-67.

The fact that preparing one or more witnesses to testify on behalf of the corporation may seem, to some degree, "burdensome" is no excuse for failing to comply with the duties imposed by Rule 30(b)(6). *See Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 36-37 (D. Mass. 2001) ("even if the documents are voluminous and the review of those documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed.") *citing Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 639 (D. Minn. 2000) ("the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a corporation ... can be fully and fairly explored.") The fact that plaintiff took the depositions of two individual witnesses from the MBTA also does not excuse the MBTA's refusal to appear at a Rule 30(b)(6) deposition where, in a great many instances, the witnesses did not know the answer to deposition questions and had not prepared to testify on specific topics as provided for in Rule 30(b)(6).

Consequently, plaintiff requests this court to issue an order that, within fourteen (14) days, the defendant designate one or more persons to testify on its behalf who have knowledge of the matters sought in the plaintiff's Schedules A and B and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by plaintiff's counsel.

### III. DEFENDANT MBTA HAS FAILED TO RESPOND TO REQUESTS FOR AMENDED AND FURTHER RESPONSES TO DOCUMENT REQUESTS.

Rule 34(a) of the Federal Rules of Civil Procedure provides, in pertinent part that: "[a]ny party may serve on any other party a request to produce and permit the party making the request ... to inspect and copy, any designated documents ...."  Subpart (b) provides that: "[t]he party upon whom the request is served shall serve a written response within 30 days after the service of the request.  A shorter or longer time may be directed by the court or, in the absence of such an order, agreed to in writing by the parties ...."

Plaintiff duly served document requests upon defendant MBTA on September 13, 2004. Defendant MBTA failed or refused to serve a written response to plaintiff's requests for more than ninety (90) days and only responded after plaintiff prepared and served a motion to compel the production of those documents.  In fact, instead of seeking from either the court or the serving party any extension of time to respond as provided for in the rules, the MBTA simply ignored its obligations under the rules.   Thereafter, once the defendant did respond, it included a large number of blanket objections that failed to set forth with any specificity the grounds for such objections.

On April 6, 2005, plaintiff outlined in a detailed letter various deficiencies in the defendant's untimely response to the document requests and sought a L.R. 7.1 and 37.1 discovery conference.  When, on April 13, 2005, counsel for the defendant requested an additional seven

(7) days through April 20, 2005 to respond due to illness, plaintiff's counsel immediately granted the request. However, defendant thereafter failed to respond to plaintiff's letter other than to state that the MBTA intended to make some type of response at some point in the future. Given that factual discovery closes in this case on May 2, 2005 and that the defendant continues to cause delay in the making of discovery, plaintiff is obliged to file this motion to compel amended and supplemental responses to document requests from the defendant MBTA.

      A.   **Failure to Produce Documents that Correspond with Requests.**  As a preliminary matter, Fed. R. Civ. P. 34 provides that one producing responsive documents shall produce them either "as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." However, a large number of the MBTA's responses state, in essence, nothing more than "see documents produced" or "none, other than as produced" and the like, with no indication at all as to what documents the defendant intended to refer. By way of example, plaintiff addresses Response Nos. 18 and 36:

> **REQUEST NO. 18:**  Complete copies of all schedules, rosters and/or assignment lists that identify any and all personnel assigned to manage, supervise, monitor, dispatch or otherwise oversee train crews working on board all commuter rail trains designated P514 from July 15, 2002 through August 15, 2002.
>
> **RESPONSE NO. 18:**  None, other than as produced.

(*See also* **Response Nos. 24 and 64** set forth in **Exhibit D**.)    **AND**

> **REQUEST NO. 36**: Complete copies of all emergency preparedness plans, emergency manuals, emergency procedures, manuals of instruction, rulebooks, rules of conduct, safety rules, employee timetables, special instructions, general orders, bulletin orders, summary bulletin orders, division notices, customer service notices, policies or regulations, medical emergency guidelines, que cards, outlines, checklists, etc. (hereinafter "emergency procedures") relating to train crew member action, conduct, communications and activities in the event of a medical emergency on board commuter rail trains operated by or on behalf of the defendant as of July 30, 2002. as of July 30, 2002.

