UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARLENE V. ALLEN, Executrix of the Estate of James R. Allen, Ph.D.,<br><br>                       Plaintiff,<br>v.<br><br>MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, NATIONAL RAILROAD PASSENGER SERVICE (a/k/a "AMTRAK") and CSX TRANSPORTATION, INC.,<br>                       Defendants. | CIVIL ACTION<br>NO: 04-12080-PBS |

## NOTICE OF TAKING RULE 30(B)(6) DEPOSITION

     Please take notice that on **Friday, April 29, 2005 at 10:00 A.M**., at the offices of Meehan, Boyle, Black & Fitzgerald, P.C., Two Center Plaza, Suite 600, Boston, Massachusetts 02l08, the attorneys for the plaintiff in this action will take the deposition upon oral examination of defendant **Massachusetts Bay Transportation Authority,** pursuant to Fed. R. Civ. P. 30(b)(6), before Maggioli Reporting Services, Notary Public in and for the Commonwealth of Massachusetts, or before some other officer authorized by law to administer oaths. The oral examination will continue from day to day until completed. The deponent is hereby respectfully advised of its duty, under Rule 30(b)(6), to designate one or more persons to testify on its behalf as to matters known or reasonably available to the defendant on the topics set forth in the attached **Schedule A**. The defendant is further advised of its duty to produce at these deposition copies of documents responsive to that attached **Schedule B**. You are invited to attend and cross-examine.

                                                          The Plaintiff, by her attorneys,

                                                          _____
                                                          Leo V. Boyle, BBO No. 052700
                                                          Bradley M. Henry, BBO No. 559501
                                                          MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.
                                                          Two Center Plaza, Suite 600
                                                          Boston, MA  02108-1922
                                                          (617) 523-8300

## CERTIFICATE OF SERVICE

     I, Bradley M. Henry, certify that on March 24, 2005, I served the forgoing Plaintiff's Notice of Taking Rule 30(b)(6) Deposition, by serving an exact copy thereof via first class mail, postage prepaid, to all counsel of record: Michael J. McCormack, Esq., David T. Mitrou, Esq. and Amy M. Soisson, Esq., McCormack & Epstein, 1 International Pl. - 7th Floor, Boston, MA 02110; William J. Dailey, Jr., Esq. and Harry A. Pierce, Esq., Sloan and Walsh, Three Center Plaza, Boston, MA 0210.

                                                       _____
c:  Maggioli Reporting                              Bradley M. Henry

**EXHIBIT H**

## SCHEDULE "A"

**Testimony as to the following matters, to the extent known or reasonably available to the defendant Massachusetts Bay Transportation Authority (MBTA"), is hereby requested in accordance with Fed. R. Civ. P. 30(b)(6).**

1. Any evaluation, assessment, review or investigation undertaken by any person, agent, employee or representative of the defendant relating to the incident or its aftermath, including but not limited to, the conduct, actions and/or communications of any passengers and crew members on board P514 on July 30, 2002.

2. Any reports to or communications, meetings or interaction with the Federal Railroad Administration or other state or federal authority relating to the incident, its aftermath or rules, regulations, emergency preparedness plans or procedures relating to the incident.

3. The terms and applicability of each contract, agreement, letter of understanding, written arrangement, or other such documents that governed, controlled or pertained to operation of the MBTA commuter rail service on the Framingham - Worcester line in July 2002.

4. The terms and applicability of each contract, agreement, letter of understanding, written arrangement, or other such documents that govern, control or pertain to operation of the MBTA commuter rail service on the Framingham - Worcester line at the present time.

5. Any assertions on the part of any defendant that any party to a contract responsive to the previous topic (Item No. 4) violated, or failed to comply with, any term of any contract or agreement that relates in any way to the incident.

6. The assignments, duties, obligations and responsibilities of the employees, agents, representatives or contractors operating train P514 on July 30, 2002.

7. The rules, regulations, policies and/or procedures of any entity, government or organization which the defendant believes controlled, or should have controlled, the actions and conduct of the train crew onboard the subject train with respect to the incident.

8. The rules, regulations, policies or procedures of any entity, government or organization which the defendant believes controlled, or should have controlled, the handling of a medical emergency onboard an MBTA commuter rail train traveling on the Framingham - Worcester line as of July 2002.

