UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARLENE V. ALLEN, Executrix of the Estate of James R. Allen, Ph.D.,<br>　　　　　　　　　　Plaintiff,<br>v.<br>MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, NATIONAL RAILROAD PASSENGER SERVICE (a/k/a "AMTRAK") and CSX TRANSPORTATION, INC.,<br>　　　　　　　　　　Defendants. | CIVIL ACTION<br>NO: 04-12080-PBS |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER
MOTION TO DETERMINE SUFFICIENCY OF DEFENDANT'S
OBJECTIONS TO RULE 36 REQUESTS FOR ADMISSIONS**

Plaintiff has filed a motion pursuant to Fed. R. Civ. P. 36(a) to determine the sufficiency of objections asserted by defendant Massachusetts Bay Transportation Authority ("MBTA") in response to plaintiff's Requests for Admissions. As grounds for her motion, plaintiff states that a number of the MBTA's objections are improper, without merit and fail to comply with the requirements of Rule 36. In order for the Requests to have any meaning or effect and to narrow the areas of genuine dispute requiring development of proof for trial, plaintiff is obliged to seek the court's determination of the sufficiency of the MBTA's objections to Request Nos. 1, 2, 7, 8, 9, 10, 11 and 15 and an order that these matters be deemed admitted or, alternatively, an order that the MBTA serve proper answers under Rule 36.

**BRIEF BACKGROUND**

1.　　This case arises out of the July 30, 2002 death of plaintiff's decedent, Dr. James Allen, who suffered a cardiac arrest while traveling onboard an MBTA commuter train operated by an Amtrak crew who would not stop the train for medical assistance but, instead, continued to

board and disembark passengers at three station stops over more than twenty (20) minutes while Dr. Allen received CPR on the train from several passengers and a crew member.

2.      On March 28, 2005, plaintiff served a First Set of Requests for Admissions upon defendant MBTA as a means of narrowing issues requiring proof at trial regarding, among other things, which of the defendants bore which responsibilities under certain documents produced by the defendants during discovery. These requests were timely and were served well in advance of the discovery deadline of May 2, 2005. (*See* Requests for Admission attached as **Exhibit A**.)

3.      On April 26, 2005, defendant MBTA served its Response to plaintiff's requests but, in lieu of admitting or denying various requests, instead asserted a series of objections including: (a) that the requests raised "a question of law for the court to determine and not a question of fact" (Response Nos. 1-2 and 8); and (b) that the emergency preparedness plans and procedures produced by the defendants "speak for themselves" (Response Nos. 9-11 and 15.) (*See* MBTA's Responses attached as **Exhibit B**.)

4.      While plaintiff undertook the depositions of two individual MBTA witnesses in December 2004, the MBTA has since refused to answer any of plaintiff's interrogatories or to designate any witnesses pursuant to Rule 30(b)(6). These matters are the subject of a separate motion to compel filed by the plaintiff (Docket # 20.)

## GENERAL ARGUMENT

Although Rule 36 is found under the "Depositions and Discovery" section of the Federal Rules of Civil Procedure, it is not merely a discovery device; it is also properly used "as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove." *Jarvis v. Wal-Mart Stores, Inc.*, 161 F.R.D. 337, 338 (N.D. Miss. 1995) *quoting Pickens*

*v. Equitable Life Assur. Soc. of the United States*, 413 F.2d 1390, 1393 (5th Cir. 1969); *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 967 (3d Cir. 1988). One purpose of Rule 36 is "for facilitating the proof at trial by weeding out facts and items of proof over which there is no dispute." *Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 70 (W.D.N.Y 2000) *quoting* 4A Moore's Federal Practice, ¶ 36.02 (2d ed. 1982). *See also, Duncan v. Santaniello*, 1996 WL 121730 (D. Mass. 1996) (No. 94-30224-MAP) (proper to use Rule 36 to "have defendants admit such undisputed facts as have been previously revealed through discovery") *citing, Berry v. Federated Mut. Ins. Co.*, 110 F.R.D. 441, 443 (N.D. Ind. 1986); *Kershner v. Beloit Corp.*, 106 F.R.D. 498, 499 (D. Me. 1985).

