UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

MARLENE V. ALLEN, Executrix of the Estate
of James R. Allen, Ph.D.,

                              Plaintiff,

v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,
NATIONAL RAILROAD PASSENGER
SERVICE (a/k/a "AMTRAK") and CSX
TRANSPORTATION, INC.,

                              Defendants.

CIVIL ACTION
NO: 04-12080-PBS

## PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANT MASSACHUSETTS BAY TRANSPORTATION AUTHORITY UNDER FED. R. CIV. P. 36

Plaintiff Marlene V. Allen, Executrix of the Estate of James R. Allen, Ph.D. requests,

pursuant to Fed. R. Civ. P. 36, that within thirty (30) days the defendant Massachusetts Bay

Transportation Authority, by its designated officer or agent, admit, deny or otherwise

appropriately respond to the following requests for admissions concerning statements or opinions

of fact, the application of law to fact, and the genuineness of documents described herein.

### DEFINITIONS

Plaintiff incorporates by reference the *Uniform Definitions in Discovery Requests* set

forth in Local Rule 26.5.  Unless expressly stated otherwise, the following additional definitions

are not intended to replace the ordinary, accepted or common dictionary meaning of the words or

phrases used herein.  Rather, these definitions are intended to supplement commonly understood

definitions to assist the defendant to understand the plaintiff's intended usage, limit confusion

and facilitate the defendant's responses.                              **EXHIBIT A**

A.    "**PLAINTIFF**" means, unless otherwise indicated, Marlene V. Allen ("Mrs. Allen"), Administratrix of the Estate of James R. Allen, Ph.D., her agents, servants, representatives and attorneys.

B.    "**DECEDENT**" means, unless otherwise indicated, James R. Allen, Ph.D. ("Dr. Allen"), who was pronounced dead on July 30, 2002, as more fully described in the Plaintiff's Complaint.

C.    "**DEFENDANT**" means, unless otherwise indicated, the MASSACHUSETTS BAY TRANSPORTATION AUTHORITY ("MBTA"), specifically including the MBTA Police, as well as any of their predecessors, successors, parents or subsidiary entities or organizations, including their officers, directors, appointees, trustees, employees, agents, staff, committees, subcommittee, boards, representatives, members, insurers and attorneys (except with respect to matters claimed to be protected by the attorney-client privilege or work product doctrine in which case plaintiff requests a privilege log.)

D.    "**INCIDENT**" means the events and activities which occurred on July 30, 2002 which resulted in the death of the decedent as alleged in the Plaintiff's Complaint.

E.    "**RELATING TO, CONCERNING, WITH RESPECT TO AND REFERRING TO**" means constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, summarizing, mentioning and/or concerning.

F.    "**SUBJECT TRAIN**" means, unless otherwise indicated, the commuter rail train designated P514 traveling the "Framingham / Worcester Line" on July 30, 2002.

G.    "**TRAIN CREW" or "CREW**" means, unless otherwise indicated, the conductor, all assistant conductors, the engineer and any and all other railroad personnel operating train P514 on July 30, 2002.

H.    "**EXPERT**" means, unless otherwise indicated, any person the defendant reasonably anticipates calling to give expert opinion testimony at trial.

I.    "**STATEMENT**" means:

(a)    Any written or recorded statement, whether signed or unsigned, which has been made by, adopted or approved by, or on behalf of, the person making it; as well as

(b)    Any stenographic, mechanical, electrical, digital or other recording, or a transcription thereof, which is reasonably believed to be a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

-2-

## REQUESTS FOR ADMISSION

1.  In its ownership of a commuter rail service that included Train P514 on July 30, 2002, the defendant Massachusetts Bay Transportation Authority ("MBTA") was a common carrier.

2.  Plaintiff's decedent, James R. Allen, was a passenger in transit on board defendant MBTA's commuter rail Train P514 on July 30, 2002.

3.  As a common carrier, under Massachusetts law the defendant MBTA owed plaintiff's decedent, James R. Allen, the highest duty of care.

4.  To crew and operate its commuter rail service, including Train P514 on July 30, 2002, the defendant MBTA contracted with defendant National Railroad Passenger Corporation (a/k/a "Amtrak") which, as an operator of commuter trains, was itself a common carrier.

5.  The duty owed by the defendant MBTA to the plaintiff's decedent, James R. Allen, on July 30, 2002, while potentially shared by other persons or parties to this action, was a non-delegable duty.

6.  The "Passenger Train Emergency Preparedness Plan - Massachusetts Bay Transportation Authority Commuter Rail" that was in effect as of July 30, 2002 (hereinafter "MBTA Passenger Train Emergency Preparedness Plan"), a copy of which was marked as Exhibit 2 to the Deposition of Anna M. Barry and is attached hereto as **Exhibit A**, is a true, accurate and genuine copy of a business record generated and maintained in good faith and in the usual course of business by defendant MBTA.

7.  The MBTA Passenger Train Emergency Preparedness Plan provided that, for the purposes of the Plan, the term "MBTA Commuter Rail" referred not only to MBTA employees, but also to Amtrak employees operating the commuter rail service and applied to both MBTA and such Amtrak employees.

8.  For the purposes of the MBTA Passenger Train Emergency Preparedness Plan, both defendant MBTA and defendant Amtrak wholly shared the responsibilities and duties set forth the Plan.

