UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 04-CV-12080-PBS

---

MARLENE V. ALLEN, Executrix of the Estate of )
James R. Allen, Ph.D., )
              Plaintiff, )
)
v. )
)
MASSACHUSETTS BAY TRANSPORTATION )
AUTHORITY, NATIONAL RAILROAD )
PASSENGER SERVICE (a/k/a "AMTRAK") and )
CSX TRANSPORTATION, INC., )
              Defendants. )

---

**RESPONSE OF THE DEFENDANT,
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY
TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS**

Request No. 1

    In its ownership of a commuter rail service that included Train P514 on July 30, 2002, the defendant Massachusetts Bay Transportation Authority ("MBTA") was a common carrier.

Response No. 1

    Objection. The defendant MBTA neither admits nor denies the allegations in Request No. 1 because the question of whether or not an entity that owns, but does not operate, a commuter rail service is a common carrier is a question of law for the court to determine and not a question of fact.

Request No. 2

    Plaintiff's decedent, James R. Allen, was a passenger in transit on board defendant MBTA's commuter rail Train P514 on July 30, 2002.

Response No. 2

    Objection. The defendant MBTA admits James R. Allen was a passenger on Train P514 on July 30, 2002 but insofar as the allegations of Request No. 2 refer to "MBTA's commuter rail train" the request is ambiguous and so the defendant MBTA can neither admit nor deny such portion of the Request; further responding the MBTA says the question whether Mr. Allen was a "passenger in transit" is a question of law for the court to determine.

EX. B

Request No. 3

As a common carrier, under Massachusetts law the defendant MBTA owed plaintiff's decedent, James R. Allen, the highest duty of care.

Response No. 3

Objection. The defendant MBTA neither admits nor denies the allegation of Request No. 3 because, under the facts of this case, it represents a conclusion of law for the court to determine and not a question of fact.

Request No. 4

To crew and operate its commuter rail service, including Train P514 on July 30, 2002, the defendant MBTA contracted with defendant National Railroad Passenger Corporation (a/k/a "Amtrak") which, as an operator of commuter trains, was itself a common carrier.

Response No. 4

The defendant MBTA admits the allegations of Request No. 4.

Request No. 5

The duty owed by the defendant MBTA to the plaintiff's decedent, James R. Allen, on July 30, 2002, while potentially shared by other persons or parties to this action, was a non-delegable duty.

Response No. 5

Objection. The defendant MBTA neither admits nor denies the allegations of Request No. 5 as the question of delegable or non-delegable duty, and the question whether such duty is "potentially shared by other persons or parties to this action," are questions of law for the court to determine and not questions of fact.

Request No. 6

The "Passenger Train Emergency Preparedness Plan – Massachusetts Bay Transportation Authority Commuter Rail" that was in effect as of July 30, 2002 (hereinafter "MBTA Passenger Train Emergency Preparedness Plan"), a copy of which was marked as Exhibit 2 to the Deposition of Anna M. Barry and is attached hereto as Exhibit A, is a true, accurate and genuine copy of a business record generated and maintained in good faith and in the usual course of business by defendant MBTA.

Response No. 6

The defendant MBTA admits the authenticity of the document. The MBTA does not admit the document or any part of the document is admissible at trial.

EX. B

Request No. 7

The MBTA Passenger Train Emergency Preparedness Plan provided that, for the purposes of the Plan, the term "MBTA Commuter Rail" referred not only to MBTA employees, but also to Amtrak employees operating the commuter rail service and applied to both MBTA and such Amtrak employees.

Response No. 7

The defendant MBTA neither admits nor denies and says the document speaks for itself.

Request No. 8

For the purposes of the MBTA Passenger Train Emergency Preparedness Plan, both defendant MBTA and defendant Amtrak wholly shared the responsibilities and duties set forth the Plan.

