UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARLENE V. ALLEN, Executrix of the Estate of JAMES R. ALLEN, PH.D.,<br><br>Plaintiff<br><br>v.<br><br>MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, NATIONAL RAILROAD PASSENGER SERVICE (A/K/A "AMTRAK") AND CSX TRANSPORTATION, INC.,<br><br>Defendant. | Civil Action<br>No. **04-12080-PBS** |

**DEFENDANT, NATIONAL RAILROAD PASSENGER CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.  INTRODUCTION AND BACKGROUND OF CLAIM**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendant, National Railroad Passenger Corporation ("Amtrak") moves for partial summary judgment in its favor as to Count III (M.G.L. c. 93A) of the plaintiff's Complaint against it.  The plaintiff's January 14, 2003 letter purporting to be a demand letter pursuant to G.L. c. 93A is attached to the MBTA's Concise Statement of Material Facts as part of its Motion for Summary Judgment.

For purposes of the instant motion, the following facts are assumed to be true.  On July 30, 2002, James Allen, suffered a fatal heart attack while commuting from Wellesley to Boston on a Framingham line commuter rail train.  At the time of the incident, the Massachusetts Bay Transportation Authority ("MBTA") owned the commuter rail trains and Amtrak operated them

pursuant to an Operating Agreement. On July 21, 2004, Mr. Allen's wife, Marlene Allen ("plaintiff") filed this action in state court against Amtrak, the MBTA and CSX Transportation, Inc. ("CSX"). CSX owned the actual stretch of railroad track where Mr. Allen suffered his heart attack and upon which the subject commuter rail train traveled during the incident alleged in the plaintiff's Complaint. CSX was also responsible for providing the dispatching services to the train throughout the incident. Because Amtrak is a federally owned corporation, the action was removed to this Court under 28 U.S.C. section 1349. CSX has since been voluntarily dismissed as a defendant in this action.

The plaintiff seeks compensatory and punitive damages pursuant to the Massachusetts Wrongful Death Statute M.G.L. c.229, § 2 (Counts I and II) and compensatory and treble damages pursuant to Massachusetts General Laws c.93A (Count III).

Amtrak in its operation of the commuter rail service on behalf of the MBTA on July 30, 2002 was not engaged in trade or commerce as those terms have been construed pursuant to M.G.L. c. 93A, §§ 2 and 9. Accordingly, M.G.L. c. 93A is inapplicable to Amtrak in the instant circumstance and it is entitled to judgment in its favor as a matter of law as to Count III of the plaintiff's Complaint.

With respect to the instant motion, there are no disputes as to any fact material to the issues of law presented herein. The primary question raised by this Motion is whether as a matter of law Amtrak engaged in "trade or commerce" pursuant to M.G.L. c. 93A when it operated the commuter rail train on behalf of the MBTA pursuant to an Operating Agreement on July 30, 2002. If it was not engaged in "trade or commerce" then Amtrak is not subject to c. 93A and judgment in favor of Amtrak should enter as to Count III. Alternatively, to the extent that

c. 93A is applicable to Amtrak in this case (which Amtrak expressly denies) given the nature and basis of the plaintiff's allegation in Count III, the plaintiff is unable to recover under these circumstances for Amtrak's alleged violation of "safety rules and regulations intended to protect consumers" as set forth in Paragraph 31 of the plaintiff's Complaint.

## II. SUMMARY JUDGMENT STANDARD

The role of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Mesnick v. General Electric, Co., 950 F.2d 816, 822 (1st Cir.1991). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only where the party opposing summary judgment provides evidence such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d. 202 (1986). Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed. 265 (1986). If after viewing the record in the light most favorable to the non-moving party the Court determines that no genuine issue of material fact exists, summary judgment is appropriate. Chapman v. Bernard's Inc. et al, 167 F.Supp.2d 406, 411 (2001).

