UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARLENE V. ALLEN, Executrix of the )
Estate of James R. Allen, Ph.D., )
 )
        Plaintiff, )
 )
v. )
 )   C.A. No.: 04-12080-PBS
MASSACHUSETTS BAY TRANSPORTATION )
AUTHORITY, NATIONAL RAILROAD )
PASSENGER SERVICE (a/k/a "AMTRAK" )
and CSX TRANSPORTATION, INC., )
 )
        Defendants. )

**DEFENDANT MASSACHUSETTS BAY TRANSPORTATION AUTHORITY'S
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Massachusetts Bay Transportation Authority (MBTA) moves the Court, pursuant to F.R.Civ. P. Rule 56, for summary judgment on the ground that the plaintiff's state causes of action are preempted under federal law.

### THE CLAIM

James Allen, commuting from Wellesley to Boston on the MBTA-owned and Amtrak-operated Framingham rail commuter line on July 30, 2002, suffered a fatal heart attack. On January 14, 2003 the plaintiff, Marlene Allen, made a demand on the defendants for relief based on the death of her husband, James Allen, alleging they were negligent for failure to procure the fastest possible medical assistance while passengers and crew were attempting to resuscitate him with CPR. Exhibit 1 hereto. On July 21, 2004 the plaintiff filed this action in state court specifically alleging the train crew discharged its duties negligently in responding to Mr. Allen's medical situation and

they are thereby liable for damages under the Massachusetts wrongful death statute, M.G.L. c. 229. Exhibit 2 hereto. The action was removed to this Court under 28 U.S.C. 1349 because Amtrak is a federally owned corporation.

Plaintiff's theories of liability are essentially: (1) the train should have been carrying a defibrillator; (2) the train should have stayed and waited (or if en route, gone to the next station) for help from emergency medical services (EMS) rather than continue its journey after it was known Mr. Allen had a serious medical problem; (3) the train at least should have gone express to Back Bay for EMS rather than make two more regular stops prior to Back Bay; (4) training and testing of, and instructions to, train crew should have specified (2) and (3). Defendants essentially maintain (so far without dispute) that all pertinent state and federal rules and regulations were complied with and that, in any event, the evidence shows Mr. Allen suffered from a medical event that was not survivable even given the earliest possible EMS response at any of the stops. For purposes of this motion we will assume that the plaintiff has an otherwise viable cause of action under state law. However, irrespective of the merits, or any fact issues related to the merits, there is preemption as a matter of law.

## THE FEDERAL RAILROAD SAFETY ACT

Through discovery, it has been determined that the railroads in this action are regulated by the United States through, among other things, the Federal Railroad Administration (FRA). By law, FRA's regulations involving passenger safety and emergencies are promulgated and enforced to the exclusion of state law. The Federal Railroad Safety Act, 49 U.S.C. § 20106 (FRSA), expressly preempts state actions in

2

specific areas of railroad operation the FRA has put under regulation. 49 U.C.C. 20106 provides in pertinent part:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security **shall be nationally uniform to the extent practicable**. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. … (emphasis added)

Under this statutory authority the FRA has promulgated a regulation entitled "Passenger Train Emergency Preparedness," 49 C.F.R. 239, under which the MBTA is required to prepare and follow a detailed emergency preparedness plan, id. 239.101, that specifies among other things:[1]

> An on-board crewmember shall quickly and accurately assess [a] passenger train emergency situation and then notify the control center as soon as practicable by the quickest available means.
>
> An emergency is defined (at id. 239.7) as:
>
> Emergency or emergency situation means an unexpected event related to the operation of passenger train service involving a significant threat to the safety or health of one or more persons requiring immediate action, including: … (3) a passenger or employee fatality, or a serious illness or injury to one or more passengers or crewmembers requiring admission to a hospital. … Emergency preparedness plan means one or more documents focusing on preparedness and response in dealing with a passenger train emergency.
>
> 42 C.F.R. 239.5 expressly evokes the preemption powers:
>
> Under 49 U.S.C. 20106 (formerly section 205 of the Federal Railroad Safety Act of 1970 45 U.S.C. 434) issuance of this part preempts any State law, rule, regulation, order or standard covering the same subject matter [except local safety hazards].

---

[1] Section 101 goes on to delineate in detail the content and frequency of employee safety training and testing and what safety materials must be provided on every train in America. The level of detail includes a first aid kit with eleven specific items, including "[o]ne resuscitation mask", id. at 101 (6)(K). Section 101 (a)(vi) requires all crew members to be qualified to perform the functions of the applicable emergency preparedness plan.

3

In *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993) the Supreme Court ruled that federal railroad regulations under FRSA governing the speed of trains preempted local regulation of speed, thereby preempting state causes of action in tort based on excessive speed. Id. at 664, 673-675. The issue before the Court was whether the federal regulations covered the same subject matter as state negligence law and it framed the test as follows:

> To prevail on the claim that the regulations have preemptive effect, petitioner must establish more than that they "touch upon" or "relate to" that subject matter, for "covering" is a restrictive term which indicates that preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.

