UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARLENE V. ALLEN, Executrix of the Estate of James R. Allen, Ph.D.,<br><br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, NATIONAL RAILROAD PASSENGER SERVICE (a/k/a "AMTRAK" and CSX TRANSPORTATION, INC.,<br><br>Defendants. | C.A. No.: 04-12080-PBS |

## MASSACHUSETTS BAY TRANSPORTATION AUTHORITY'S CONCISE STATEMENT OF MATERIAL FACTS OF RECORD

Defendant Massachusetts Bay Transportation Authority (MBTA), pursuant to Local Rule 56.1, maintains the following facts of record are undisputed

1. James Allen, commuting from Wellesley to Boston on the MBTA-owned and Amtrak-operated Framingham rail commuter line on July 30, 2002, suffered a fatal heart attack. Memorandum Exhibit 2, pars 6, 19.

2. On January 14, 2003 the plaintiff, Marlene Allen, made a demand on the defendants for relief based on the death of her husband, James Allen, alleging they were negligent for failure to procure the fastest possible medical assistance while passengers and crew were attempting to resuscitate him with CPR. Memorandum Exhibit 1.

3. On July 21, 2004 the plaintiff filed this action in state court specifically alleging the train crew discharged its duties negligently in responding to Mr. Allen's medical situation, Memorandum Exhibit 2, pars. 7-20, and they are thereby liable for damages under the

Massachusetts wrongful death statute, M.G.L. c. 229, and c. 93A. Memorandum Exhibit 2, pars 21-33.

4. Plaintiff's alleges essentially: (1) the train should have been carrying a defibrillator; (2) the train should have stayed and waited (or if en route, gone to the next station) for help from emergency medical services (EMS) rather than continue its journey after it was known Mr. Allen had a serious medical problem; (3) the train at least should have gone express to Back Bay for EMS rather than make two more regular stops prior to Back Bay; (4) training and testing of, and instructions to, train crew should have specified (2) and (3). Id.

5. The Federal Railroad Safety Act, 49 U.S.C. § 20106 provides:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. ...

6. Federal Railroad Administration regulations covering "Passenger Train Emergency Preparedness," requires all railroads to promulgate a safety plan and in particular provide:

> An on-board crewmember shall quickly and accurately assess [a] passenger train emergency situation and then notify the control center as soon as practicable by the quickest available means.

49 C.F.R. 239.101.

7. An emergency is defined the regulation as:

> Emergency or emergency situation means an unexpected event related to the operation of passenger train service involving a significant threat to the safety or health of one or more persons requiring immediate action, including: ... (3) a passenger or employee fatality, or a serious illness or injury to one or more passengers or crewmembers requiring admission to a hospital. ... Emergency preparedness plan means one or more documents focusing on preparedness and response in dealing with a passenger train emergency.

49 C.F.R. 239.7.

8. Section 101 delineates in detail the content and frequency of employee safety training and testing and what safety materials must be provided on every train in America and requires all crew members to be qualified to perform the functions of the applicable emergency preparedness plan.

9. The regulation further provides:

> Under 49 U.S.C. 20106 (formerly section 205 of the Federal Railroad Safety Act of 1970 (45 U.S.C. 434) issuance of this part preempts any State law, rule, regulation, order or standard covering the same subject matter [except local safety hazards].

49 C.F.R. 239.5

10. The MBTA adopted a Passenger Train Emergency Preparedness Plan under FRA regulatory requirements in 1998. Memorandum Exhibits 4, 5.

11. The MBTA's Plan is a very specific document and contains detailed steps a conductor must take in handling an emergency.

12. The plaintiff has made no allegation that the MBTA violated its Passenger Train Emergency Preparedness Plan but she does allege the Plan should have, but did not, contain express instructions to wait for EMS at the nearest station or proceed express to an EMS location.

                                                         Defendant Massachusetts Bay
                                                         Transportation Authority
                                                         By its attorneys,

*[signature]*

                                                         William J. Dailey, Jr., BBO No. 112200
                                                         Harry A. Pierce, BBO No. 399275
                                                         Sloane & Walsh, LLP
                                                         Three Center Plaza
                                                         Boston, MA  02108

Dated: April 20, 2005                              (617) 523-6010

## CERTIFICATE OF SERVICE

I, Harry A. Pierce, hereby certify that on this 3rd day of June, 2005, I made service of the foregoing document(s), by causing a copy thereof to be mailed, postage prepaid, to the following counsel of record:

Leo V. Boyle, Esq.
Bradley M. Henry, Esq.
Meehan, Boyle, Black & Fitzgerald, P.C.
Two Center Plaza, Suite 600
Boston, MA 02108-1922

Michael J. McCormack, Esq.
David T. Mitrou, Esq.
McCormack & Epstein
One International Place, 7th Floor
Boston, MA 02210

_____
HARRY A. PIERCE