

# OPERATING AGREEMENT BETWEEN

# MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

# AND NATIONAL RAILROAD PASSENGER CORPORATION

## SEPTEMBER 1, 1995

**EXHIBIT A - AMTRAK**

## TABLE OF CONTENTS

SEC. 1. DEFINITIONS .................................................. 2

SEC. 2. ALLOCATION OF RESPONSIBILITIES ........................... 4

SEC. 3. STATEMENT OF WORK: DESCRIPTION OF AGREEMENT
SERVICES ................................................... 7

SEC. 4. SERVICE PROPERTY AND SERVICE EQUIPMENT .............. 13

SEC. 5. PROJECT MANAGEMENT ..................................... 18

SEC. 6. TERM OF AGREEMENT ....................................... 25

SEC. 7. COST OF SERVICES AND PAYMENTS ......................... 26

SEC. 8. SERVICE CHANGES ........................................... 34

SEC. 9. PERFORMANCE STANDARDS ................................. 35

SEC. 10. INCENTIVES AND PENALTIES ................................ 36

SEC. 11. SPECIAL TRAINS AND EXCURSION TRAINS ................. 38

SEC. 12. REPORTING AND RECORDKEEPING REQUIREMENTS ......... 39

SEC. 13. DRUG AND ALCOHOL TESTING REQUIREMENTS ............. 41

SEC. 14. INSURANCE ................................................. 42

SEC. 15. INDEMNIFICATION AND LIABILITY .......................... 44

SEC. 16. SYSTEM SAFETY ............................................. 51

SEC. 17. TRAINING OF EMPLOYEES ................................... 52

SEC. 18. RIGHT TO SUBCONTRACT ................................... 53

SEC. 19. DISPUTE RESOLUTION ...................................... 54

SEC. 20. COMPLIANCE WITH LAW .................................... 59

SEC. 21. EQUAL EMPLOYMENT OPPORTUNITY ................. 60

SEC. 22. ACCOMMODATION OF PEOPLE WITH DISABILITIES ........ 60

SEC. 23. TITLE VI COMPLIANCE ......................... 61

SEC. 24. DISADVANTAGED BUSINESS ENTERPRISES ............ 61

SEC. 25. LABOR PROTECTION ........................... 63

SEC. 26. PUBLIC INFORMATION RESPONSIBILITIES ............ 65

SEC. 27. ADVERTISING ................................ 66

SEC. 28. CANCELLATION OF CONTRACT .................... 66

SEC. 29. TERMINATION FOR CONVENIENCE ................. 66

SEC. 30. TERMINATION BY MUTUAL AGREEMENT ............ 68

SEC. 31. TERMINATION FOR DEFAULT ..................... 68

SEC. 32. EFFECT ON EXISTING AGREEMENTS ................ 69

SEC. 33. EMERGENCIES ............................... 71

SEC. 34. OPERATION AND MAINTENANCE OF SHORE LINE AND USE OF
         MBTA STATIONS ............................. 72

SEC. 35. COOPERATIVE LABOR-MANAGEMENT PROGRAMS ....... 75

SEC. 36. NON-EMPLOYEE PICKETING ...................... 76

SEC. 37. CLEARING OF WRECKS ......................... 76

SEC. 38. AMENDMENTS AND REVISED EXHIBITS .............. 77

SEC. 39. ASSIGNMENT ................................ 77

SEC. 40. SUCCESSORS AND ASSIGNS ...................... 77

SEC. 41. THIRD PARTY ACCESS .......................... 77

## LIST OF EXHIBITS

Exhibit A — Service Equipment Description

Exhibit B — Service Property Description

Exhibit C — Service by Line

Exhibit D — Maintenance and Other Standards and Schedules for Service Property

Exhibit E — Maintenance and Other Standards and Schedules for Service Equipment

Exhibit F — Direct Costs of Providing Agreement Services

Exhibit G — Required Reports

Exhibit H — Amtrak Organizational Chart

Exhibit I — On Time Performance Incentives and Penalties

Exhibit J — Maintenance of Equipment Incentives and Penalties

Exhibit K — Maintenance Standards and Schedules for Support Property

Exhibit L — Station Services

# OPERATING AGREEMENT BETWEEN MASSACHUSETTS BAY TRANSPORTATION AUTHORITY AND NATIONAL RAILROAD PASSENGER CORPORATION

This AGREEMENT is made and entered into on September 1, 1995, by the Massachusetts Bay Transportation Authority (MBTA), a body politic and corporate and a political subdivision of the Commonwealth of Massachusetts, established under the provisions of General Laws, chapter 161A, as amended, and the National Railroad Passenger Corporation (Amtrak), a corporation organized and existing under the Rail Passenger Service Act, 49 U.S.C. 24101 et seq. and the laws of the District of Columbia.

