UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARLENE V. ALLEN, Executrix of the Estate of James R. Allen, Ph.D., <br>             Plaintiff, <br> v. <br><br> MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, NATIONAL RAILROAD PASSENGER SERVICE (a/k/a "AMTRAK") and CSX TRANSPORTATION, INC., <br>             Defendants. | CIVIL ACTION <br> NO: 04-12080-PBS |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION
TO THE MOTION OF THE DEFENDANT MASSACHUSETTS
<u>BAY TRANSPORTATION AUTHORITY FOR SUMMARY JUDGMENT</u>**

As permitted by the Court at the pre-trial conference and summary judgment hearing of July 21, 2005, Plaintiff Marlene V. Allen, Executrix of the Estate of James R. Allen, Ph.D., hereby submits her Supplemental Memorandum in Opposition to the Motion of Defendant Massachusetts Bay Transportation Authority ("MBTA") for Summary Judgment. At the July 21 hearing, MBTA's counsel conceded that the issues regarding the conduct of the train crew on the day of James Allen's death were not preempted by federal law.[1] Therefore, the present brief is limited to the issue upon which supplementation was requested: whether any applicable federal regulations preempt the claim that defibrillators should have been available for use either on the train itself or at rail stations along the route.

---

[1] *See Applegate v. Nat'l Passenger Railroad Corp.*, 1996 U.S. Dist. Lexis 13043 (W.D. Mich. 1996) (although excessive speed claim preempted under FRSA, common law claims involving, *inter alia*, "failure to operate the train in a careful and prudent manner" remained to be tried to the jury).

**ARGUMENT**

I.  **No Federal Regulations Address, Much Less Preempt, Plaintiff's Claim That Defibrillators Should Have Been Available at Commuter Rail Stations Along the Route.**

The MBTA relies on regulations set forth at 49 C.F.R. § 239.1 *et seq.* addressing emergency preparedness plans, training and onboard emergency equipment, in arguing that all of plaintiff's claims relating to automated external defibrillators ("AEDs") are preempted. However, plaintiff's claims are by no means limited to the position that AEDs could and reasonably should have been available onboard MBTA commuter rail Train P514 as of June 2002. Rather, both prior to and after this litigation commenced, plaintiff has asserted that AEDs could, and in the exercise of due care for commuter rail passengers, should, have been available for emergency access and use at the MBTA commuter rail stations along the route of Train P514.

Title 49 C.F.R. § 239.1 *et seq.* is completely silent as to what emergency equipment a passenger railroad should have on hand at its facilities along its scheduled routes. The MBTA owned and controlled the commuter rail stations at Auburndale, West Newton, Newtonville and Yawkey. (*See* Deposition of Anna M. Barry, MBTA Director of Railroad Operations, pp. 89-91 attached hereto as **Exhibit A**.) It was well known prior to Dr. Allen's death that a large percentage (one study showing 40%) of the medical emergencies on commuter rail trains and at commuter rail stations were cardiac-related. (*See* Operation Heartsaver materials marked as exhibits to the Deposition of Michael H. Mulhern, MBTA General Manager and attached hereto together as **Exhibit B**). It was also well known that deployment of AEDs not only on trains but at rail stations would have a significant impact on deaths related to cardiac events. (*Id.*) There is no question that distribution of AEDs at MBTA stations was both feasible and advisable since, in the aftermath of James Allen's death, the MBTA installed AEDs at a number of its rail and

subway stations. (**Exhibit A**, Barry Depo., pp. 145-146. *See also* Transportation Resource Associates Report marked at Barry Deposition, pp. 17, 20-21 attached hereto as **Exhibit C**).

The MBTA has asserted no argument that any federal regulation limits, or even addresses, the installation and accessibility of AEDs at its passenger stations. Indeed, there are no such regulations that address the placement of such emergency equipment at rail stations. Consequently, plaintiff's claims that the MBTA could, and reasonably should, have had AEDs accessible for emergency access by train crews at MBTA rail stations along its scheduled routes, and in particular at the Auburndale, West Newton, Newtonville and/or Yawkey Stations, are not and cannot be preempted by 49 C.F.R. § 239.1 or any other federal regulation.

