UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 04-CV-12080-PBS

------------------------------------------------------------X
MARLENE V. ALLEN, Executrix of the Estate
of James R. Allen, Ph.D.,

Plaintiff,

v.

MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY, NATIONAL RAILROAD
PASSENGER SERVICE (a/k/a "AMTRAK")
and CSX TRANSPORTATION, INC.,

Defendants.
------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY'S MOTION TO VACATE ORDER OF DISMISSAL
OR IN THE ALTERNATIVE TO FILE MOTION TO AMEND COMPLAINT**

**PRELIMINARY STATEMENT**

Defendant Amtrak respectfully submits this memorandum of law in opposition to Massachusetts Bay Transportation Authority's ("MBTA") motion to vacate the order of dismissal or in the alternative to file a motion to amend its answer in order to assert a cross-claim against Amtrak. Under Rule 15(a) of the Federal Rules of Civil Procedure ("FRCP"), MBTA's motion to amend is futile and serves no legitimate purpose because the Operating Agreement between MBTA and Amtrak requires the parties to resolve "Excluded Conduct" allegations pursuant to arbitration. As such, this Court is not the proper forum for resolving the "Excluded Conduct" issue.

1

## FACTS

MBTA and National Railroad Passenger Corporation ("Amtrak") entered into an Operating Agreement on September 1, 1995, for the operation of the MBTA commuter lines. The Operating Agreement requires MBTA to indemnify, defend and hold harmless Amtrak for all damage and for all liability. The section states as follows:

> SEC. 15. INDEMNIFICATION AND LIABILITY
>
> (a) <u>MBTA Indemnity</u>- Except as otherwise provided in this Section, the MBTA undertakes and agrees to indemnify, defend, and hold harmless Amtrak (including its directors, officers, agents or employees) for all damage and for all liability arising out of the provision of the Agreement Services, without regard to fault or negligence of Amtrak; provided, however, that the indemnity of the MBTA shall be limited to $75,000,000 per occurrence.

<u>See</u> Operating Agreement, Section 15 (a), pg. 44. (The Operating Agreement is Ex. A to Proposed Amended Answer and Cross-Claim of MBTA).

The Operating Agreement further provides a section entitled "Excluded Conduct," which states:

> (d) <u>Excluded Conduct</u>- Notwithstanding any other provision of this Section, a party shall have no duty to indemnify and hold harmless the other party (hereinafter the "Other Party") for any liability of the Other Party if it is determined pursuant to **arbitration** as provided in Section 19 of this Agreement that such liability arose as a result of Excluded Conduct of the Other Party, and the Other Party shall indemnify and hold harmless a party to this Agreement for any such liability. Excluded Conduct is conduct for which there is clear and convincing evidence that liability arises out of an act or omission by the Other Party which constitutes oppression, fraud, or malice. For the purposes of this Agreement, the term--
>
> (1) "Malice" means conduct which is intended to cause injury to others or despicable conduct which is carried on with a willful and conscious disregard of the rights or safety of others.
>
> (2) "Oppression" means despicable conduct that subjects a person to cruel and

2

unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact with the intention of thereby depriving a person of property or legal rights or otherwise causing injury.

See Operating Agreement, Section 15 (d), pgs. 45-46 (emphasis added).

On September 26, 2005, this Court was advised that a settlement agreement had been reached in this action and the Court issued an order of dismissal. Thereafter, on September 29, 2005, MBTA filed its motion to vacate the dismissal and motion to amend its answer and to assert a cross-claim against Amtrak. MBTA asserts in its proposed amended answer that it is not required to defend and indemnify Amtrak because the allegations fall within the "Excluded Conduct" exception to the indemnity obligation of the Operating Agreement. MBTA, erroneously, seeks to have the indemnification issue resolved in this Court in contravention of the Operating Agreement, which specifically requires that allegations of "Excluded Conduct" must be "determined pursuant to arbitration as provided in Section 19 of [the Operating] Agreement." While Section 19 provides the procedure for the arbitration, Section15(d) instructs what disputes must be arbitrated.

MBTA repeatedly acknowledged in correspondence (annexed to its Supplemental Memorandum collectively as Exhibit 2) that the Operating Agreement requires the parties to arbitrate the issue of "Excluded Conduct" and that the MBTA intended to arbitrate the issue. "Ultimately, **arbitration** may be necessary to establish our contentions as provided in Section 19 of said Agreement pursuant to the language in Section 15 (d)." See August 4, 2003 letter from MBTA to Amtrak, annexed hereto as Exhibit A (emphasis added)[1]. "It is our intention to rely

---

[1]Even though this correspondence was collectively attached to the MBTA's Supplemental

3

upon the provisions of Section 15 (d) cited therein.  Should **arbitration** confirm our contention,... any duty of MBTA to indemnify or hold harmless Amtrak would be obviated."  See October 16, 2003 letter from MBTA to Amtrak, annexed hereto as Exhibit B (emphasis added).  "Once again, we emphasize...our intent to pursue **arbitration**..."  See October 28, 2003 letter from MBTA to Amtrak, annexed hereto as Exhibit C (emphasis added).  Thus, MBTA's belated assertion that Section 15(d) of the Operating Agreement does not require arbitration for allegations of "Excluded Conduct" is baseless and contradictory to the position it has maintained for the past several years.  Moreover, the assertion that Amtrak has waived the right to insist on arbitration is absurd, as MBTA is responsible for initiating arbitration if it seeks to be relieved from the indemnity obligation pursuant to the Operating Agreement.