-10-

**RESPONSE NO. 36:** See document produced.

(*See also* **Response Nos. 14, 26-30, 34-35, 37, 39, 41-42, 52-53, 58**, **63** set forth in **Exhibit D**).

Such unspecified responses which do not refer to specific documents and are not otherwise organized or labeled, make it impossible for the plaintiff to know what documents, if any, the defendant is producing in response to the categories of requested documents set forth in the requests. Consequently, plaintiff requests that the defendant be ordered to comply with Rule 34 and specify which documents it intended to produce in response to which requests so that plaintiff can determine whether the defendant's responses are sufficient or lacking.

B. **Blanket Objections.** Plaintiff first notes that the MBTA failed to serve any responses to the plaintiff's document requests within thirty days, or within sixty days or within ninety days, all without seeking an extension and at a time when the plaintiff was repeatedly asking for such documents for use in scheduled depositions. In fact, it was not until plaintiff's counsel had drafted a motion to compel that the defendant finally served a response. Plaintiff therefore seeks an order consistent with L.R. 34.1(C)(1) that "any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed waived."

Nevertheless, to address the requests individually, in several instances the MBTA responded to a document request by merely reciting a blanket objection and then failing to offer any basis in support of the objection. One example of this tactic is Response Nos. 50:

> **REQUEST NO. 50:** Complete copies of any incident or injury reports (together with any attachments of related documents filed with such reports) relating to any person suffering injury or illness on board the defendant's trains regardless of whether medical assistance was summoned from July 30, 2001 to the present.

**RESPONSE NO. 50:**  The Defendant, MBTA, objects as not relevant, burdensome and oppressive.  Further, the request seeks information which is privileged.

In this request, plaintiff seeks incident or injury reports involving onboard illnesses or injuries starting five (5) years before the incident in this case.  The MBTA's sole response is to object that the request "is not relevant, burdensome and oppressive ... [and further] ... seeks information which is privileged."  The MBTA makes no attempt at all to suggest how incident reports from onboard illnesses are "irrelevant" when, after this incident, the MBTA itself determined that its commuter rail trains average between six and ten onboard medical emergencies every week.  The MBTA then attempted to object that the request was "burdensome or oppressive," but made no effort at all to explain how or why the request is burdensome.  Moreover, to state by rote that information sought is "privileged" with no attempt to explain what privilege applies, to what documents it applies, how it applies and to whom is simply scoffing at the rules of discovery.

Another example of the use of impermissible blanket objections is in Response No. 57:

**REQUEST NO. 57:**  Complete copies of all training and education manuals, materials, course-books, text books, pamphlets, bulletins, syllabi, outlines, guidelines, simulated emergency response exercises, computerized training programs, quizzes, tests and/or other materials relating to provision, installation and/or training on any type of AED obtained for use in any vehicle, facility or office of the defendant and/or its agents, servants, representatives, contractors or employees at any time since July 30, 1992.

**RESPONSE NO. 57:**  The MBTA objects as not relevant, burdensome and oppressive. (*See also*, **Response Nos. 38, 43, 51, 63, 67, 69 and 70.**)

Request No. 57 seeks documents relating to MBTA training on AEDs that it already owns, a request clearly intended to discover the extent of knowledge and familiarity on the part of the MBTA regarding the devices.  The defendant's entire response is: "The MBTA objects as

-12-

not relevant, burdensome and oppressive." Such blanket objections are not in compliance with the MBTA's discovery obligations and should not be countenanced by this court.

Another example is found in Response No. 49:

**REQUEST NO. 49**: Complete copies of any incident or injury reports (together with any attachments of related documents filed with such reports) relating to any person suffering injury or illness on board the defendant's trains for which medical assistance was summoned from July 30, 1997 to the present.