9. Any changes, modifications, updates, supplementation, deletions and/or additions to any of the rules, regulations, policies or procedures identified in the two preceding topics (Item Nos. 7 and 8) since the date of the incident.

10. Any and all emergency preparedness plans, policies or procedures to be followed by employees, agents, representatives or contractors for the evaluation, reporting and/or handling of a medical emergency on board any train operated by or on behalf of the defendant as of July 30, 2002.

11. Any modifications, revisions, corrections, supplements, additions, amendments, substitutions, new editions and/or other alterations or replacements of any type or nature to any to any plans, policies or procedures responsive to the preceding topic (Item No. 11) since July 30, 2002.

12. Any actions taken or plans created to improve the emergency medical response abilities of, and/or procedures for, train crews operating any train by or on behalf of any defendant from July 30, 1997 to the present.

13. The defendant's compliance or failure to comply with Federal Railroad Administration requirements, recommendations or guidelines regarding emergency procedures, communications, training, reporting and equipment in relation to medical emergencies on board trains since July 30, 1992.

14. The "Medical Emergency Procedures Review" undertaken by Transportation Resource Associates, Inc. ("TRA") at the request of the MBTA and any materials provided to TRA, the findings and recommendations made by TRA and the specific steps and decisions made by the defendant in response to such findings and recommendations.

15. Industry, trade association and/or governmental standards, practices, guidelines, procedures, studies, surveys and/or databases that regulate and/or provide guidance to train crews, their supervisors and dispatchers in the handling of medical emergencies on board trains from July 30, 1997 and the present.

16. Industry, trade association and/or governmental standards, practices, guidelines, procedures, studies, surveys and/or databases that regulate and/or provide guidance to employees, operators, their supervisors and dispatchers in the handling of medical emergencies on the defendant's commuter rail, subway, light rail, bus, paratransit, and commuter boat transportation systems operated by or on behalf of the defendant from July 30, 1997 to the present.

17. Instances or reports of incidents that relate to any person suffering injury or illness on board the defendant's trains for which medical assistance was summoned from July 30, 1997 to the present.

18. Complaints (including, but not limited to, formal, legal complaints) against the defendant or any of its employees, agents or contractors brought by or on behalf of any person claiming to have suffered illness or injury while on board the defendant's trains from July 30, 1992 to the present.

19. The emergency and/or medical equipment and supplies on board the defendants trains as of July 30, 2002 and, in particular, the equipment onboard P514.

20. Recommendations, discussions, contemplations, or suggestions by any person or entity (including, but not limited to agents, servants, representatives, contractors or employees of the defendant) that automated external defibrillators ("AEDs") could or should be made available on board the defendant's trains or located at any of the defendant's stations since July 30, 1992.

21. Any evaluations, assessments, reviews or examinations of the medical and/or emergency services and contact information available along the routes of the defendant's trains as of the time of the incident and since July 30, 1992.

22. Any press releases, news bulletins, media notices, responses to media inquiries and/or other such documents issued, formally or informally, by or on behalf of the defendant, relating to the incident, the conduct and statements of the train crew and/or passengers of P514, other incidents of medical emergencies on board the defendant's commuter rail trains, AEDs, any reviews, evaluations or changes of emergency procedures or operations relating to medical emergencies and/or any change in contractors for commuter rail operations from July 30, 2002 to the present.

23. The structure, organization, roles and/or responsibilities of the defendant's organization and its various components (e.g., departments, divisions, subsidiaries, boards, committees, officers, administration, employees, etc.) as of July 30, 2002.

24. Meetings of the board of directors and/or officers of the defendant that addressed, made reference to or discussed the incident, medical emergencies on board trains, AEDs and/or medical emergency policies, procedures, reporting, training or equipment since July 30, 1992.

25. Complaints or communications from any person, entity or source that claim or suggest any type of access or egress difficulty for emergency medical personnel at the Auburndale, West Newton, Newtonville and Yawkey Commuter Rail Stations and any and all steps to address such complaints or communications.