In the instant case, plaintiff served a total of twenty (20) requests for admissions upon the MBTA. (*See* **Exhibit A**, Requests.) Plaintiff's purpose was to narrow and/or clarify the universe of disputed issues, especially as to the defendants' respective views on their status as owner and operator of the commuter rail service, as well as their respective obligations under various sets of emergency preparedness procedures, policies, rules and plans obtained during discovery.[1]

The defendant MBTA served responses that, in several instances, neither admitted nor denied nor properly objected to the requests as provided for under Rule 36(a). Rather, the responses at issue were "evasive and contrary to the spirit of Rule 36." *Koprowski v. Straight Arrow Pub., Inc.*, 1993 WL 444552 at p. 2 (E.D. Pa. 1993). Provided that a request "is understandable and straightforward, calls for relevant information, and does not violate a recognized privilege, an objection to a request to admit is improper and a mere statement that the

---

[1] One reason prompting plaintiff's requests was the MBTA's initial failure to identify or disclose its own Emergency Preparedness Plan (initially produced only by defendant CSX) and conflicting testimony as to which procedures, rules, regulations and emergency preparedness plans applied to the handling of the medical emergency.

responding party is unable to admit or deny, or lacks knowledge, is insufficient." *Booth Oil,* 194 F.R.D. at 79. Given that the MBTA's responses fail to comply with Rule 36 and assert objections that are without merit and appear intended to defeat the very purposes for which the rule was created, plaintiff brings the instant motion addressing each response separately below.

## ARGUMENT AS TO SPECIFIC REQUESTS

**REQUEST NO. 1:**   In its ownership of a commuter rail service that included Train P514 on July 30, 2002, the defendant ... [MBTA] was a common carrier.

**RESPONSE NO. 1:**   Objection. The defendant MBTA neither admits nor denies the allegations in Request No. 1 because the question of whether or not an entity that owns, but does not operate, a commuter service is a common carrier is a question of law for the court to determine and not a question of fact.[2]

AND

**REQUEST NO. 8:**   For the purposes of the MBTA Passenger Train Emergency Preparedness Plan, both defendant MBTA and defendant Amtrak wholly shared the responsibilities and duties set forth [in] (sic) the Plan.

**RESPONSE NO. 8:**   Objection. It is a question of law and not a question of fact whether the MBTA and Amtrak "wholly shared the responsibilities and duties set forth in the Plan," where Amtrak has a "Passenger Train Emergency Preparedness Plan" of its own that is separate and distinct from the MBTA's Plan.

## ARGUMENT
(Response Nos. 1-2 and 8)

Rule 36(a) expressly provides that a party may serve requests that "relate to statements or opinions of fact *or of the application of law to fact* ..." (emphasis supplied.) In Response Nos. 1

---

[2]   The MBTA's Response No. 2 is similar. Request and Response No. 2 read as follows:

**REQUEST NO. 2:**   Plaintiff's decedent, James R. Allen, was a passenger in transit onboard defendant MBTA's commuter rail Train P514 on July 30, 2002.

**RESPONSE NO. 2:**   Objection. The defendant MBTA admits James R. Allen was a passenger on Train P514 on July 30, 2002 but insofar as the allegations of Request No. 2 refer to "MBTA's commuter rail train" the request is ambiguous and so the defendant MBTA can neither admit nor deny such portion of the Request; further responding the MBTA says the question whether Mr. (sic) Allen was a "passenger in transit" is a question of law for the court to determine.

and 8, the defendant improperly objects that the requests do not pose "a question of fact" and therefore, presumably, the MBTA may ignore its obligation to answer. In Response No. 2, the MBTA objects that "the question of whether Mr. (sic) Allen was a 'passenger in transit'" on Train P514 "is a question of law for the court to determine." As explained in detail below, the MBTA is simply wrong as to each of these objections and has failed to comply with Rule 36.