9.  The MBTA Passenger Train Emergency Preparedness Plan was the controlling document that was to be implemented to effectively manage any emergency situation that may occur during the course of normal operating conditions of the MBTA commuter rail service and was intended, among other things, to ensure preservation of life and to ensure the highest level of services for all MBTA commuter rail customers effected by an emergency situation.

10.    The MBTA Passenger Train Emergency Preparedness Plan outlined both general and specific responsibilities and actions to be taken by the train conductor, other crew members and by dispatch personnel during an MBTA commuter rail emergency event.

11.    The MBTA Passenger Train Emergency Preparedness Plan contained no specific provisions that instructed or guided commuter rail train crews as to where to stop, or alternatively, when and how to express, their train to obtain the fastest possible emergency medical care in the event of an onboard medical emergency.

12.    As of July 30, 2002, defendant MBTA had no written standard operating procedure in place to instruct or guide commuter rail train crews as to where to stop, or alternatively, when and how to express, their train to obtain the fastest possible emergency medical care in the event of an onboard medical emergency.

13.    As of July 30, 2002, defendant MBTA had in place an unwritten policy (hereinafter, "unwritten policy") that, in the event of an on board  medical emergency, in coordination with the dispatcher, a commuter rail train crew was to stop the train at the next station or other nearest possible location to obtain emergency medical assistance.

14.    The MBTA's aforementioned unwritten policy was not followed by the train crew of commuter rail Train P514 on July 30, 2002.

15.    Special Instruction "F-S1 - Passenger Train Emergency Situations" of Amtrak's New England Division Commuter Lines Timetable No. 1 that was in effect as of July 30, 2002 (hereinafter, "Special Instruction F-S1"), a copy of which was marked as Exhibit 3 to the Deposition of James A. Peros, Jr. and is attached hereto as **Exhibit B**, applied to the handling of onboard medical emergencies by train conductors and other crew members operating the MBTA commuter rail.

16.    Defendant MBTA has given notice to defendant Amtrak that the acts or omissions of one or more members of the train crew on board Train P514 on July 30, 2002 constituted "excluded conduct" defined in pertinent part as "despicable conduct which is carried on with a willful and conscious disregard of the rights or safety of others" under Section 15(d) of the Operating Agreement between the MBTA and Amtrak in effect at the time of the incident.

17.    On or shortly after August 1, 2002, at the instruction of and in cooperation with defendant MBTA, defendant Amtrak adopted Special Instruction "940-S5 - Medical Emergencies," a copy of which was marked as Exhibit 2 to the Deposition of Michael J. O'Malley and is attached hereto as **Exhibit C**, and it applied thereafter to the handling of onboard medical emergencies by train conductors and other crew members operating the MBTA commuter rail.

18.    The "Transcription of voice tapes in connection with the Investigation of Train P514 of July 30, 2002," a copy of which was marked as Exhibit 2 to the Deposition of James A. Peros, Jr. and is attached hereto as **Exhibit D**, at the first through third pages of the exhibit, constitutes a genuine, true and accurate transcription of communications that took place between defendant Amtrak's Boston Assistant Chief Train Dispatcher and CSX's Assistant Chief Train Dispatcher (Exhibit D, exhibit pages 1-3).

19.    The "Transcription of voice tapes in connection with the Investigation of Train P514 of July 30, 2002," a copy of which was marked as Exhibit 2 to the Deposition of James A. Peros, Jr. and is attached hereto as **Exhibit D**, at the fourth through fifth pages of the exhibit, constitutes a genuine, true and accurate transcription of communications that took place between defendant Amtrak's Boston Assistant Chief Train Dispatcher and Conductor James A. Peros, Jr. on board Train P514.

20.    The "Transcription of voice tapes in connection with the Investigation of Train P514 of July 30, 2002," a copy of which was marked as Exhibit 2 to the Deposition of James A. Peros, Jr. and is attached hereto as **Exhibit D**, at the sixth and seventh pages of the exhibit (entitled "Beacon Park - 7/30/02"), constitutes a genuine, true and accurate transcription of communications that took place between Engineer Bruce B. Held on board Train P514 and CSX NA Dispatcher Richard L. Moran.

Plaintiff, Marlene V. Allen, Executrix of the
Estate of James R. Allen, Ph.D.
By Her Attorneys,


_____
Leo V. Boyle, BBO No. 052700
Bradley M. Henry, BBO No. 559501
MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.
Two Center Plaza, Suite 600
Boston, MA  02108-1922
(617) 523-8300

**CERTIFICATE OF SERVICE**

I, Bradley M. Henry, hereby certify that on this 28th day of March 2005, I served the foregoing PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANT MASSACHUSETTS BAY TRANSPORTATION AUTHORITY UNDER FED. R. CIV. P. 36, by serving an exact copy thereof, via first class mail postage prepaid to all counsel of record:  Michael J. McCormack, Esq., David T. Mitrou, Esq. and Amy M. Soisson, Esq., McCormack & Epstein, 1 International Place - 7th Floor, Boston, MA 02110; and William J. Dailey, Jr., Esq. and Harry A. Pierce, Esq., Sloan and Walsh, Three Center Plaza, Boston, MA 0210.


_____
Bradley M. Henry