Response No. 8

Objection. It is a question of law and not a question of fact whether the MBTA and Amtrak "wholly shared the responsibilities and duties set forth in the Plan," where Amtrak has a "Passenger Train Emergency Preparedness Plan" of its own that is separate and distinct from the MBTA's Plan.

Request No. 9

The MBTA Passenger Train Emergency Preparedness Plan was the controlling document that was to be implemented to effectively manage any emergency situation that may occur during the course of normal operating conditions of the MBTA commuter rail service and was intended, among other things, to ensure preservation of life and to ensure the highest level of services for all MBTA commuter rail customers effected by an emergency situation.

Response No. 9

The defendant MBTA neither admits nor denies and says the document speaks for itself; further, the MBTA can neither admit nor deny that it is the "controlling document" to the exclusion of Amtrak's Passenger Train Emergency Preparedness Plan.

Request No. 10

The MBTA Passenger Train Emergency Preparedness Plan outlined both general and specific responsibilities and actions to be taken by the train conductor, other crew members and by dispatch personnel during an MBTA commuter rail emergency event.

Response No. 10

The defendant MBTA says the document speaks for itself and neither admits nor denies this request.

EX. B

<u>Request No. 11</u>

The MBTA Passenger Train Emergency Preparedness Plan contained no specific provisions that instructed or guided commuter rail train crews as to where to stop, or alternatively, when and how to express, their train to obtain the fasted possible emergency medical care in the event of an onboard medical emergency.

<u>Response No. 11</u>

The defendant MBTA neither admits nor denies this request, but rather says the document speaks for itself.

<u>Request No. 12</u>

As of July 30, 2002, defendant MBTA had no written standard operating procedure in place to instruct or guide commuter rail train crews as to where to stop, or alternatively, when and how to express, their train to obtain the fastest possible emergency medical care in the event of an onboard medical emergency.

<u>Response No. 12</u>

The defendant MBTA objects to this request as the crew operating the train were not MBTA employees; without waiving this objection the defendant MBTA admits the allegations of Request No. 12.

<u>Request No. 13</u>

As of July 30, 2002, defendant MBTA had in place an unwritten policy (hereinafter, "unwritten policy") that, in the event of an on board medical emergency, in coordination with the dispatcher, a commuter rail train crew was to stop the train at the next station or other nearest possible location to obtain emergency medical assistance.

<u>Response No. 13</u>

The defendant MBTA objects to this request insofar as it assumes the MBTA had commuter rail train crews; without waiving the objection the defendant MBTA admits the allegations of Request No. 13.

<u>Request No. 14</u>

The MBTA's aforementioned unwritten policy was not followed by the train crew of commuter rail Train B514 on July 30, 2002.

EX. B

Response No. 14

The defendant MBTA objects to this request as it assumes that request number 13 was admitted and it requires the defendant to speculate as to the actions of individuals not its employees.

Request No. 15

Special Instruction "F-S1 – Passenger Train Emergency Situations" of Amtrak's New England Division Commuter Lines Timetable No. 1 that was effect as of July 30, 2002 (hereinafter "Special Instruction F-S1"), a copy of which was marked as Exhibit 3 to the deposition of James A. Peros, Jr. and is attached hereto as Exhibit B, applied to the handling of onboard medical emergencies by train conductors and other crew members operating the MBTA commuter rail.

Response No. 15

The defendant MBTA says the document, and the language contained therein, speaks for itself.

Request No. 16

Defendant MBTA has given notice to defendant Amtrak that the acts or omissions of one or more members of the train crew on board Trail P514 on July 30, 2002 constituted "excluded conduct" defined in pertinent part as "despicable conduct" which is carried on with a willful and conscious disregard of the rights or safety of others" under Section 15(d) of the Operating Agreement between the MBTA and Amtrak in effect at the time of the incident.