## III. ARGUMENT

The National Railroad Passenger Corporation ("Amtrak") was created by Congress pursuant to the Rail Passenger Service Act of 1970 in order to avert the threatened extinction of passenger trains in the United States. Lebron v. National Railroad Passenger Corp., 513 U.S.

374, 384, 386 (1995). The United States Supreme Court has determined that Amtrak was created by federal statute explicitly for the furtherance of federal governmental goals, including the provision of commuter rail passenger service. Id. at 384, 397; see also 49 U.S.C. 24301 et seq. The Court held, albeit in a First Amendment context, that Amtrak was a part of the government. Id. at 400. Amtrak is not a "for profit corporation" although it is operated and managed as though it were. Id. at 385. A majority of Amtrak's Board of Directors are appointed directly by the President of the United States. Id. The fact that Amtrak is nominally a corporation does not tell the true story as to the nature of Amtrak's mandate and the involvement of the federal government in its operation and decision-making. As the Supreme Court stated "That the Congress chose to call it a corporation does not alter its characteristics so as to make it something other than what it actually is..." Id. at 393.

### A.    Amtrak was Not Engaged in "Trade or Commerce" as that Term has been Defined and Interpreted Pursuant to M.G.L. c. 93A.

As a threshold matter, in order for an individual or entity to potentially be subject to the provisions and penalties of G.L. c. 93A, §§ 2 and 9, it must be a "person" engaged in "trade or commerce" in the Commonwealth. Amtrak is not subject to G.L. c. 93A because when it is operating a commuter rail service on behalf of the MBTA, pursuant to Amtrak's legislative mandate, it is not engaged in "trade or commerce." The MBTA is also not engaged in "trade or commerce" as that term has been defined and interpreted. A party engages in trade or commerce when it acts in a "business context." Lafayette Place Associates v. Boston Redevelopment Authority, 427 Mass. 509, 535 (1998). The Massachusetts Supreme Judicial Court "has repeatedly held that c. 93A does not apply to parties motivated by 'legislative mandate, not

business or personal reasons.'" Id.(citations omitted.)  In Lafayette, the Boston Redevelopment Authority ("BRA"), an 'independent body corporate and politic', was alleged to have engaged in unfair and deceptive conduct relative to Lafayette Place Associates while BRA was in pursuit of the urban renewal and redevelopment goals of c. 121A and c. 121B.  In finding that the BRA was not subject to c. 93A, the court found that the BRA was not engaged in "trade or commerce" because BRA's involvement in the transactions was "wholly in pursuit of the legislatively proscribed mandate of M.G.L. c. 121A, §2, that 'the redevelopment of land not only in sub-standard areas but also in blighted open and decadent areas in accordance with a comprehensive plan to promote the sound growth of the community is necessary.'" Id.  *See also,* Boston Housing Authority v. Bobby Howard, 427 Mass. 537 (1998) (Boston Housing Authority not acting in business context when it rented unit to a tenant, but rather was acting pursuant to a legislative mandate and thus was not engaged in "trade or commerce" within the meaning of G.L. c. 93A); City Water Taxi Corp. v Massachusetts Port Authority, 2002 WL 31957001 (Mass. Super), van Gestel, J. (Massachusetts Port Authority was not engaged in "trade or commerce" within the meaning of G.L. c. 93A by charging fees and tolls to private users of its facilities, but rather was motivated by legislative mandate.).

     A Massachusetts Superior Court decision determined, based in part upon the Lafayette reasoning, that the MBTA was not subject to c. 93A when the MBTA entered certain financial transactions pursuant to G.L. c. 161A, §14.  In JBL Bus Company, Inc. v. MBTA, et al, 2001 WL 1182407 (Mass.Super), Sikora, J., a co-defendant private transportation provider made cross-claim allegations that the MBTA violated c. 93A relative to the MBTA's settlement of claims the co-defendant had made pursuant to c. 161A, §14.  The MBTA had previously entered into a