507 U.S. at 664. See also *Norfolk Southern Railway Company v. Shanklin*, 529 U.S. 344 (2000) FRSA regulations on some crossing devices preempted state regulation of the same).

Accordingly, the courts must determine how much specificity in the federal regulation is enough to displace state law. See *O'Brien v. MBTA*, 162 F.3d 40, 42-44 (1st Cir. 1998) (drug testing regulations preempted state law where activity federally financed); *Ouellette v. Union Tank Car Company*, 902 F. Supp. 5, 9-11 (D. Mass. 1995) (federal regulations on handholds on tank cars preempted state law); *Beausoleil v. National Railroad Passenger Corp.*, 145 F. Supp.2d 119, 120-121 (D. Mass. 2001) (local hazard exception to preemption not made out); *Wisconsin Central Transportation Corp. v. Doyle*, 200 Wis.2d 450, 456-461 546 N.W.2d 206, 209-211 (1996) (state law on qualification of conductors preempted by federal regulation of the same); *Federal Insurance Company v. Burlington Northern and Santa Fe Railway Company*, 270 F. Supp2d 1183, 1187-1188

(C.D. Cal. 2003) (state negligence action precluded where FRSA "not only mandates the frequency and manner of inspecting the tracks to detect deviations, but it mandates who is qualified to perform these inspections. This is precisely the subject matter of [the] negligence claim.") See also *Grafton and Upton Railroad Company v. Town of Milford*, 337 F. Supp.2d 233, 237-239 (D. Mass. 2004) (Interstate Commerce Commission Termination Act provision concerning railroad related actions preempted state zoning and environmental regulations); *Chapman v. Labone*, 252 F. Supp.2d 814, 816-818 (S.D. Iowa 2003) (regulation of drug testing preempted state tort claim, based on commerce clause).

It is no response to contend, where there is no clear violation of federal law, this leaves an injured party without a remedy.

> While federal preemption often means that there is no remedy available to a claimant, in many instances unfortunately this result is necessary to vindicate the intent of Congress. By pervasively legislating the field of railroad safety, Congress demonstrated its intent to create uniform national standards and to preempt state regulation of railroads. If state common law tort claims were permitted to proceed despite this Congressional intent, on the ground that the purported tortfeasor had in some way allegedly failed to comply with the federal standards, then manufacturers would inevitably be subjected to varying interpretations of the federal regulations in the different states. Inevitable, these tort actions would generate precisely those inconsistencies in railroad safety standards that Congressional action was intended to avoid.

*Ouellette v Union Tank Car Company*, 902 F. Supp. at 10 (citations omitted).

## THE FRSA APPLIES TO THE EVENTS IN ISSUE

The evidence on discovery showed an emergency passenger preparedness plan was adopted under FRA regulatory requirements and is followed by the MBTA (Exhibit 3 hereto). The deposition of Anna Barry, the MBTA's director of commuter rail

operations, indicates her office prepared the MBTA emergency passenger preparedness plan and submitted it to FRA. Exhibit 4 hereto. The deposition of Michael O'Malley, a former Amtrak Director of Operations, noted the regulations and indicated that training required by the plan was given to employees. Exhibit 5 hereto. The plans are very detailed. Indeed, plaintiff's counsel stated in his questions to O'Malley:

> …is it fair to say this is a fairly specific document? I'll read some things and let you take a look at it. For example, on page 4 of the MBTA's Passenger Train Emergency Preparedness Plan, Section 6.1.2 identified as "train Conductor" goes on to say such things as "The train conductor will keep passengers and crew members regularly informed of the nature of the emergency and the status of corrective countermeasures," and **it goes on actually for some pages about the detailed steps a conductor must take in handling an emergency**. ….

Id. pp. 97-98 (emphasis added).

## CONCLUSION

As it is reasonably apparent that the Federal Railroad Administration has issued mandatory regulations, binding on the MBTA, with respect to how a conductor should manage an on-board emergency, including a "passenger illness," this action is preempted and should be dismissed.

Defendant Massachusetts Bay
Transportation Authority
By its attorneys,

*[signature]*

William J. Dailey, Jr., BBO No. 112200
Harry A. Pierce, BBO No. 399275
Sloane & Walsh, LLP
Three Center Plaza
Boston, MA  02108
(617) 523-6010

Dated: June 3, 2005

## CERTIFICATE OF SERVICE

I, Harry A. Pierce, hereby certify that on this 3rd day of June, 2005, I made service of the foregoing document(s), by causing a copy thereof to be mailed, postage prepaid, to the following counsel of record:

Leo V. Boyle, Esq.
Bradley M. Henry, Esq.
Meehan, Boyle, Black & Fitzgerald, P.C.
Two Center Plaza, Suite 600
Boston, MA 02108-1922

Michael J. McCormack, Esq.
David T. Mitrou, Esq.
McCormack & Epstein
One International Place, 7th Floor
Boston, MA 02210

_____
HARRY A. PIERCE