WHEREAS, the MBTA is responsible for providing public transportation services in certain areas of the Commonwealth of Massachusetts; and

WHEREAS, the MBTA has elected to provide commuter rail services through a contract with a commuter rail operator; and

WHEREAS, the MBTA has determined that Amtrak is regularly engaged in the business of providing passenger rail transportation and is capable of performing the services described in this Agreement; and

WHEREAS, Amtrak operates its own intercity rail passenger trains on the MBTA rail line that is located between the Rhode Island state line and Boston South Station in the Commonwealth of Massachusetts (the Shore Line), and Amtrak uses, jointly with the MBTA, Boston South Station, Boston Back Bay Station, and Route 128 Station, all of which are owned by the MBTA (the Stations), and the parties wish to provide for Amtrak's continued operation on the Shore Line and use of the Stations; and

1

WHEREAS, the MBTA operates commuter rail service over the Amtrak rail line between the Rhode Island State line and Providence, and the MBTA uses, jointly with Amtrak, the Amtrak Station in Providence, and the parties wish to provide for the MBTA's continued use of such line and station; and

WHEREAS, the MBTA and Amtrak desire to set forth their mutual rights and obligations in connection with the provision of commuter rail services by Amtrak for the MBTA in accordance with the terms and conditions set forth in this Agreement; and

WHEREAS, the MBTA and Amtrak desire to set forth their mutual rights and obligations in connection with Amtrak's use of and operations on the Shore Line and at the Stations in connection with Amtrak intercity service, as well as the MBTA's use of Amtrak properties in Rhode Island, in accordance with the terms and conditions set forth in this Agreement;

NOW THEREFORE, in consideration of the terms, conditions, and mutual promises hereinafter given, the MBTA and Amtrak hereby agree as follows:

SEC. 1. DEFINITIONS.

For purposes of this Agreement --

(1) The term "Agreement" means this MBTA - Amtrak Operating Agreement, dated September 1, 1995, including all exhibits hereto and all amendments hereafter entered into by the parties.

(2) The term "Agreement Services" means the operation of commuter rail services by Amtrak on the Service Property and on Amtrak property in Rhode Island, the maintenance of Service Equipment and Service Property, the implementation of service changes, and the

2

prohibit such testing, Amtrak shall require existing skilled employees to take a competency test for the position held, and shall provide appropriate training for any employee who fails such a test. If any such employee fails to complete the training and pass such a test within 6 months or fails the test on 5 occasions (whichever first occurs), Amtrak shall remove such employee from his or her existing job classification. Amtrak shall further require that an employee's promotion or advancement to a higher pay grade be contingent on the employee passing a competency test tailored to that higher pay grade and experience level. Amtrak shall, in consultation with the MBTA, develop and establish the appropriate competency tests for all skilled labor positions. The competency test for the position of foreman must be tailored to the specific area that the foreman will be supervising.

SEC. 6. TERM OF AGREEMENT.

(a) **Basic Term.** -- The term of this Agreement shall be two years and ten months, with two option years as described in subsection (b). The Agreement term shall begin on September 1, 1995, and shall terminate on June 30, 1998, unless extended through exercise of one or more of the Option Years.

(b) **Options.** -- (1) The MBTA shall have the option of extending the term of this Agreement for one or two additional one year periods. If exercised, the first Option Year will begin on July 1, 1998, and the second Option Year will begin on July 1, 1999.