II. **The Federal Regulations Do Not Preempt the Claim That Defibrillators Also Should Have Been On The Train.**

    A. The MBTA Failed to Comply With the Regulations Which Required an Approved Joint Emergency Preparedness Plan.

"Passenger Train Emergency Preparedness" regulations are set forth in 49 C.F.R. § 239.1 *et seq*. The regulations are premised entirely upon the "preparation, adoption, and implementation of emergency preparedness plans by railroads," prescribe "minimum Federal safety standards" for such plans, and require each "railroad to instruct its employees on the provisions of its plan." 49 C.F.R. § 239.1 (attached hereto as **Exhibit D**). Title 49 C.F.R. § 239.101 (attached hereto as **Exhibit E**) requires the railroads to "adopt and comply with a written emergency preparedness plan approved by the FRA under the procedures of 49 C.F.R. § 239.201." When multiple carriers are involved, 49 C.F.R. § 239.101(a)(3)(ii) (**Exhibit E**) requires a joint plan and provides that:

> All of the railroads involved in hosting, providing, and operating a passenger train service operation shall jointly adopt one emergency preparedness plan that addresses each entity's specific responsibilities ...

The Federal Railroad Administration ("FRA") approval process is set forth in 49 C.F.R. § 239.201 (attached hereto as **Exhibit F**) and provides, in pertinent part, that:

> (a) ... Each passenger railroad to which this part applies and all railroads hosting its passenger train service (if applicable) shall jointly adopt a *single* emergency preparedness plan for *that* service and *the passenger railroad shall file* one copy of that plan with the [FRA] ...
>
> (b) Approval. (1) Preliminary review. ... FRA will conduct a preliminary review of the proposed plan ... [and] ... will then notify the primary contact person of each affected railroad in writing of the results of the review ...
>
> ... (2) Final review. ... FRA will conduct a comprehensive review of the conditionally approved plan ... [and] ... will then notify the primary contact person of each affected railroad in writing of the results of the review, whether the conditionally approved plan has been finally approved by FRA ... (emphasis supplied)

Under the definitions applicable to 49 C.F.R. §§ 239.101 (a)(iii)(D) and (a)(3), MBTA was the "passenger railroad" and CSX was the "railroad hosting its passenger train service," *i.e.*, the railroad over whose rails the train was being operated (*See* Rule 30(b)(6) Deposition of Amtrak its designee, by Larry Beard, Director - Office of Emergency Preparedness, pp. 53-54 attached hereto as **Exhibit G**). Therefore, the MBTA and CSX were required to agree upon and propose a joint plan which the MBTA (as the "passenger railroad") was the required to file with the FRA. No such joint plan has ever been agreed-upon, much less filed as required by the FRA.

The numerous plans which the MBTA blithely refers to as "plans to go around, for everyone," (MBTA Supp. Memo., p. 6), highlight the fact that the MBTA could not produce the joint plan that satisfied the regulatory requirement that all "of the railroads involved in hosting, providing, and operating a passenger train service operation shall jointly adopt one emergency

preparedness plan that addresses each entity's specific responsibilities..." 49 C.F.R. § 239.101(a)(3)(ii) (**Exhibit E**). It is presumably to avoid one of the very problems presented in this case – multiple, conflicting, incomplete emergency plans and procedures – that the FRA promulgated regulations requiring a single, jointly-proposed, separate emergency plan for each particular passenger service that clearly addressed each entity's specific responsibilities.