## ARGUMENT

## MBTA'S PROPOSED AMENDMENT IS FUTILE BECAUSE THE OPERATING AGREEMENT REQUIRES ARBITRATION

"While 'leave to amend shall be freely given when justice so requires, the liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases.'" See Acosta-Mestre v. Hilton International of Puerto Rico, Inc., et al., 156 F.3d 49, 51 (1st Cir. 1998) *quoting* Fed.R.Civ.P. 15(a) & 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1487, at 611 (2d ed. 1990).  One of the accepted reasons for denying leave to amend is futility of the amendment.  See Hatch v. Dept. for Children, Youth and Their Families, 274 F.3d 12, 19 (1st Cir. 2001).  "'Where an amendment would be futile or serve

---

Memorandum, dated October 20, 2005, as Exhibit 2, the key correspondence on the issue of arbitration is individually attached hereto for the convenience of the Court.

no legitimate purpose, the district court should not needlessly prolong matters.'" See id. *quoting* Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990).

MBTA has now filed a motion to amend its answer and cross-claim against Amtrak after this case was settled and dismissed. The basis of MBTA's proposed amended cross-claim is that MBTA should not be required to defend and indemnify Amtrak because Amtrak engaged in "Excluded Conduct" as defined in Section 15(d) of the Operating Agreement. Amtrak contends that there is no evidence on the part of Amtrak or its employees that rises to the level of malice, oppression or fraud. Based upon the dispute over whether there was "Excluded Conduct," the Operating Agreement requires the parties to submit to arbitration to determine whether the alleged conduct constitutes "Excluded Conduct" as defined in Section 15 (d)(1)(2) or (3). See Operating Agreement, Section 15 (d), pg. 45.

In fact, Amtrak conveyed this position to MBTA in a letter dated October 17, 2003. "Pursuant to Section 15(d), the duty to indemnify exists until the MBTA receives a determination, pursuant to arbitration as provided in Section 19, that such liability arose as a result of the Excluded Conduct of Amtrak. We continue to strongly disagree that there is any evidence, let alone 'clear and convincing evidence,' that the liability for this incident arose out of Excluded Conduct as set forth in the Agreement." See October 17, 2003 letter from Amtrak to MBTA, annexed hereto as Exhibit D. Eleven days later, MBTA reiterated its "intent to pursue arbitration." See Exhibit C.

Section 15(d) provides that, "a party shall have no duty to indemnify and hold harmless the other party (hereinafter the "Other Party") for any liability of the Other Party if it is <u>determined pursuant to arbitration as provided in Section 19 of this Agreement</u> that such liability arose as a

5

result of Excluded Conduct of the Other Party." See Operating Agreement, Section 15 (d), pg. 45 (emphasis added). Subsection (c) of Section 19, entitled "Arbitration," details the procedure to be followed when the parties must submit to arbitration, as is the case with allegations of "Excluded Conduct." See Operating Agreement, Section 19, pgs. 55-57. The MBTA's attempt to rely on Section 19 to suggest there is no requirement to arbitrate the issue of "Excluded Conduct" ignores both the specific provision of Section 15 (d) requiring arbitration and the first clause of that provision, stating "[n]otwithstanding any other provision of this Section." The language of Section15(d) makes it clear that a party is unable to avoid its indemnity obligation on the basis of "Excluded Conduct" unless it establishes "pursuant to arbitration" that such " liability arose as a result of Excluded Conduct."

There is strong federal policy favoring arbitration. See Myrick v. GTE Main Street, Inc., 73 F.Supp.2d 94, 96 (D. Mass. 1999). "'As a matter of federal law, any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration.'" See id. *quoting* Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "This is so 'whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" See Puerto Rico Telephone Co, Inc. v. U.S. Phone Manufacturing Corp., 2005 WL 2596462 (1st Cir. Oct. 14, 2005) *quoting* Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). The courts should "ensure that commercial arbitration agreements, like other contracts, 'are enforced according to their terms' and according to the intentions of the parties." See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947 (1995) *quoting* Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S.52, 54 (1995) and Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

Here, the parties intentions are clear. MBTA and Amtrak agreed that allegations of "Excluded Conduct" would be resolved pursuant to arbitration as specifically stated in Section 15(d) of the Operating Agreement. Therefore, the Operating Agreement is not a legitimate basis for the MBTA's motion to amend its answer and assert a cross-claim against Amtrak.