**RESPONSE NO. 49:** Objection. The defendant objects to this request as it seeks privileged information and is over broad in scope, and seeks information spanning a period of eight years. To attempt to respond to this request would require review of many files and would take an inordinate amount of employee time.

In Request No. 49 plaintiff seeks incident or injury reports starting five (5) years before the date of the subject incident in which persons suffered onboard illness or injuries, but for which medical assistance was specifically summoned. In this response, the MBTA does not object that the information sought is irrelevant; instead, it simply states that it is in some unspecified manner "privileged" and is somehow "over broad in scope" with no attempt to either support or explain either objection. The response continues that "to respond ... would require review of many files and would take an inordinate amount of employee time." This is an utterly inadequate objection to an obviously relevant document request. By its very nature, discovery requires – indeed, the rules mandate – the review of "many files," often by employees who have other work to do. *See e.g., Calzaturficio S.C.A.R.P.A. s.p.a.,* 201 F.R.D. at 36-37, *supra.* It is notable that the defendant did not object that the request is "unduly burdensome" or "oppressive" or supports its claim with any factual basis; rather, the MBTA merely responds that complying with its discovery obligations would require the review of "many files" and require "inordinate ... employee time" with no attempt to quantify or explain any facts that support the objection.

What is perhaps most astonishing about the MBTA's refusal to search for or produce documents responsive to requests such as No. 49 is that the MBTA has apparently already searched for and produced such documents in response to a simple Freedom Of Information Act ("FOIA") request posed after this incident by a non-litigant. At Tab K of the MBTA's production appears a Memorandum from Assistant General Counsel Susan Krupanski to Chief Operating Officer Anne Herzenberg and Acting Chief of Police William Fleming instructing them to locate and produce copies of medical emergency incident reports back to January 2000 pursuant to a FOIA request from the Boston Herald. (See Document Nos. 1137 to 1139 attached as **Exhibit J**.) A total of 136 pages of documents responsive to the FOIA request were apparently located. However, the MBTA failed to include copies of any such documents in response to the plaintiff's document requests. (*See also*, **Response Nos. 47 and 48**.) Asserting such a position while, at the same time, conducting identical searches and document productions to FOIA requests merely underscores the MBTA's failure to meet its discovery obligations here.

As courts have repeatedly held, merely reciting an objection (e.g., "it's burdensome") does not satisfy the requirement for stating the reasons that support an objection (e.g., the documents requested are not searchable by computer, there are approximately 27,000 paper files that would require a minimum of 100 person-hours to review all with a good faith belief that, in any event, such a search will be futile.) *Harris v. U. S.*, 121 F.R.D. 652 (W.D.N.C., 1988); *Olsen v. K-Mart Corp.*, 175 F.R.D. 570 (D. Kan. 1997); *Pulsecard, Inc., v. Discover Card Services, Inc.*, 168 F.R.D. (D. Kan. 1996); *Schwartz v. Marketing Pub., Co.*, 153 F.R.D. 16 (D. Conn. 1994). The reason for requiring such specificity in objecting is obvious; without such statements of reasons, the court and the requesting party are left to speculate as to the basis for the particular

ground stated. *O'Connor v. AM General Corp. and Chrysler Corp.*, 1992 WL 382366 (E.D. Pa. 1992) (burden falls on party resisting discovery to show specifically how each discovery item is overly broad, burdensome, oppressive, etc.) It is therefore the party resisting discovery that has the burden to clarify and explain its objections. *Martin v. Easton Publishing Co.*, 85 F.R.D. 312, 315 (1980). The MBTA has failed to do this in nearly every instance.

    C. **Claims of Privilege.** There remain a number of unanswered questions as to the MBTA's invocation of unspecified privileges, particularly with respect to Response Nos. 11, 14, 49, 50 and a one-page "Privilege Log" accompanying the responses. Request No. 11 illustrates:

> **REQUEST NO. 11**: Complete copies of each statement, whether recorded, transcribed, handwritten, typed or otherwise, purportedly given by or on behalf of any of the defendants (including, but not limited to, any of the crew members of P514 and their supervisors) relating to the incident.