26. Any safety and/or emergency preparedness audits, assessments, reviews or inspections conducted with respect to the defendant's operations between July 30, 1997 and the present

27. The relationship between the MBTA and Amtrak and their respective scopes of authority with respect to the drafting and implementation of Standard Operating Procedures (including, but not limited to: rules, regulations, guidelines, plans, manuals, notices, bulletins, etc.) and the training of personnel for handling and reporting medical emergencies related to the operation of commuter rail trains.

28. The defendant's financial status as of July 30, 2002 including, but not limited to: the defendant's overall annual budget, actual revenues and expenditures for that fiscal year; the defendant's annual commuter rail operations budget, actual revenues and expenditures for that fiscal year; the defendant's total assets for that fiscal year; the total yearly salaries for the defendant for that fiscal year; and the defendant's total budget for safety-related expenditures for that fiscal year.

29. Any programs, whether actually implemented or merely proposed, for the purchase, lease, distribution, installation, use and training related to Automated External Defibrillators ("AEDs") anywhere on premises, property, locations and/or vehicles owned, leased, operated or controlled by the defendant between July 30, 1997 and the present.

30. The defendant's: (a) daily (a/k/a "morning"); (b) weekly; (c) monthly; and (d) "special" conference calls and meetings with Amtrak personnel from July 25, 2002 through September 25, 2002.

31. The defendant's periodic reviews of training records of any commuter rail train crew members and dispatch personnel by the defendant from July 30, 1997 through July 30, 2003.

32. Any comparisons, evaluations, reviews, assessments, audits or examinations of the defendant's System Safety Program Plan, emergency preparedness plans, standard operating procedures, and other such documents from July 30, 1997 to the present.

33. Information obtained from and/or exchanged with the American Public Transportation Association's Commuter Rail Safety Management program, Safety Management Audit Programs, System Safety Programs, Commuter Rail Safety Training courses and Emergency Response Planning and System Security programs from July 30, 2002 to the present.

34. Information obtained from and/or exchanged with the Transportation Research Board, the Transit Cooperative Research Programs, and/or the TCRP Oversight and Project Selection Committee from July 30, 2002 to the present that relate to emergency planning and coordination, medical emergencies, emergency preparedness training, onboard rail safety and AEDs, from, or exchanged with.

35. Materials, protocols, guidelines, data, seminars, presentations, recommendations, memoranda, manuals, correspondence and other such documents that relate to emergency planning and coordination, medical emergencies, emergency preparedness training, onboard rail safety and AEDs, from, or exchanged with, the U.S. Department of Transportation Office of Research and Special Programs Administration, the Federal Railroad Administration and/or the Massachusetts Departments of Transportation and of Public Safety.

36. The documents produced in the defendant's automatic disclosures and/or in the defendant's responses to the plaintiff's requests for production of documents as well as those responsive to the attached Schedule "B" of documents requested to be brought to the deposition.

## SCHEDULE "B"

**In accordance with Fed. R. Civ. P. 30(b)(5) and 34, the designated witness(es) of the defendant Massachusetts Bay Transportation Authority is (are) requested to bring to the deposition the following documents and, in accordance with Fed. R. Civ. P. 30(b)(6), be familiar with such documents:**

1. All documents responsive to, but not yet produced pursuant to, the plaintiff's requests for production of documents served upon the defendant in September 2004 (copy attached and incorporated herein.)

2. All documents requested on the record during the course of depositions taken to date in this case.

3. The complete incident file(s) as they are kept in the ordinary course of the defendant's operations of the following MBTA personnel that relate to: the incident and its aftermath; investigation(s) into the incident; the review conducted by TRA and its findings, recommendations and related follow-up; the Steering Committee referenced in the TRA's reviews; policy and/or procedure reviews and modifications; assertions of contract violations or non-compliance between any of the defendants relating to the incident; MBTA press releases and public statements regarding the incident and its aftermath and AEDs; correspondence or other communications with Amtrak, CSX, the FRA, the media, and any other person or entity regarding the incident or its aftermath:

    a. Michael H. Mulhern, General Manager;
    b. Anne Herzenberg, Chief Operating Officer;
    c. Alan H. Castaline, Deputy Chief Operating Officer;
    d. Susan S. Altshuler, Director of Operations;
    e. Anna M. Barry, Director of Railroad Operations;
    f. Stephen A. Jones, Section Chief / Transportation - Railroad Operations;
    g. Cynthia A. Gallo, Director of Safety;
    h. William Fleming, MBTA Police;
    i. Lewis Best, MBTA Police;
    j. Peter Pasciucco, MBTA Police;
    k. Joseph Pesaturo, MBTA Spokesperson;
    l. Lydia Rivera, MBTA Spokesperson; and
    m. Brian Pedro, MBTA Spokesperson.