The MBTA's notion that it need only respond to "questions of fact" under Rule 36 is obviously wrong on its face based on the language of the rule itself. More than thirty years ago, Rule 36 was specifically amended to make clear that it was "not limited to 'facts' ... [but also] ... appl[ied] to any 'matters' relating to opinions of fact, opinions of law with respect to fact, and statements of law with respect to fact." *Allensworth v. Commissioner of Internal Rev.*, 66 T.C. 33, 37 (U.S. Tax Ct. 1976) (1976 WL 3626). Notwithstanding its refusal to answer, in its objection, the MBTA itself points directly to the type of issue that Rule 36 was designed to flush out.

All the request asks is whether, under the facts of this case, the MBTA was acting as a common carrier. Rather than stake out its position as the rule requires, the MBTA delays and prevaricates and claims that only the court can engage in such analysis. Whether, in a given situation, an entity was acting as a common carrier is a classic "application of law to fact" and the MBTA has no excuse for refusing to answer the request. *See Diederich v. Department of the Army*, 132 F.R.D. 614, 617 (S.D.N.Y. 1990) ("If an application of law to fact is requested, it is directed to, and the response is to be furnished by, the other party.") The MBTA cannot reasonably argue that it is unfamiliar with the concept of a common carrier. *See Argueta v. [MBTA]*, 2 Mass. L. Rptr. 642, n.1 (Mass. Super. 1994) (Lauriat, J.) (1994 WL 879577) ("There is no dispute that the MBTA is a common carrier") and *Arguenta v. [MBTA],* 3 Mass L. Rptr. 16

(Mass. Super. 1994) (Doerfer, J.) (1994 WL 879534) (the Appeals Court has held that "the MBTA is a common carrier ....") *citing Magaw v. [MBTA]*, 21 Mass. App. Ct. 129, 131 (1985).

Had the MBTA simply denied the contention, then plaintiff would know that she would have to elicit factual support that the MBTA was, in fact, acting as a common carrier on the day in question. *Booth Oil*, 194 F.R.D. at 80-81 (if defendants fail to deny, then plaintiff is "on notice as to which provisions remain at issue.") Had the MBTA simply admitted the issue, then that need would be avoided. *Id.* at 80 *citing, Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3rd Cir. 1992). Instead, the MBTA improperly tries to avoid taking any position, thus forcing the plaintiff to seek the court's determination on the objection or risk the waste of having served the request in the first place.[3] *See United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) (if party refuses to properly respond to Rule 36 request, the requesting party "cannot safely avoid the expense of preparing to prove the [requested matters] ... and the purpose of the rule is defeated.")

The common carrier issue aside, at the heart of the remaining disputed requests is the question of which of several emergency procedures, policies, rules and plans applied to which

---

[3] The same is true of the MBTA's Response No. 2. While the MBTA admits that Dr. Allen was a "passenger" on Train P514, it improperly objects that it is a "question of law" as to whether he was a "passenger in transit" at the time. Though it may be a distinction utterly without meaning (*see Argueta v. [MBTA]*, *supra* at p. 5), it underscores how improper the MBTA's objections are. Whether one is a "passenger in transit" is not a question of law and never has been. But, even if it were, it would be precisely the type of legal issue to which the application of specific facts must result in a straightforward admission or a denial under Rule 36. In *Allensworth* (*supra* at p. 5), the court cited as an example that a request calling for an admission that a particular employee had "acted in the scope of his employment" was appropriate under Rule 36 because it had the potential to "remove a major issue from the trial." *Allensworth,* 66 T.C. at 38. In exactly the same manner, whether a given person on a given train at a given time was a "passenger in transit" may help to define the nature of the duty owed to that person. (*see Argueta v. [MBTA]*, *supra* at p. 5). For the MBTA to either re-write the request or to refuse to answer the request as written is improper. See *United States v. Virkutis*, 1987 WL 7806 (N.D. Ill. 1987) (No. 83 C 1758) (defendant not entitled to re-write requests and request deemed admitted for defendant's improper objection that he could not understand the term "occupying power.") Likewise, it is absurd for the MBTA to object that the phrase "MBTA's commuter rail train" is "ambiguous" when the phrases "MBTA commuter rail employees," "MBTA commuter rail operations" "MBTA commuter rail control center," "MBTA commuter rail officials" and the like are used repeatedly by the MBTA itself throughout its own Emergency Preparedness Plan. (*See e.g.,* MBTA Plan excerpts §§ 2.1, 2.3, 3.2, 4.1, 5.3, 5.12 attached as **Exhibit C**.)