Response No. 16

The plaintiff, by her attorney, has alleged the conduct of Amtrak employees relating to the attention they gave to Mr. Allen constituted gross negligence and willful misconduct. The defendant, MBTA, says if such conduct on the part of Amtrak employees is proved such actions constitute "excluded conduct" pursuant to the terms of the contract between the MBTA and Amtrak. The MBTA admits it has notified Amtrak the excluded conduct" provision will be applicable if the plaintiff proves her allegations.

Request No. 17

On or shortly after August 1, 2002, at the instruction of and in cooperation with defendant MBTA, defendant Amtrak adopted Special Instruction "940-S5 – Medical Emergencies", a copy of which was marked as Exhibit 2 to the deposition of Michael J. O'Malley and is attached hereto as Exhibit C, and it applied to the handling of onboard medical emergencies by train conductors and other crew members operating the MBTA commuter rail.

EX. B

Response No. 17

The defendant MBTA admits Amtrak adopted the said Special Instruction. The defendant, MBTA, objects to the remainder of the request as it is ambiguous in form, i.e. "at the instruction of and in cooperation with."

Request No. 18

The "Transcription of voice tapes in connection with the Investigation of Train P514 of July 30, 2002", a copy of which was marked as Exhibit 2 to the deposition of James A. Peros, Jr. and is attached hereto as Exhibit D, at the first through third pages of the exhibit, constitutes a genuine, true and accurate transcription of communications that took place between defendant Amtrak's Boston Assistant Chief Train Dispatcher and CSX's Assistant Chief Train Dispatcher (Exhibit D, exhibit pages 1-3).

Response No. 18

The defendant MBTA admits the allegations of Request No. 18.

Request No. 19

The "Transcription of voice tapes in connection with the Investigation of Train P514 of July 30, 2002", a copy of which was marked as Exhibit 2 to the deposition of James A. Peros, Jr. and is attached hereto as Exhibit D, at the fourth through fifth pages of the exhibit, constitutes a genuine, true and accurate transcription of communications that took place between defendant Amtrak's Boston Assistant Chief Train Dispatcher and Conductor James A. Peros, Jr. on board Train P514.

Response No. 19

The defendant MBTA admits the allegations of Request No. 19.

Request No. 20

The "Transcription of voice tapes in connection with the Investigation of Train P514 of July 30, 2002", a copy of which was marked as Exhibit 2 to the deposition of James A. Peros, Jr., and is attached hereto as Exhibit D, at the sixth and seventh pages of the exhibit (entitled "Beacon Park – 7/30/02"), constitutes a genuine, true and accurate transcription of communications that took place between Engineer Bruce B. Held on board Train P514 and CSX NA Dispatcher Richard L. Moran.

Response No. 20

The defendant MBTA admits the allegations of Request No. 20.

EX. B

THE FOREGOING RESPONSES ARE NOT BASED ON PERSONAL KNOWLEDGE BUT UPON INFORMATION AVAILABLE TO THE MASSACHUSETTS BAY TRANSPORTATION AUTHORITY.

Signed under pains and penalties of perjury this ___ Day of April, 2005.

JPF /s/ William A. Mitchell
William A. Mitchell, Jr.
General Counsel

As to objections,

/s/ Harry A. Pierce
William J. Dailey, Jr., BBO No. 112200
Harry A. Pierce, BBO No. 399275
Sloane & Walsh, LLP
Three Center Plaza
Boston, MA 02108
(617) 523-6010

April _____, 2005

EX. B

## CERTIFICATE OF SERVICE

I, Harry Pierce, certify that on the __26th__ day of April, 2005 I made service of the foregoing document, by causing a copy thereof to served by hand delivery to the following counsel of record:

Leo V. Boyle    *By Hand*
Bradley M. Henry
Meehan, Boyle, Black & Fitzgerald, P.C.
Two Center Plaza, Suite 600
Boston, MA 02108-1922

Michael J. McCormack    *by mail*
David T. Mitrou
McCormack & Epstein
One International Place 7th Floor
Boston, MA 02210

_____
Harry A. Pierce

EX. B