5

$13.7 million settlement agreement with a group of private transportation providers pursuant to c. 161A, §14.  In deciding that c. 93A did not apply to the MBTA in that circumstance the court ruled that the MBTA was not a "person" engaged in "trade or commerce" when it is following a legislative directive pursuant to G.L c. 161A, §14.  JBL at 3.  The court further held that the c. 93A plaintiff could not argue that the allegedly unfair and deceptive conduct lies outside the scope of the MBTA's statutory authority and thus had become subject to c. 93A.  Citing Lafayette, the court wrote "no matter how allegedly unfair or deceptive MBTA's practices may have been, they were done 'wholly in pursuit of the legislatively proscribed mandate' pursuant to G.L. c. 161A, §14.  JBL at 4.

In light of Lafayette and the instructive language in JBL, Amtrak (and the MBTA) is not subject to the provisions of G.L. c. 93A.  As noted above, the United States Supreme Court has determined that Amtrak was created by federal statute explicitly for the furtherance of federal governmental goals, including the provision of commuter rail passenger service.  Lebron v. National Railroad Passenger Corp., 513 U.S. 374, 384 (1995); 49 U.S.C. §24305.  This mandate is similar to that of the MBTA.  In Lebron, the Supreme Court determined, albeit in a First Amendment context, that Amtrak was a part of the government.  Id. at 400.  The various factors evaluated by the Court in Lebron are analogous to those evaluated by the SJC in Lafayette and the Superior Court in JBL in declining to apply M.G.L. c. 93A, §9 to certain quasi-governmental entities including the BRA and the MBTA.  Amtrak was created to further a series of governmental goals, including the provision of commuter rail passenger service.  A majority of Amtrak's Board of Directors are appointed directly by the President of the United States.  The fact that Amtrak is nominally a corporation does not tell the true story as to the nature of

Amtrak's mandate and the involvement of the federal government in its operation and decision-making. As referenced above, "That the Congress chose to call it a corporation does not alter its characteristics so as to make it something other than what it actually is..." Lebron at 393. Based upon the foregoing, on July 30, 2002 when Amtrak was serving as a contractor to the MBTA and providing its operational services for the MBTA Commuter Rail system, Amtrak was not engaged in "trade or commerce" but rather was performing its legislative mandate as articulated in Lebron and 49 U.S.C. 24301, *et seq*. Indeed, 49 U.S.C. 24305(a)(1) specifically provides that Amtrak may enter into contracts for the operation of commuter rail passenger service. Accordingly, Amtrak is not subject to M.G.L. c. 93A and judgment in its favor should enter as to Count III of the Complaint.

Further, Amtrak is aware of no published opinion where M.G.L. c. 93A, or for that matter the consumer protection statute of any other state, has been held to be applicable to it. Similarly, there is no published opinion finding the provisions of M.G.L. c. 93A to be applicable to the MBTA with respect to its provision of mass transportation services, including the commuter rail.

To the extent the Court determines the provisions of M.G.L. c. 93A are applicable to Amtrak in the circumstances alleged, Amtrak argues the following, in the alternative.

> **B.    The Plaintiff May Not Recover Pursuant to G.L. c. 93A for Amtrak's Alleged Violation of "Safety Rules and Regulations Intended to Protect Consumers" as alleged in her Complaint.**

Paragraph 31 within Count III of the plaintiff's Complaint states as follows:

> 31.    The defendants violated the Massachusetts Consumer Protection Act, Mass.Gen.L. c. 93A, with respect to the operation, control and provision of services on and for the MBTA commuter rail system on, and prior to July 30, 2002, by, among other things, violating safety rules and regulations intended to protect consumers and failing to develop, institute and implement proper

emergency medical procedures and preparedness training.

It is clear that the plaintiff has relied upon 940 C.M.R. § 3.16 in asserting this allegation. Section 3.16 states in relevant part:

Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of G.L. c. 93A, § 2 if:

> (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political sub-division thereof intended to provide the consumers of this Commonwealth protection;

Accordingly, in order to invoke the protections, or base a theory of liability, on 940 C.M.R. § 3.16, the statute, rule, regulation or law which is alleged to have been violated must have been promulgated by the Commonwealth of Massachusetts or a political sub-division thereof.