(2) Not later than 9 months prior to the end of the Third Contract Year, the MBTA shall notify Amtrak in writing whether (A) it is exercising one or more of the Option Years for the Fixed Price amounts set forth in Section 7(a)(2); (B) it is declining to exercise the Option Years; or (C) it intends to renegotiate the Fixed Price and/or level of services for one

25

or more of the Option Years; provided that if the MBTA exercises only the first Option Year at that time, notice of the MBTA's intentions shall again be provided not later than 9 months prior to the end of the first Option Year.

(3) The cost of service for the Option Years shall be as specified in Section 7(a)(2) of this Agreement, unless renegotiated by the parties. During any Option year, all the terms and conditions of this Agreement shall remain in full force and effect unless specifically modified by written agreement between the parties.

SEC. 7. COST OF SERVICES AND PAYMENTS.

(a) Fixed Price. -- (1) For the level of Agreement Services specified in Exhibit C as in effect as of the Commencement Date, MBTA shall pay Amtrak the following amounts (the "Annual Fixed Price") in each of the first three Contract Years (or portions thereof):

|  | BASE PRICE | NEW SERVICE | | TOTAL |
|---|---|---|---|---|
| First Year (10 Months) (Sept. 1, 1995 - June 30, 1996) | $83,342,284 | Growth C/A<br>Old Colony<br>Full Worcester<br>Newburyport<br>Interim Maint.<br>Engineering | $ 0<br>$ 1,610,743<br>$ 203,058<br>0<br>$ 6,734,229<br>$ 5,218,619 | $ 97,108,933 |
| Second Year (July 1, 1996 - June 30, 1997) | $104,458,741 | Growth C/A<br>Old Colony<br>Full Worcester<br>Newburyport<br>Interim Maint.<br>Engineering | $ 1,905,061<br>$16,118,947<br>$ 1,670,223<br>$ 126,051<br>$ 6,965,785<br>$ 5,394,594 | $136,639,402 |

| | | | | |
|---|---|---|---|---|
| Third Year<br>(July 1, 1997 -<br>June 30, 1998) | $107,250,459 | Growth C/A<br>Old Colony<br>Full Worcester<br>Newburyport<br>Interim Maint.<br>Engineering | $ 2,416,073<br>$16,794,298<br>$ 2,112,636<br>$ 1,176,279<br>$ 7,050,252<br>$ 5,564,464 | $142,364,461 |

(2) If MBTA elects to exercise one or more Option Years in accordance with Section 6(b), it shall pay Amtrak, for the level of services specified in Exhibit C as in effect on the Commencement Date, the following amounts (the "Annual Fixed Price") in those years:

| | BASE<br>PRICE | NEW<br>SERVICE | | TOTAL |
|---|---|---|---|---|
| 1st Option Year<br>(July 1, 1998-<br>June 30, 1999) | $114,024,099 | Growth C/A<br>Old Colony<br>Full Worcester<br>Newburyport<br>Interim Maint.<br>Engineering | $ 3,016,733<br>$17,732,180<br>$ 2,178,988<br>$ 1,505,214<br>$ 7,438,011<br>$ 5,865,578 | $151,760,803 |
| 2nd Option Year<br>(July 1, 1999 -<br>June 30, 2000) | $120,668,751 | Growth C/A<br>Old Colony<br>Full Worcester<br>Newburyport<br>Interim Maint.<br>Engineering | $ 3,903,864<br>$18,879,909<br>$ 2,319,714<br>$ 1,607,461<br>$ 7,848,770<br>$ 6,184,098 | $161,412,567 |

(b) **New Services.** -- Notwithstanding any other provision of this Agreement, the MBTA reserves the right to contract separately for, or provide with its own personnel, the Old Colony commuter rail services, the additional commuter rail services to Worcester, and any extension of service to Newburyport. The MBTA will provide Amtrak with a reasonable amount of advance notice if it elects to exercise rights reserved under this Section.

(c) **Charges for Additional or Modified Services.** -- (1) In the event the Agreement

27

Services specified in Exhibit C are changed on a permanent basis pursuant to Section 8 of this Agreement, Amtrak shall provide MBTA with a proposed budget for any modified Agreement Services that shows all activities and the associated Direct Costs and management fee affected by such change. The parties shall agree on the budget for such revised services prior to implementing the service change. Except as provided in paragraph (4) of this subsection, MBTA shall pay Amtrak the additional Direct Cost of the change, plus a management fee of 6% of all such additional Direct Costs other than locomotive fuel costs.