In addition, based on discovery, the individual plan relied upon by the MBTA was never "approved by the FRA under the procedures of 49 C.F.R. § 239.201" as required under 49 C.F.R. §§ 239.101 and 239.201. The MBTA has provided no evidence that it received the written approval required by the regulations. Multiple plans unrelated to the train and route actually involved in the present litigation do not negate the fact that there was no plan that complied with the above-referenced regulations. The plan it has offered may be the one that the MBTA intended to govern the conduct of the train crew. That plan may, therefore, have evidentiary significance at trial. However, the plan proposed to date did not comply with the federal regulatory provisions and, therefore, is not grounds for federal preemption. *Akin v. Missouri Pacific R. Co.*, 977 P.2d 1040, 1053 (Okla. 1998).

> B.  There Was No Training on the Applicable Provisions of
>     the MBTA's Plan, As Was Required by the Regulations.

Title 49 C.F.R. § 239.101(a)(2) (**Exhibit E**) required the carrier to "provide for initial training, as well as periodic training ... on the applicable plan provisions ..." Even as to the unapproved plan relied upon by the MBTA, there was no compliance with this requirement. Amtrak was contracted to supply the crew that operated the train. Amtrak's Senior Instructor for Training in Boston, Daniel Peters, testified that he "only saw the plan after the incident," and that he was not asked to and did not instruct based upon "what was contained in the MBTA

emergency plan." (*See* Rule 30(b)(6) Deposition of Amtrak by its designee, Daniel Peters, pp. 12-13, 112-114 attached hereto as **Exhibit H**).

    C.    <u>The FRA Did Not Determine That Defibrillators Would Not Enhance Safety on Trains.</u>

Under the Federal Railroad Safety Act, it is only when the Federal Railroad Administration "molds inclinations and evidence into a determination that safety would not be enhanced that states become barred from regulating the subject." *Libel v. Union Pacific R.R.*, 109 P.3d 730, 732 (Kan. App. 2005), *citing Pearson v. Columbus and Greenville Ry.*, 737 So.2d 390 (Miss.App.1998). This is consistent with the general view that preemption under the FRSA only applies when the applicable regulations "substantially subsume the subject matter of the relevant state law." *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 664-65, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). "'FRSA preemption is even more disfavored than preemption generally' ... When applying FRSA preemption, the Court eschews broad categories such as 'railroad safety', focusing instead on the specific subject matter contained in the federal regulation." *United Transp. Union v. Foster,* 205 F.3d 851, 860 (5th Cir. 2000) (citations omitted).

The FRA required the plan to include the following onboard emergency equipment: a fire extinguisher and a pry bar in each car, and a flashlight for each crewmember. 49 C.F.R. §239.101(6)(i). However, these were simply "minimum" requirements, *id*., and the FRA did "not restrict railroads from adopting and enforcing additional or more stringent requirements ..." 49 C.F.R. § 239.1. The MBTA has provided no evidence that the FRA determined that an onboard defibrillator would not enhance safety. On the contrary, in its Supplemental Memorandum (at p. 3), the MBTA acknowledged that at least some of the nation's commuter rail systems do require defibrillators on trains. The FRA did not mold "inclinations and evidence

into a determination that safety would not be enhanced" by the use of defibrillators on trains, *Libel*, 109 P.3d at 732, and, therefore, federal preemption is inapplicable.

  D. <u>The MBTA Did Not Comply With Its Own Plan Provisions.</u>

  As was clearly stated in *Akin v. Missouri Pacific R. Co.*, 977 P.2d 1040, 1053 (Okla. 1998), it is "compliance with the regulatory standard that establishes that the railroad has exercised due care and supports the pre-emption of the duty of care imposed by state negligence law." *Accord: Birmingham v. Union Pacific Railroad Co.,* 971 F. Supp. 1282, 1286-87 (E.D. Ark. 1997); *Boyd v. National Railroad Passenger Corp.,* 62 Mass. App. 783, 794 (2005); *Zook v. Norfolk & Western Ry Co.*, 268 Ill. App.3d 157, 162, 205 Ill. Dec. 231, 235 (1994). Under the applicable provisions of the plan relied upon by the MBTA (MBTA's Exhibit 7):

- passengers were entitled to "receive the best possible medical assistance, care, and immediate cooperation" (2.1);

- the MBTA was "to ensure the maximum safety of passengers ... during any emergency event" (5.2);

- when "necessary," passengers were to be evacuated (6.1.2.2);

- "the first priority is to the injured, ill or infirm" (6.1.3.6)[2]; and

- all "on-board personnel will be provided initial training on the requirements of this Plan to ensure that they are properly prepared to respond in the event of an emergency situation" (7.1).