MBTA contends that because more than one million dollars is in dispute the requirement in Section 15 for arbitration is not controlling. Such an interpretation is irreconcilable with MBTA's previous correspondence acknowledging the requirement to arbitrate this issue and with Section 15, which specifically states the issue of "Excluded Conduct" should be "determined pursuant to arbitration." See Exhibits A-D. As MBTA argues in its Supplemental Memorandum, "there is nothing ambiguous in the language of the Operating Agreement." See MBTA Supplemental Memorandum, October 20, 2005, pg. 7. If the parties intended disputes concerning "Excluded Conduct" to be resolved in this Court, they would have incorporated the "Dispute Resolution" provision set forth in Section 19 rather than using the specific term "arbitration." Instead, as MBTA aptly points out, "when they did refer to arbitration, the parties were very specific," as is the case with Section 15(d). See MBTA Supplemental Memorandum, October 20, 2005, pg. 8.

"In construing arbitration clauses, [courts] proceed on the basis of a 'presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" See Massachusetts Correction Officers v. Sheriff of Bristol County, 55 Mass.App.Ct. 285, 287-288 (2002). "It is no appropriate part of judicial business to rewrite contracts freely entered into

between sophisticated business entities. Rather, the courts must give effect to the language of such agreements and to their discernible meaning." See RCI Northeast Services Division v. Boston Edison Company, 822 F.2d 199, 205 (1st Cir. 1987). "In addition, when viewed against the backdrop of the federal policy favoring **arbitration**, see, e.g., Volt Info. Sciences, Inc. v. Board of Trustee, 489 U.S. 468, 475-76, 109 S.Ct. 1248, 1253-54, 103 L.Ed.2d 488 (1989); Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983), [FN8] and the generous reading given to broadly worded commercial **arbitration** agreements, see, e.g., Raytheon Co. v. Automated Bus. Sys., 882 F.2d 6, 9-11 (1st Cir. 1989), the provision herein cannot bear the interpretation [MBTA] seeks to assign to it." See MCI Telecommunications Corp. v. Matrix Communications Corp., 135 F.3d 27, 32 (1st Cir. 1998). (emphasis in original).

Moreover, the parties had good reason for mutually agreeing that arbitration was the appropriate method of resolving the issue of "Excluded Conduct," because as the MBTA concedes, it delayed its cross-claim until after settlement "because it would have severely complicated the tort case." See MBTA Motion for Leave to File Amended Answer and Cross-Claim, September 29, 2005, p.2. It is readily obvious why the parties would not want to litigate the issue of "Excluded Conduct" publicly, thereby potentially creating more evidence for a third party suing both of them, or for which one would ultimately have the duty to defend and indemnify the other. In fact, in the underlying wrongful death action herein, the MBTA did retain counsel to defend Amtrak.

Finally, MBTA's suggestion that requiring arbitration on the narrow issue of "Excluded Conduct" would render the monetary threshold in Section 19 (b)(2) meaningless (See MBTA

Supplemental Memorandum, October 20, 2005, pg. 9, n.9) ignores the host of potential other indemnity disputes including whether liability arose out of "the provision of the Agreement Services" or whether Amtrak employees were "engaged solely in the provision of intercity services." See Operating Agreement, Section 15 (a) & (b), pg. 44. Unlike with "Excluded Conduct," these are issues that could be litigated publicly without prejudicing either party.

Accordingly, the proposed amendment is futile and serves no legitimate purpose because MBTA and Amtrak agreed to arbitrate allegations of "Excluded Conduct" as set forth in the Operating Agreement. This Court should, therefore, deny MBTA's motion to vacate dismissal and motion to amend its answer.[2]

## CONCLUSION

For all of the foregoing reasons, Defendant Amtrak respectfully requests that this Court deny MBTA's motion to vacate dismissal and motion to amend its answer to assert cross-claims against Amtrak, together with such other and further relief as this Court deems just and proper.

Respectfully submitted,

EDWARDS & ANGELL, LLP

By: /s/ Paul E. Dwyer, Jr.
Paul E. Dwyer, Jr.
2800 Financial Plaza
Providence, Rhode Island 02903-2499
(401) 274-9200

---

[2] It further is noted that MBTA's motion to amend its answer is untimely as this matter has already been dismissed and there is no legitimate reason for re-opening an already disposed of matter. MBTA's contractual assertions have no bearing on the underlying settled cause of action and should not, therefore, unnecessarily delay the final resolution of this matter.

9

405833.1 DocsNY

Of Counsel

    Mark S. Landman, Esq.
    Landman Corsi Ballaine & Ford P.C.
    120 Broadway, 27th Floor
    New York, N.Y. 10271
    (212) 238-4800

10