> **RESPONSE No. 11**: None, other than as produced or as identified on privilege log.

The MBTA failed to specify or describe the nature of the privileges it asserts either in the responses or in its "privilege log." Nevertheless, it appears from the log that it might have intended to invoke the work product doctrine, a qualified privilege that provides substantially less protection of documents than, say, the attorney-client privilege. It is notable that the "Investigation Report by Arthur J. Schultheiss Associates" referenced in the MBTA's privilege log is an astonishing 108 pages long. While it is, of course, possible that the entire 108 pages constituted a single report prepared at the request of counsel, that would appear unlikely. If the report was accompanied by witness statements and that is the explanation for its size, the parties had already entered into an agreement to exchange all witness statements and that material should be produced. If the report is accompanied by photographs or diagrams made at or near the time of the incident, then those photographs and diagrams are themselves discoverable.

If properly and timely asserted (which, plaintiff submits, it was not), the work product doctrine may protect from disclosure certain specific documents, but it does not protect factual information contained in such documents. If, for example, the withheld document contains the identities of witnesses to the incident or persons believed to have substantial discoverable information about the claims or defenses asserted in the case, then that information is not protected merely because it appears only in a document having qualified protection under the work product doctrine. In any event, the MBTA would have had an independent obligation to have already disclosed that information under Fed. R. Civ. P. 26 and L.R. 26.2. It is not possible to determine either from the defendant's responses or the "privilege log" the explanation for such a long investigation report being withheld unless there are documents attached to it that have not been separately identified. In short, the information provided is insufficient for the plaintiff to determine whether the withholding should be contested.

Consequently, in the event the court does not deem the defendant's much belated objections to have been waived, then the Plaintiff requests that this court order the defendant to amend its Response Nos. 11 and 14 and the "Privilege Log" to specify what, if any, documents are attached to or accompanied the Investigation Report, to whom they were addressed or directed, the dates of such documents, in whose custody such documents remain and which "counsel" on behalf of the MBTA requested the report.

**D.    Failure to Produce Documents.**    Finally, in several instances the MBTA stated that it had produced documents or would produce documents but, in fact, it failed to produce certain documents and/or has denied the existence of documents that plaintiff reasonably believes do, in fact, exist. Examples of such instances may be found at Request Nos. 3 and 4:

    **REQUEST NO. 3:** Complete copies of each report, evaluation, chronology or other such document concerning the incident prepared and/or filed by or on behalf of any entity with any governmental body, division, department, board, bureau, committee or registry.

    **RESPONSE NO. 3:** Please refer to the response to Request No. 1.

    **AND**

    **REQUEST NO. 4:** Complete copies of each document, including correspondence, memoranda, e-mails, written messages, notices or other materials of any nature, containing, embodying or referring to any communications between the defendant and any agency, body, division, department, board, committee, official or authority of the state, federal or municipal governments concerning any aspect of the incident.

    **RESPONSE NO. 4:** Please refer to response to Request No. 1.

Request Nos. 3 and 4 request government filings or communications regarding the incident. Based on depositions taken in the case, plaintiff is aware that MBTA officials reported to, communicated with and/or met several times with representatives of the Federal Railroad Administration, with the Massachusetts Secretary of Transportation's office and with the MBTA Board, yet to plaintiff's knowledge, no documents that constitute or reflect such communications have been produced.

Response No. 13 is a similar example:

    **REQUEST NO. 13:** Complete copies of each letter, communication, minutes of meetings, transcript, report, e-mail, telex, written message or other document that alleges or suggests any breach, violation, infraction, noncompliance, infringement or other such failure to follow or abide by the terms, provisions or conditions of any contract or agreement between the defendant and any other person or entity relating to the incident.

    **RESPONSE No. 13:** The MBTA has been unable to find any such documents, other than as produced.

(*See also*, **Response Nos. 1-2, 9, 31-33, 40-41, 44, 45, 54-56** as discussed in detail in **Exhibit E**).