4. All meeting notices, agendas, minutes, notes, reports, action lists, memoranda, draft policy and procedure changes, tape recordings, transcripts and other materials generated for, at or relating to: (a) daily (a/k/a "morning"); (b) weekly; (c) monthly; and (d) "special" conference calls and meetings between MBTA personnel and Amtrak personnel from July 25, 2002 through September 25, 2002.

5. Any records, memoranda, reports, summaries, lists, audits, assessments, letters or other documents that reflect any periodic reviews of training records of any commuter rail train crew members and dispatch personnel by the defendant from July 30, 1997 through July 30, 2003.

6.  Any records, memoranda, reports, summaries, lists, audits, assessments, letters or other documents that reflect any evaluation, summary, review, list, study, survey, database or examination of the medical and/or emergency services and contact information available along the routes of the defendant's trains since July 30, 1992.

7.  All comparisons, evaluations, reviews, assessments, audits or examinations of the defendant's System Safety Program Plan, emergency preparedness plans, standard operating procedures, and other such documents from July 30, 1997 to the present.

8.  Copies of any materials, audit reports, data, seminars, presentations, recommendations, memoranda, manuals, correspondence and other such documents from, or exchanged with, the American Public Transportation Association's Commuter Rail Safety Management program, Safety Management Audit Programs, System Safety Programs, Commuter Rail Safety Training courses and Emergency Response Planning and System Security programs from July 30, 2002 to the present..

9.  Copies of any materials, audit reports, data, seminars, presentations, recommendations, memoranda, manuals, correspondence and other such documents that relate to emergency planning and coordination, medical emergencies, emergency preparedness training, onboard rail safety and AEDs, from, or exchanged with, the Transportation Research Board, the Transit Cooperative Research Programs, and/or the TCRP Oversight and Project Selection Committee from July 30, 2002 to the present.

10. Copies of any materials, protocols, guidelines, data, seminars, presentations, recommendations, memoranda, manuals, correspondence and other such documents that relate to emergency planning and coordination, medical emergencies, emergency preparedness training, onboard rail safety and AEDs, from, or exchanged with, the U.S. Department of Transportation Office of Research and Special Programs Administration, the Federal Railroad Administration and/or the Massachusetts Departments of Transportation and of Public Safety.

11. Documents related to communications, meetings or interaction with the Federal Railroad Administration or other state or federal authority relating to the incident, its aftermath or rules, regulations, emergency preparedness plans or procedures relating to the incident.

12. Documents that describe, reflect, summarize, assess and/or report the defendant's financial status as of July 30, 2002 including, but not limited to those relating to: the defendant's overall annual budget, actual revenues and expenditures for that fiscal year; the defendant's annual commuter rail operations budget, actual revenues and expenditures for that fiscal year; the defendant's total assets for that fiscal year; the total yearly salaries for the defendant for that fiscal year; and the defendant's total budget for safety-related expenditures for that fiscal year.

13. All reports, summaries, lists or other such documents which reflect a delay of 20 minutes or more of any commuter rail trains operating on the Framingham - Worcester line for the months of November 1999 through March 2000 and November 2000 through March 2001.

14. Any complaints, letters or other communications from any person, entity or source that claim or suggest any type of access or egress difficulty for emergency medical personnel at the Auburndale, West Newton, Newtonville and Yawkey Commuter Rail Stations and any and all steps to address such complaints or communications.

15. Correspondence, agendas, minutes, memoranda, drafts, plans and other documents that relate to meetings between MBTA and Amtrak personnel to consider, prepare, develop, draft, compare or otherwise discuss preparation of emergency preparedness plans for the MBTA commuter rail operation pursuant to federal regulation from July 30, 1997 to the present.