parties, to the train crew and to the mishandling of the medical emergency that led to Dr. Allen's death.  Request No. 8 asks the defendant to admit that, "[f]or the purposes of the MBTA Passenger Train Emergency Preparedness Plan [hereinafter "the MBTA Plan"], both defendant MBTA and defendant Amtrak wholly shared the responsibilities and duties set forth in the Plan."  Plaintiff sought this clarification because, it appears, one or more of several different sets of rules, procedures and plans may have applied to the emergency. (*See e.g.*, **Exhibit A**, Request No. 13, an "unwritten [MBTA] policy"; Request No. 15, Amtrak's Special Instruction "F-S1 - Passenger Train Emergency Situations.")

In Response No. 8, the MBTA objected that "[i]t is a question of law and not a question of fact whether the MBTA and Amtrak wholly shared the responsibilities and duties set forth in the Plan" and refused to answer on grounds that Amtrak, too, had its own "Emergency Preparedness Plan." (**Exhibit B**, Response No. 8.)  In preface, plaintiff points out that the MBTA Plan itself explicitly states that *"[f]or the purposes of this document [the MBTA Plan], each [party to the Operating Agreement between the MBTA and Amtrak] share the responsibilities and duties wholly."* (*See* MBTA Plan §§ 2.2 - 2.3 attached as **Exhibit C**.)  But, regardless of this explicit statement by the MBTA itself, plaintiff's request clearly does not pose a pure "question of law."

It is well established law that Rule 36 requests relating to the exchange, interpretation, use and meaning of documents are appropriate. *See Shawmut v. American Viscose Corp.*, 12 F.R.D. 488, 489 (D. Mass. 1952). "[A] statement of a document's text is a matter of fact" and a request calling upon a party to admit or deny that a statement from the actual text of an identified and relevant document "may not be ignored on grounds that the request seeks an interpretation of the text ...." *Booth Oil,* 194 F.R.D. at 80.  A "statement of a party's understanding of the

meaning or intent of a document" is a statement of fact, not a question of law, and is both authorized and appropriate under Rule 36. *Id. See also, Allenworth, supra*, 66 T.C. at 37 (rejecting argument that requests seeking "interpretation" or "understanding" of specific documents are objectionable on grounds that "it is for [the] Court to decide the meaning of the provisions of a document.") The content of a specific document may or may not be disputed and a party's request relating to a statement from such a document is entitled to a straightforward admission or denial. *United States v. Virkutis*, 1987 WL 7806 (N.D. Ill. 1987) (No. 83 C 1758).

The fact that Amtrak may have its own emergency preparedness plan has nothing to do with whether, under the MBTA Plan (as it expressly states), both the MBTA and Amtrak "share the responsibilities and duties wholly." It certainly does not render the matter "a question of law and not a question of fact."

In Request No. 8 (and, indeed, in Request Nos. 7, 9, 10 and 11 addressed below), plaintiff sets forth specific language contained in a relevant, clearly identified, MBTA document and asks the defendant to either admit or deny that the MBTA's understanding, interpretation or intended meaning of the language is the same as that stated by the plaintiff. If the MBTA agrees, then it should admit the request and eliminate the issue from dispute. If it disagrees, then it should deny the request and bear the risks of its denial. Instead, the MBTA seeks to avoid taking any position claiming that only the court can interpret the intended meaning of the MBTA's own document. That position is unambiguously wrong. Questions of documentary meaning or intent are questions of fact and, since the MBTA improperly sought to avoid complying with Rule 36, these requests should be deemed admitted. *See Booth Oil,* 194 F.R.D. at 80 (discussing contractual meaning and intent) *citing Bourne v. Walt Disney Co.*, 68 F.3d 621, 629 (2d Cir. 1995).