Amtrak is unaware of any statute, rule, regulation or law of the *Commonwealth* or its political sub-divisions intended for the protection of its consumers which the plaintiff is alleging Amtrak violated.

Indeed, Amtrak will be filing a Motion *in limine* applicable to all Counts seeking to limit the nature and extent of the evidence and argument the plaintiff will be permitted to introduce at a trial of this matter on the basis of federal preemption. In brief, the basis of its preemption argument is that the federal government has enacted laws and promulgated regulations substantially subsuming the field of emergency procedures and preparedness as related to passenger train commuter rail service. As a commuter rail passenger train, emergency preparedness and safety regulations and requirements for the MBTA commuter rail trains operated by Amtrak are governed by the Federal Railroad Safety Act ("FRSA") 49 U.S.C.

sections 20101, et seq. *See* 49 C.F.R. § 239.3. The FRSA was enacted "to promote safety in all areas of railroad operations and to reduce railroad-related accidents and incidents." *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 661 (1993) (citing to 45 U.S.C. § 421). *See, also* 49 U.S.C. § 20101. The FRSA gave the Secretary of Transportation broad powers "to prescribe regulations and issue orders for all areas of railroad safety." 49 U.S.C. § 20103(a); *CSX Transportation Inc. v. Easterwood*, 507 U.S. at 662. Those regulations are set forth in 49 CFR Part 239. Both the FRSA[1] and the applicable CFR[2] contain express preemption provisions which provide that any State law, rule, regulation, order, or standard covering the same subject matter is preempted. Accordingly, the only relevant laws which *can* be at issue in this case are *federal* ones, and thus could not be "promulgated by the Commonwealth or any political subdivision thereof" as required by 940 CMR § 3.16 to form the basis of a c. 93A violation.

Specific federal regulations govern emergency response procedures adopted by commuter rail trains (49 C.F.R. § 239.101) as well as the emergency equipment that is required to be kept on board (49 C.F.R. § 239.101(6)) and the emergency response training provided to crew members (49 C.F.R. § 239.101(2)), to name a few. The federal government has clearly issued regulations which occupy and substantially subsume the field of emergency response and preparedness for passenger train service. It is the enactment of the FRSA and the promulgation of the Regulation which gives rise to preemption, not the nature, extent or substance of the compliance. The former is a question of law which serves to preclude altogether aspects of a claim or theory, the latter is a question of fact related to liability of a party for failure to comply.

---

[1] 49 U.S.C. § 20106

[2] 49 C.F.R. § 239.5

Amtrak argues primarily that c. 93A does not apply to it as it was not engaged in "trade or commerce" on July 30, 2002. To the extent that the plaintiff's claims in Count III otherwise remain viable following the arguments set forth in Section A and/or B above, and given the factual basis of the allegations in Count III, the nature of the evidence and argument which the plaintiff is permitted to introduce in furtherance of its c. 93A claim may be substantially limited by virtue of the preemption arguments Amtrak intends to make in its Motion *in limine*. The Court's rulings on the motion *in limine* may serve to impact Count III of the Complaint if it remains viable at trial.

### IV.    CONCLUSION

For the foregoing reasons, Amtrak was not engaged in "trade or commerce" and thus M.G.L. c. 93A is inapplicable to Amtrak in the instant action. To the extent c. 93A applies to Amtrak, the provisions of 940 CMR § 3.16 together with federal law referenced above make clear Amtrak is entitled to summary judgment as to Count III of the plaintiff's Complaint.

National Railroad Passenger Corporation,
Defendant, by its Attorneys,

/s/ David T. Mitrou
Michael J. McCormack (BBO # 329680)
David T. Mitrou (BBO #645775)
McCORMACK & EPSTEIN
One International Place
Boston, MA 02110
(617) 951-2929

Date: June 10, 2005