(2) If the change in Agreement Services results in a reduction in Direct Costs, the amount of compensation payable by the MBTA shall be reduced by the amount of any Direct Costs eliminated by the change, plus the associated 6% management fee.

(3) The process and compensation method set forth in this subsection shall also apply in the event of (A) any additional or reduced Direct Costs to Amtrak that occur as a result of changes in local, State, or Federal law that directly impact the cost of carrying out the Agreement Services, or (B) any planned changes in Agreement Services that take place on a date different from the date shown in Exhibit C, as in effect on the Commencement Date.

(4) If the cost of changes in Agreement Services covered by this subsection, either individually or cumulatively in any Contract Year, exceeds 5% of the Annual Fixed Price for that year, the MBTA and Amtrak shall negotiate and agree upon a fixed price for the additional or modified services; provided that, until the parties have agreed upon such a fixed price, Amtrak shall be compensated for those additional or modified services in accordance with paragraph (1) of this subsection.

(d) **Charges for Other Services.** – MBTA shall also pay Amtrak the Direct Costs,

28

(4) At the end of each Contract Year, the MBTA shall determine whether the actual dollar amount of extra work performed by Amtrak differs from the amount estimated, and in the event of any such difference, the MBTA shall make the necessary reconciliation in the management fee attributable to such work (in accordance with the schedule in paragraph (2)); provided that either party may request an earlier reconciliation if it appears to be appropriate based on the level of extra work actually being performed. Any reconciliation in the amount due to Amtrak as a management fee (whether an increase or a decrease) shall be retroactive to the beginning of the Contract Year, with interest at the rate described in subsection (g)(3).

(f) **Alternative Pricing.** -- At the request of either party, the MBTA and Amtrak shall negotiate in good faith for purposes of establishing a fixed price for additional or modified services under subsection (c), or for other services under subsection (d), in lieu of utilizing the Direct Cost methodology set forth in those subsections.

(g) **Invoices and Payments.** -- (1) During the term of this Agreement, the MBTA shall pay to Amtrak, no later than the fifteenth day of each month in which Agreement Services are provided, a payment by wire transfer equal to one twelfth of the Annual Fixed Price for the applicable Contract Year (or one tenth the First Contract Year), plus an estimate of any additional costs that will be payable for that month pursuant to paragraph (2) of this subsection.

(2) Amtrak shall, no later than the fifteenth day of each month in which Agreement Services are provided, submit to the MBTA an invoice for services rendered. Each such invoice shall include: (A) an identification of the number of commuter rail trains operated during that month; (B) an identification, with appropriate supporting documentation, of any

30

plus a management fee of 6% applied to all Direct Costs other than locomotive fuel costs, for all other services provided elsewhere in this Agreement, including (but not limited to) operation of special trains (in excess of eight per year), wreck clearing of foreign railroads, emergency services, compliance with special orders requested by MBTA, purchase of locomotive fuel, maintenance of properties not used in provision of commuter revenue service, purchase of equipment and materials for use in the Agreement Services, and payment of claims pursuant to Section 3(i) of this Agreement.

(e) **Charges for Extra Work.** — (1) The MBTA shall also pay Amtrak the Direct Cost of extra work performed by Amtrak pursuant to Section 3(c)(5) of this Agreement, plus a management fee (in accordance with paragraph (2)) applied to all Direct Costs other than locomotive fuel costs.

(2) The management fee applicable to extra work in a Contract Year (or portion thereof) shall be as follows:

| DIRECT COST OF EXTRA WORK | FEE |
|---|---|
| $2,000,000 or less | 12% |
| $2,000,001 - $4,000,000 | 10% |
| $4,000,001 - $6,000,000 | 9% |
| $6,000,001 - $8,000,000 | 8% |
| $8,000,001 - $10,000,000 | 7% |
| More than $10,000,000 | 6% |

(3) The MBTA shall, on the basis of the estimated dollar amount of extra work in a Contract Year, establish the applicable management fee for that year, and shall pay Amtrak for extra work utilizing that management fee, subject to the reconciliation process set forth in paragraph (4).

29