  In its Supplemental Memorandum, the MBTA repeatedly referred to the plaintiff's burden of proof. The plaintiff bears the burden of proving her claims at trial, and the above-referenced plan provisions may be relevant to such claims. However, the present dispute involves a

---

[2] The defendants' first priority was clearly quite different. When a passenger asked why, if they had to proceed to Back Bay Station, the crew was still stopping for passengers instead of going straight through, the conductor responded, "What about the people on the platform?" Statement of Kirsten N. Hano, pp. 2-3 attached as Exhibit F to plaintiff's original Opposition.

different issue: the MBTA's burden of proving its affirmative defense of federal preemption. It has failed to prove compliance with the applicable federal regulations and with the provisions of its own plan. On the contrary, the evidence is that it did not comply with such regulations and provisions. Therefore, it has not satisfied its burden of proving the elements necessary to its affirmative defense.

## **CONCLUSION**

First, defendant MBTA has cited no statute, regulation or case that shows how plaintiff's claim that AEDs could and should have been available for emergency access at MBTA Stations along the MBTA's Commuter Rail route is, in an any manner, preempted. No federal regulations address what emergency equipment a commuter rail service should have available at its passenger stations.

Second, the MBTA has provided no judicial precedent for the application of the "Passenger Train Emergency Preparedness" regulations set forth in 49 C.F.R. § 239.1 as grounds for federal preemption with respect to on-board AEDs. They have never been so applied.

Third, even if federal preemption could arise out of such regulations, the MBTA has provided no factual basis for its claim that it complied with the regulations, that it received approval of a joint plan under the applicable regulatory procedures, or that it complied with the provisions of its plan.

Fourth, it has neither provided evidence to support the claim that the FRA has determined that maintaining defibrillators on trains would not enhance safety, nor has it established that the federal regulations "substantially subsume" the use of defibrillators on trains.

Therefore, the plaintiff respectfully requests that the MBTA's motion for summary judgment be denied.

Respectfully submitted,<br>
Plaintiff, Marlene V. Allen, Executrix of the<br>
Estate of James R. Allen, Ph.D.<br>
By Her Attorneys,

*/s/ Bradley M. Henry*

Leo V. Boyle, BBO No. 052700
Michael B. Bogdanow, BBO No. 544174
Bradley M. Henry, BBO No. 559501
MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.
Two Center Plaza, Suite 600
Boston, MA  02108-1922
(617) 523-8300

**CERTIFICATE OF SERVICE**

I, Bradley M. Henry, hereby certify that on this 19th day of August 2005, I served the foregoing PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO MOTION OF DEFENDANT MASSACHUSETTS BAY TRANSPORTATION AUTHORITY FOR SUMMARY JUDGMENT, by electronic filing and by mailing an exact copy thereof, via first class mail postage prepaid to all counsel of record:  Michael J. McCormack, Esq. and David T. Mitrou, Esq., McCormack & Epstein, 1 International Place - 7th Floor, Boston, MA 02110; William J. Dailey, Jr., Esq. and Harry A. Pierce, Esq., Sloan and Walsh, Three Center Plaza, Boston, MA 0210; Michael B. Flynn, Esq. and Richard A. Davidson, Jr., Esq., Flynn & Associates, P.C., 400 Crown Colony Drive, Ste. 200, Quincy, MA 02169.

*/s/  Bradley M. Henry*
_____
Bradley M. Henry