In Request No. 13, the plaintiff simply requests the MBTA's written notices of breaches of contract to defendant Amtrak relating to the incident, notices of which plaintiff's counsel were

specifically informed (and, in fact, shown) by MBTA representatives prior to the filing of this action and which are, in any event, required pursuant to the MBTA's Operating Agreement with Amtrak. Yet, in Response No. 13, the MBTA claims that it "is unable to find any such documents."[1] Such positions suggest a failure or unwillingness to undertake a reasonable search for responsive documents. Clearly such documents exist, clearly they are relevant and clearly no privilege applies or has been asserted with respect to them. The plaintiff is entitled to their production immediately.

Also under this heading, in **Response No. 15** (applicable insurance policies) and **Response No. 56** (AED use in other MBTA vehicles and facilities), the defendant has stated its agreement to produce responsive documents, yet three (3) months after its already untimely responses, no such documents have been produced. Likewise, the defendant has stated that it "will supply" documents in response to **Request No. 65** (expert *curriculum vita*) and **Request No. 66** (materials from defense expert Robert Myerberg, M.D. which, again, counsel for the MBTA previously expressly agreed to produce, but did not), but only under Fed. R. Civ. P. 26(a)(2). However, simply because another rule requires disclosure of the same or similar information or documents at a different time does not mean that the defendant can simply ignore its discovery obligations under Rules 33 or 34. As stated, the defendant has not set forth valid objections to **Request Nos. 65 and 66** and plaintiff requests that the promised production be ordered to take place within fourteen (14) days.

---

[1] *See also,* **Response No. 33** - post-incident bus and special transportation materials were produced, but no pre-incident materials were produced as requested; **Response Nos. 9 and 64** - seeking statements to the press regarding the incident and co-defendant Amtrak's role in it. MBTA claims "none," yet plaintiff is aware of press releases, faxes and press contacts made by MBTA officials that have not been produced.

## CONCLUSION

WHEREFORE, plaintiff respectfully requests that, pursuant to Rule 37, this Court issue an order that includes the following or other, similar remedies as the court deems appropriate:

(1) the defendant shall, within fourteen (14) days, serve complete, substantive answers to plaintiff's interrogatories;

(2) the defendant shall, within fourteen (14) days, designate one or more persons to testify on its behalf who have knowledge of the matters sought in the plaintiff's Schedules A and B and prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by plaintiff's counsel;

(3) the defendant shall, within fourteen (14) days, serve amended and supplemental responses to the document requests served by the plaintiff on September 14, 2004 that address the issues raised by plaintiff's April 6, 2005 letter (**Exhibit E**); and

(4) the defendant's failure to serve timely answers, responses and/or objections to discovery requests served by the plaintiff shall operate, in accordance with Local Rule 33.1(C)(1), as a waiver of any belated objections.

> Respectfully submitted,
> Plaintiff, Marlene V. Allen, Executrix of the
> Estate of James R. Allen, Ph.D.
> By Her Attorneys,
>
> /s/ Bradley M. Henry
> _____
> Leo V. Boyle, BBO No. 052700
> Bradley M. Henry, BBO No. 559501
> MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.
> Two Center Plaza, Suite 600
> Boston, MA  02108-1922
> (617) 523-8300

### CERTIFICATE OF SERVICE

I, Bradley M. Henry, hereby certify that on this 27th day of April 2005, I served the foregoing Plaintiff's Memorandum in Support of Her Motion to Compel Discovery from Defendant Massachusetts Bay Transportation Authority, by electronic filing and by mailing an exact copy thereof, via first class mail postage prepaid to all counsel of record:  Michael J. McCormack, Esq., David T. Mitrou, Esq. AND Amy M. Soisson, Esq., McCormack & Epstein, 1 International Place - 7th Floor, Boston, MA 02110; William J. Dailey, Jr., Esq. and Harry A. Pierce, Esq., Sloan and Walsh, Three Center Plaza, Boston, MA 0210.

> /s/  Bradley M. Henry
> _____
> Bradley M. Henry