**REQUEST NO. 7:** The MBTA Passenger Train Emergency Preparedness Plan provided that, for the purposes of the Plan, the term "MBTA Commuter Rail" referred not only to MBTA employees, but also to Amtrak employees operating the commuter rail service and applied to both MBTA and such Amtrak employees.

**RESPONSE NO. 7:** The defendant MBTA neither admits nor denies and says *the document speaks for itself*.[4] (emphasis supplied.)

## ARGUMENT
### (Response Nos. 7, 9-11 and 15)

In refusing to admit or deny Request Nos. 7, 9, 10, 11 and 15, the MBTA repeatedly objects that the document referenced in each request "speaks for itself." Federal courts have consistently rejected this very objection. *Flohr v. Comdisco, Inc.*, 2002 WL 598522 (N.D. Ill.

---

[4] Rather than answer, the MBTA asserted the same objection in each of the following requests as well:

**REQUEST NO. 9:** The MBTA Passenger Train Emergency Preparedness Plan [hereinafter, the "Plan"] was the controlling document that was to be implemented to effectively manage any emergency situation that may occur during the course of normal operating conditions of the MBTA commuter rail service and was intended, among other things, to ensure preservation of life and to ensure the highest level of services for all MBTA commuter rail customers effected by an emergency situation.

**RESPONSE NO. 9:** The defendant MBTA neither admits nor denies and says *the document speaks for itself*; further, the MBTA can neither admit nor deny that it is the "controlling document" to the exclusion of Amtrak's Passenger Train Emergency Preparedness Plan. (emphasis supplied).

**REQUEST NO 10:** The MBTA [Plan] outlined both general and specific responsibilities and actions to be taken by the train conductor, other crew members and by dispatch personnel during an MBTA commuter rail emergency event.

**RESPONSE NO. 10:** The defendant MBTA says *the document speaks for itself* and neither admits nor denies this request. (emphasis supplied).

**REQUEST NO. 11:** The MBTA [Plan] contained no specific provisions that instructed or guided commuter rail train crews as to where to stop, or alternatively, when and how to express, their train to obtain the fastest possible emergency medical care in the event of an onboard medical emergency.

**RESPONSE NO. 11:** The defendant MBTA neither admits nor denies this request, but rather says *the document speaks for itself.* (emphasis supplied).

**REQUEST NO. 15:** Special Instruction "F-S1 - Passenger Train Emergency Situations" of Amtrak's New England Division Commuter Lines Timetable No. 1 that was in effect as of July 30, 2002 (hereinafter, "Special Instruction F-S1"), a copy of which ... is attached ..., applied to the handling of onboard medical emergencies by train conductors and other crew members operating the MBTA commuter rail.

**RESPONSE NO. 15:** The defendant MBTA says *the document, and the language contained therein, speaks for itself*. (emphasis supplied).

**REQUEST NO. 7:** The MBTA Passenger Train Emergency Preparedness Plan provided that, for the purposes of the Plan, the term "MBTA Commuter Rail" referred not only to MBTA employees, but also to Amtrak employees operating the commuter rail service and applied to both MBTA and such Amtrak employees.

**RESPONSE NO. 7:** The defendant MBTA neither admits nor denies and says *the document speaks for itself*.[4] (emphasis supplied.)

## ARGUMENT
### (Response Nos. 7, 9-11 and 15)

In refusing to admit or deny Request Nos. 7, 9, 10, 11 and 15, the MBTA repeatedly objects that the document referenced in each request "speaks for itself." Federal courts have consistently rejected this very objection. *Flohr v. Comdisco, Inc.*, 2002 WL 598522 (N.D. Ill.

---

[4] Rather than answer, the MBTA asserted the same objection in each of the following requests as well:

**REQUEST NO. 9:** The MBTA Passenger Train Emergency Preparedness Plan [hereinafter, the "Plan"] was the controlling document that was to be implemented to effectively manage any emergency situation that may occur during the course of normal operating conditions of the MBTA commuter rail service and was intended, among other things, to ensure preservation of life and to ensure the highest level of services for all MBTA commuter rail customers effected by an emergency situation.

**RESPONSE NO. 9:** The defendant MBTA neither admits nor denies and says *the document speaks for itself*; further, the MBTA can neither admit nor deny that it is the "controlling document" to the exclusion of Amtrak's Passenger Train Emergency Preparedness Plan. (emphasis supplied).

**REQUEST NO 10:** The MBTA [Plan] outlined both general and specific responsibilities and actions to be taken by the train conductor, other crew members and by dispatch personnel during an MBTA commuter rail emergency event.

**RESPONSE NO. 10:** The defendant MBTA says *the document speaks for itself* and neither admits nor denies this request. (emphasis supplied).

**REQUEST NO. 11:** The MBTA [Plan] contained no specific provisions that instructed or guided commuter rail train crews as to where to stop, or alternatively, when and how to express, their train to obtain the fastest possible emergency medical care in the event of an onboard medical emergency.

**RESPONSE NO. 11:** The defendant MBTA neither admits nor denies this request, but rather says *the document speaks for itself.* (emphasis supplied).

**REQUEST NO. 15:** Special Instruction "F-S1 - Passenger Train Emergency Situations" of Amtrak's New England Division Commuter Lines Timetable No. 1 that was in effect as of July 30, 2002 (hereinafter, "Special Instruction F-S1"), a copy of which ... is attached ..., applied to the handling of onboard medical emergencies by train conductors and other crew members operating the MBTA commuter rail.

**RESPONSE NO. 15:** The defendant MBTA says *the document, and the language contained therein, speaks for itself*. (emphasis supplied).

2002) (No. 01 C 3187) (awarding sanctions because "assertions that a 'document speaks for itself' ... are no more acceptable for Rule 36(a) purposes than they are in a responsive pleading") *citing State Farm Mut. Auto Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. 2001); *Booth Oil,* 194 F.R.D. at 80 (discussed *infra*); *Koprowski,* 1993 WL 444552 at p. 2 (objection that published article "speaks for itself" is improper and "not among the options contained in Rule 36 for responding to a request for an admission."); *Diederich*, 132 F.R.D. at 617 ("objections that documents or regulations "speak for themselves" ... are improper" under Rule 36); *United States v. Virkutis*, 1987 WL 7806 at pp. 2-3 ("ground asserted by [defendant] for refusing to admit or deny the Request, i.e., ... because a 'document speaks for itself,'" is not an appropriate response); *Kistler Instrumente, A.G. v. PCB Pieztronics, Inc.,* 1983 WL 1838 (W.D.N.Y. 1983) (objection "that the documents involved are public and 'speak for themselves' is not well taken"); *Allensworth,*, 66 T.C. at 37-39 (1976 WL 3626 at pp. 2-3) ("claim that a document 'speaks for itself' and that it is for this Court to decide the meaning of the provisions of a document" is not supported by authority and "does not relieve the [defendant] from the obligation of answering the requested admissions and setting forth his contentions with respect to such matters.)

The fact and the law of the matter is that "[d]ocuments do *not* speak ...." *Booth Oil,* 194 F.R.D. at 80 (emphasis supplied.)  Rather, "they represent factual information from which legal conclusions may follow [and] ... [t]he existence of a referenced document and whether it contains a particular provision may well present factual issues of importance to the case." *Id.*  It is therefore permissible to request that a party admit or deny a Rule 36 request relating to the accuracy, meaning or intent of textual material from a particular document. *Id.*   Conversely, it is impermissible and not in compliance with Rule 36 to object on such a ground.

-10-

Moreover, even if documents could be said to "speak for themselves," they certainly cannot be said to "speak" for the party responding to the Rule 36 request. *Kistler Instrumente,,* 1983 WL 1838 at p. 4. A request that relates to "the meaning of a document or government regulation is simply a request for defendant's admission of having understood the rule ... in a manner concurring with the meaning set forth by plaintiff." *Diederich*, 132 F.R.D. at 617.

As to the MBTA's objection in Response No. 9 that it "cannot admit or deny that [the MBTA plan] is the 'controlling document' to the exclusion of Amtrak's [Plan]," plaintiff responds that the MBTA probably should not then have included that precise statement in its own Plan. (*See* **Exhibit D**, MBTA Plan § 3.1, "Purpose and Scope" - *"This Plan is the controlling document to be implemented to effectively manage any emergency situation that may occur during the course of normal operating conditions."*) If, notwithstanding its own express statement to the contrary, the MBTA now wishes to claim that its own Plan was not "the controlling document," then it should have denied the request rather than obfuscate or seek to avoid taking a position.

Finally, the remedy of ordering that the matters set forth in the disputed requests be deemed admitted for the MBTA's refusal to comply with Rule 36 is fitting and appropriate. Based on the well-established law set forth above, it is not a "close call" as to whether the defendant's objections and refusals to respond were appropriate. Clearly, they were not. Even if a given response of a party were to "gut its case and subject it to summary judgment," a party served with Rule 36 request is not excused from answering but must, as the rule requires, admit or deny the requested matter. *Booth Oil,* 194 F.R.D. at 80 *quoting Langer v. Monarch Life Ins*.

*Co.*, 966 F.2d 786, 803 (2d Cir. 1995). A refusal to admit, without detailed, properly supported reasons as to why the responder cannot truthfully admit or deny, is the equivalent of an admission. *Fuhr v. Newfoundland-St. Lawrence Shipping, Ltd.*, 24 F.R.D. 9, 13 (S.D.N.Y. 1959). In a given case (although not necessarily in the instant case), a failure to properly respond to Rule 36 requests and the consequent "deeming of admissions" by the court "can effectively deprive a party of the opportunity to contest the merits of a case." *Kasuboski*, 834 F.2d at 1352. However, "[t]his result ... is necessary to insure the orderly disposition of case; parties to a lawsuit must comply with the rules of procedure." *Id.*

For these reasons and for the reasons set forth above that address Response Nos. 1, 2 and 8, the MBTA's repeated refusals to admit or deny the requests based on objections that the MBTA Plan and Amtrak regulations "speak for themselves" are improper and fail to comply with the requirements of Rule 36. Consequently, the matters set forth in Request Nos. 7, 9, 10, 11, and 15 should be deemed admitted as to defendant MBTA.

## CONCLUSION

WHEREFORE, plaintiff respectfully requests that, pursuant to Fed. R. Civ. P. 36(a), this court issue an order that provides for the following, or for such other remedies as the court deems appropriate:

(1) The matters set forth in Request Nos. 1, 2, 7, 8, 9, 10, 11 and 15 of the Plaintiff's Requests for Admission to the defendant MBTA are deemed admitted in accordance with Rule 36(a) for the MBTA's failure to comply with Rule 36;

or, alternatively,

(2) Defendant MBTA shall, within fourteen (14) days, serve amended answers to Request Nos. Request Nos. 1, 2, 7, 8, 9, 10, 11 and 15 of the Plaintiff's Requests for Admission and either expressly admit or deny the matters set forth therein.

> Respectfully submitted,
> Plaintiff, Marlene V. Allen, Executrix of the
> Estate of James R. Allen, Ph.D.
> By Her Attorneys,
>
> /s/ Bradley M. Henry
> _____
> Leo V. Boyle, BBO No. 052700
> Bradley M. Henry, BBO No. 559501
> MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.
> Two Center Plaza, Suite 600
> Boston, MA 02108-1922
> (617) 523-8300

**CERTIFICATE OF SERVICE**

I, Bradley M. Henry, hereby certify that on this 5th day of May 2005, I served the foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION TO DETERMINE SUFFICIENCY OF DEFENDANT'S OBJECTIONS TO RULE 36 REQUESTS FOR ADMISSIONS by electronic filing and by mailing an exact copy thereof, via first class mail postage prepaid to all counsel of record: Michael J. McCormack, Esq., David T. Mitrou, Esq. and Amy M. Soisson, Esq., McCormack & Epstein, 1 International Place - 7th Floor, Boston, MA 02110; William J. Dailey, Jr., Esq. and Harry A. Pierce, Esq., Sloan and Walsh, Three Center Plaza, Boston, MA 0210.

> /s/ Bradley M. Henry
> _____
> Bradley M. Henry